**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel@edge.law
Seth W. Wiener (SBN 203747)
seth@edge.law
1341 La Playa Street 20
San Francisco, CA 94122
Telephone: (415) 515-4809

**CAPSTONE LAW APC**
Tarek H. Zohdy (SBN 247775)
tarek.zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
laura.goolsby@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiff Rodney Carvalho

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY CARVALHO, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| HP INC., a Delaware corporation, | |
| Defendant. | |

1    Plaintiff Rodney Carvalho ("Plaintiff"), individually and on behalf of all others similarly

2    situated, brings this action against Defendant HP Inc. ("HP").  Upon personal knowledge as to his

3    own acts and status and upon information and belief as to all other matters, Plaintiff alleges the

4    following:

5                              **INTRODUCTION**

6    1.       This is a class action against HP for false advertising on its website, HP.com.  HP is

7    the largest computer seller in the United States.  To sell more products and maximize its profits, HP

8    displays false reference prices on its website and advertises false savings based on those prices.

9    The reference prices are false because they do not represent the actual prices at which HP regularly

10   sells its products.  The savings are false because they do not represent the actual savings obtained

11   by customers.  This unlawful marketing practice, commonly known as false reference pricing,

12   artificially increases demand for HP products and induces customers to pay more for them based on

13   a false impression of their value.  HP's use of false reference prices and false savings is pervasive

14   throughout its website.

15   2.       California law and federal regulations specifically prohibit this type of false

16   advertising.  For example, California's consumer protection statute prohibits "[m]aking false or

17   misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions."

18   Civ. Code § 1770(a)(13).  California's false advertising law prohibits advertising a former price

19   unless it was the prevailing market price during the previous three months.  Bus. & Prof. Code §

20   17501.  As explained in the Federal Trade Commission's (FTC) Guide Against Deceptive Pricing,

21          [When] the former price being advertised is not bona fide but fictitious—for example,
           where an artificial, inflated price was established for the purpose of enabling the
22          subsequent offer of a large reduction—the "bargain" being advertised is a false one;
           the purchaser is not receiving the unusual value he expects.
23

24   16 C.F.R. § 233.1.

25   3.       HP willfully violates these laws.  For example, on September 7, 2021, Plaintiff

26   purchased an All-in-One desktop computer on HP's website.  HP advertised the computer as being

27   on sale for $899.99 and represented to customers that they would "Save $100 instantly" off the

28   regular price of $999.99, which was displayed in strikethrough typeface (e.g., $999.99).  Below is a

---
-1-
CLASS ACTION COMPLAINT

screenshot of Plaintiff's computer, as advertised on HP's website the day Plaintiff made his purchase.

**September 7, 2021**



4.      At the time of his purchase, Plaintiff believed he was buying a computer that was valued at and regularly sold for $999.99.  But discovery will show that in the weeks and months prior to Plaintiff's purchase, HP rarely, if ever, offered his computer for sale at the advertised reference price of $999.99.  Indeed, pricing data compiled by Plaintiff's counsel demonstrates as much:

**Advertised Prices of Plaintiff's Computer on HP.com**

| Date | Ref. Price | Sale Price |
|---|---|---|
| 4/29/2021 | $999.99 | $899.99 |
| 5/29/2021 | $999.99 | $899.99 |
| 6/29/2021 | $999.99 | $899.99 |
| 7/29/2021 | $999.99 | $899.99 |
| 8/29/2021 | $999.99 | $899.99 |
| 9/29/2021 | $999.99 | $899.99 |

5.      By using false reference prices to artificially increase the perceived value of HP products, HP harms consumers by inducing them to pay more for its products and make purchases they would not have otherwise made.

6.      HP's false reference prices also harm competition by giving HP an unfair advantage over other computer manufacturers that do not engage in false reference pricing.  After all, a customer is more likely to purchase a $2,000 computer advertised at 50% off its regular price than pay full price for a $1,000 computer.

7.      In addition to using false reference prices, HP also falsely advertises limited-quantity and limited-time offers.  For example, on May 28, 2021, HP featured Plaintiff's computer in the "Weekly Deal" section of its website and advertised there was "**Only 1 Left!**"  Yet in the weeks and months that followed, HP continued to sell Plaintiff's computer but removed any representations about the supposed limited quantity.

| **May 28, 2021** | **June 4, 2021** |
| --- | --- |
|  |  |

8.      In another effort to artificially increase demand for its products, on September 28, 2021, HP advertised Plaintiff's computer for $899.99 as part of a "**72 Hour Flash Sale**."  At the top of the screen, HP displayed a banner that stated, "**Get limited time deals on select products**" and "**Hurry! This sale ends in:**" above a live countdown timer.  Below is an example of a screenshot that was taken on September 28, 2021, at 3:07 p.m., indicating the sale would end in 8 hours, 52 minutes, and 31 seconds.

1

**September 28, 2021**



9.    But the sale did not end in 8 hours, 52 minutes, and 31 seconds.  Instead, HP merely removed the flash sale marketing from its website and continued to sell Plaintiff's computer at the same price and discount, as shown below.



CLASS ACTION COMPLAINT

10.     Indeed, instead of increasing the price of Plaintiff's computer after the flash sale ended, HP simply invented a new sale—the "HP Days" sale.  Below is an example of a screenshot taken from HP's website on October 3, 2021, five days after the flash sale ended.  As shown below, HP continued to advertise Plaintiff's computer at the same price and discount of $899.99, $100 off the reference price of $999.99.

**October 3, 2021**



11.     Discovery will show that HP's flash sales and other limited-time offers are merely falsehoods intended to induce prospective customers to make purchases they would not have otherwise made and pay more for HP products based on a false impression they are getting a special deal.

12.     HP advertises false reference prices, false discounts, and fake-limited time offers for hundreds of products on its website every day.  The pervasive, ongoing nature of its deceptive pricing scheme demonstrates that false reference pricing is central to its overall marketing strategy.

CLASS ACTION COMPLAINT

In bringing this lawsuit, Plaintiff intends to curb these and other unlawful and deceptive advertising practices on HP's website and seeks compensation for himself and all others similarly situated who have been duped by HP's false advertising.

## THE PARTIES

13.     Plaintiff Rodney Carvalho ("Plaintiff") is a resident of Las Vegas, Nevada.  On September 7, 2021, Plaintiff accessed HP's website from his residence and purchased a computer and mouse from HP for personal use.

14.     Defendant HP Inc. ("HP") is a Delaware corporation, with its principal place of business at 1501 Page Mill Road, Palo Alto, California 94304.  HP sells computers and related peripheral parts, software and services to customers throughout the United States through its website, HP.com.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the aggregate claims of the members of the proposed Classes exceed $5 million (exclusive of interest and costs), the proposed Classes consist of 100 or more members, and at least one member of the proposed Classes is a citizen of a different state than HP.

16.     California has personal jurisdiction over HP because HP has its principal place of business in California and is thus subject to general jurisdiction in California.

17.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because HP resides in this District, and a substantial part of the events or omissions which give rise to Plaintiff's claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

18.     Pursuant to the Northern District of California's Local Rule No. 3-2(e), assignment of this matter to the San Jose Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in Palo Alto, California, which is located in Santa Clara County.

1

**FACTUAL ALLEGATIONS**

2     19.    HP is a $56.6 billion Fortune 500 company headquartered in Palo Alto, California.[1]

3 It is the largest computer manufacturer in the United States and the second largest in the world.  In

4 the second quarter of 2021 alone, HP shipped over 4 million PCs to the United States and had a

5 28.4% market share of the U.S. market.[2]  HP's customers include individual consumers, small to

6 medium-sized businesses, state and federal governments, K-12 and higher education organizations,

7 and large corporations.

8     20.    HP does not have any physical retail stores in the United States.  Instead, HP

9 markets and sells its products and services directly to customers through its website, HP.com.  In

10 August 2021, HP's website received over 80 million visits, of which approximately 28% originated

11 from the United States.[3]

12     21.    HP's online success has in significant part resulted from its use of false reference

13 prices, false discounts, and fake limited-time offers.

14 **A.    HP's Pricing Scheme**

15     22.    HP creates an illusion of savings on its website by advertising false reference prices

16 and false discounts based on those prices.

17     23.    HP perpetrates this scheme by advertising a **reference price**—i.e., the product's full,

18 non-discounted price—which it typically displays in strikethrough typeface (e.g., ~~$999.99~~).

19     24.    Adjacent to the reference price, HP advertises a **sale price**, which is the price at

20 which the product is currently offered for sale.  HP typically displays the sale price in larger, bolder

21 font, often using a contrasting color.

22     25.    Throughout its website, HP also advertises **discounts** or **savings**, which are typically

23 displayed as a dollar amount equal to the difference between the reference price and the sale price.

24

25 [1] Source: https://investor.hp.com/news/press-release-details/2020/HP-Inc.-Reports-Fiscal-2020-Full-Year-and-Fourth-Quarter-Results/default.aspx.

26
27 [2] Source: https://www.gartner.com/en/newsroom/press-releases/2021-07-12-gartner-says-worldwide-pc-shipments-grew-4-point-six-in-second-quarter-of-2021.

28 [3] Sources: https://www.semrush.com/analytics/traffic/journey/hp.com; https://www.alexa.com/siteinfo/hp.com.

HP prominently displays the purported discounts on its website together with words or phrases such as "Save," "You'll Save," and "You Saved."

26.     Below are examples of how HP advertises false discounts on its website.



27.     After customers click the button to buy a product, HP directs them to additional pages where they can customize and add accessories to their order.  As shown below, on each of these pages, HP prominently displays the reference price, the sale price, and the savings customers are purportedly receiving.

CLASS ACTION COMPLAINT



28.     Once customers reach the page displaying their online shopping cart, HP again displays the reference price, sale price, and savings.  As shown below, to induce a sale, HP purposely draws its prospective customers' attention to the amount of savings by displaying the amount in bold font on a contrasting blue background.

29.     When customers proceed to check out, they are directed to pages where they can enter their information and review their order.  On each of these pages, HP again falsely promises customers savings equal to the difference between the reference price and sale price.  These "savings" are part of the contract that is entered into between HP and its customers and part of the bargain that is struck between them.  Below is an example of these representations that are made to customers at the time they place their order.

CLASS ACTION COMPLAINT



30.     After customers place their order, the promised savings are confirmed on a web page on HP's website and memorialized in an email HP sends to customers after receiving their order.

**Website Confirmation**



**Email Confirmation**

| Product details | Status | Qty | Price |
|---|---|---|---|
| HP ENVY 13 Laptop PC | Processing | 1 | $600.99 |
| Product number: 1F5L3AV | Estimated shipment: Nov 18, | | |
| •Natural silver | 2021 | | |
| •13.3" diagonal FHD, IPS, BrightView, micro-edge, WLED-backlit (1920 x 1080) | | | |
| •256 GB PCIe® NVMe™ M.2 SSD | | | |
| •Intel® Wi-Fi 6 AX 201 (2x2) and Bluetooth® 5 combo (Supporting Gigabit file transfer speeds) | | | |
| •3-cell, 51 Wh Li-ion polymer | | | |
| •Intel® Core™ i5-1135G7 (up to 4.2 GHz, 8 MB L3 cache, 4 cores) + 8 GB (onboard) + Intel® Iris® Xe Graphics | | | |
| $4.00 per unit recycling fee required* | | | |

| Summary of savings: | | |
|---|---|---|
| Instant Discounts: $300.00 | Subtotal: | $600.99 |
| Total Savings: $300.00 | Shipping & Handling: | Free |
| | CA Tax: | $51.84 |
| | CA Recycling fee*: | $4.00 |
| | | |
| | **Total:** | **$656.83** |

CLASS ACTION COMPLAINT

**B.      HP's False reference prices and False Discounts**

31.     Discovery will show that on any given day, HP offers for sale approximately 350 different laptop and desktop computers on its website, and advertises approximately 35% of those computers at a discount from a reference price.  But discovery will show that the majority of the reference prices are false and misleading because they do not represent the actual prices at which the computers were sold or offered for sale for a reasonably substantial period of time.

32.     HP's pricing scheme is misleading because the savings advertised on its website (which are based on the advertised reference prices) do not represent the actual savings customers receive, as Plaintiff and reasonable consumers understand that term.  Moreover, HP's reference prices violate California law because they do not reflect the prevailing market prices of the products in question during the three-month period immediately preceding their publication.

33.     For example, on March 27, 2021, HP advertised an HP ENVY Laptop, part number 19T04AV_1 ("Envy Laptop") on its website.  HP offered the laptop for sale for $799.99 and represented to customers they were saving of $150 off the reference price of $949.99.

<u>**March 27, 2021**</u>



34.     Yet, pricing data compiled by Plaintiff's counsel indicates that in the weeks and months that followed, HP rarely, if ever, sold the Envy Laptop at the advertised reference price of $949.99.

1

**Advertised Prices of Envy Laptop on HP.com**

| Date | Ref. Price | Sale Price |
|---|---|---|
| 3/27/2021 | $949.99 | $799.99 |
| 4/24/2021 | $949.99 | $849.99 |
| 5/24/2021 | $949.99 | $829.99 |
| 6/24/2021 | $949.99 | $799.99 |
| 7/24/2021 | $949.99 | $799.99 |
| 8/24/2021 | $949.99 | $749.99 |
| 9/24/2021 | $949.99 | $749.99 |

35.     Pricing data collected by Plaintiff's counsel for hundreds of computers advertised on HP's website over the course of more than three months indicates that a significant percentage of computers sold on HP's website are offered at discounted prices more often than they are offered at their reference prices.  For example, below are charts reflecting the reference price and sale price of twelve different laptop and desktop computers, as advertised on HP's website for a period of more than three months.  As shown, the sale price of these products rarely, if ever, equals the reference price.









CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT

36.    HP's use of false reference prices is not limited to computers.  HP also advertises false reference prices for its monitors, printers, accessories, and warranties.  For example, the charts below reflect the reference and sale prices of eight non-computer products advertised on HP's website for a period of more than three months.  As shown, the sale price of these products rarely, if ever, equals the reference price.













CLASS ACTION COMPLAINT

HP 1y Post Warranty Plan
Part #U4820PA

HP 3 year w_Accidental Care
Part #U9ED6A

## C.   HP's Fake Limited-Time Offers

37.    In addition to advertising false reference prices and false discounts, HP further misrepresents that the discounts are available only for a limited time and fails to disclose the continuing nature of these discounts.  By giving potential customers the false impression that they will miss out on the advertised markdowns if they do not make a purchase soon, HP induces customers to make purchases they would not have otherwise made and pay more for HP products than they would have otherwise paid.  Additionally, by imparting a false sense of urgency on prospective customers, HP deters them from shopping at competitor websites.

38.    For that reason, the FTC's Guide Against Deceptive Pricing provides:

> [Retailers] should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a "limited" offer which, in fact, is not limited.  In all of these situations, as well as in others too numerous to mention, advertisers should make certain that the bargain offer is genuine and truthful.

16 C.F.R. § 233.5.

39.    HP employs a variety of means to impart this false sense of urgency on potential customers.  One way is by featuring products in the "Weekly Deals" section of its website, which suggests that the advertised markdowns will expire at the end of the week.  HP lures potential customers to its Weekly Deals by displaying a red banner at the top of its website.



Weekly Deals   Enjoy great savings on select products, and get FREE shipping storewide.   SHOP

40.    In reality, the Weekly Deals frequently last much longer than a week.  For example, on May 13, 2021, HP advertised a Spectre X360 Convertible Laptop, part number 9AJ99AV_1

("Spectre X360"), in the Weekly Deal section of its website.  As shown below, the laptop was
advertised as being on sale for $899.99, $150 off the reference price of $1,049.99.



**May 13, 2021**

41.     By featuring the Spectre X360 in the Weekly Deal section of its website, a
reasonable consumer is thus led to believe that the advertised discount will last only a week.
However, at the end of the week, HP continued to advertise the Spectre X360 at the same price and
discount and continued to do so for several more weeks to come.

**May 20, 2021**        **May 27, 2021**        **June 3, 2021**





CLASS ACTION COMPLAINT

42.    Indeed, despite advertising the price of $899.99 as a "Memorial Day Special" on May 27 and June 3, as shown above, HP continued to sell the Spectre X360 for $899.99 through July 19, 2021.  (For reference, Memorial Day was on May 31.)  On July 19, HP increased the price of the Spectre X360 by $50 but still continued to sell it for less than the advertised reference price, as shown below.



43.    In addition to advertising fake Weekly Deals, HP also uses fake flash sales to deceive customers about the duration of its discounts.  For example, on May 5, 2021, HP advertised an HP Envy All-in-One, part number 3UQ84AA#ABA ("Envy All-in-One"), for $1,999.99 as part of a "**1 Day Flash Sale**" and represented to customers they would "**Save $400**" off the reference price of $2,399.99.  At the top of the screen, HP displayed a banner that stated, "**Get limited time deals on select products**" and "**Hurry! This sale ends in:**" above a live countdown timer.  Below is an example of a screenshot that was taken on May 5, 2021 at 8:42 p.m., indicating the sale would end in 3 hours, 17 minutes, and 7 seconds, which corresponded to midnight.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19



20   44.    Reasonable consumers viewing this advertisement are thus led to believe that if they

21   do not make a purchase within the specified time frame, they will miss out on the advertised savings

22   of $400.  But in fact, despite representing the sale would end at midnight on May 5, 2021, HP

23   continued to advertise the Envy All-in-One at the exact same price the very next day, as shown

24   below.

25

26

27

28

CLASS ACTION COMPLAINT

1

**May 6, 2021**



2

3

4

5

6

7

8

9

10

11

12

13

14

15

16      45.      Similarly, on multiple occasions Plaintiff's computer was also advertised as part of a

17   flash sale.  For example, on June 11, 2021, HP advertised Plaintiff's computer for $949.99 as part

18   of a "**2 Day Flash Sale**" and represented to customers they would "**Save $50**" off the reference

19   price of $999.99.  Below is an example of a screenshot taken on June 11, 2021, depicting the flash

20   sale.

21

22

23

24

25

26

27

28

1



2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20      46.     A reasonable consumer contemplating buying Plaintiff's computer is thus induced to

21  complete the purchase within 25 hours, 59 minutes, and 2 seconds, lest the consumer miss out on the

22  discounted price of $949.99.  In fact, the consumer would have been better off waiting until after the

23  flash sale ended because, as shown below, later that month HP reduced the price even further to

24  $899.99—fifty dollars less than the "flash sale" price.

25

26

27

28

CLASS ACTION COMPLAINT

HP All-in-One 24-dp1056qe PC
Part #20W59AA#ABA

D.     **Plaintiff's Purchase**

47.     On September 7, 2021, Plaintiff accessed HP's website from his residence in Las Vegas, Nevada, and purchased an HP All-in-One 24-dp1056qe PC, part number 20W59AA#ABA ("All-in-One PC"), and an HP X3000 G2 Wireless Mouse, part number 2C3M3AA#ABA ("G2 Mouse").

48.     HP advertised the All-in-One PC as being on sale for $899.99 and represented to Plaintiff that he would save $100 off the reference price of $999.99.  HP additionally advertised that Plaintiff would receive an additional 5% off with the coupon code HP21LDS5 as part of a Labor Day sale.

49.     Enticed by the idea of paying less than the regular price and getting a $999.99 computer for only $899.99 (minus an additional 5% off), Plaintiff proceeded to add the All-in-One PC to his shopping cart.

50.     After clicking the button to add the All-in-One PC to his shopping cart, Plaintiff was directed to a web page where HP advertised additional accessories for Plaintiff to purchase, including the G2 Mouse.  HP advertised the G2 Mouse as being on sale for $11.99, $5.00 off the reference price of $16.99.  Below is an example of the advertisement Plaintiff viewed after adding the All-in-One PC to his shopping cart.

1
2
3
4
5
6
7
8
9
10



11      51.      Enticed by the idea of paying less than the regular price and getting a $16.99 mouse

12 for only $11.99 (minus an additional 5% off), Plaintiff added the G2 Mouse to his order.

13      52.      Plaintiff was then directed to his online shopping cart.  In his shopping cart, HP

14 represented to Plaintiff that he was saving $105.00 off the reference prices of the All-in-One PC

15 and G2 Mouse by displaying "YOU SAVED **$105.00** ON YOUR ORDER" on a contrasting blue

16 background below his order total.

17      53.      Plaintiff then obtained an additional 5% off by entering the Labor Day coupon code

18 HP21LDS5.

19      54.      Plaintiff was then directed to the checkout page where he input his contact

20 information, shipping information, and payment information.  On the checkout page, HP again

21 represented to Plaintiff the amount he was saving on his order—now $168.60, due to the additional

22 5% off and a free HP Stereo USB Headset valued at $18.00 that HP included in his order.

23      55.      After inputting his information, Plaintiff was directed to a final page where he could

24 review and place his order.  On the review page, HP again represented to Plaintiff he was saving

25 $168.60 on his order.

26      56.      In reliance on HP's representations and omissions with respect to the pricing of the

27 All-in-One PC and G2 Mouse, the amount of savings he was purportedly receiving, and the limited-

28 time nature of the advertised discounts, Plaintiff placed his order.

CLASS ACTION COMPLAINT

57.     Immediately after completing his purchase, HP directed Plaintiff to a web page confirming the amount he purportedly saved on his order.  HP also sent Plaintiff an order confirmation via email, which confirmed that Plaintiff had saved $168.60 on his order—an amount equal to the sum of the differences between the reference prices and sale prices of the All-in-One PC and G2 Mouse ($145.00 and $5.60, respectively), plus the value of the HP Stereo USB Headset ($18.00).



58.     Plaintiff purchased the All-in-One PC and G2 Mouse after HP had advertised them using false reference prices of $999.99 and $16.99, respectively.  At the time, Plaintiff believed he was purchasing a computer valued at $999.99 for approximately 15% off and a mouse valued at $16.99 for approximately 33% off.  Plaintiff believed $999.99 and $16.99 were the regular prices of his computer and mouse, and that they would be sold at those prices at the end of the Labor Day sale.

59.     However, discovery will show that prior to Plaintiff's purchase, HP did not sell the All-in-One PC for $999.99 for a reasonably substantial period of time, if ever at all.  Indeed, daily

pricing data collected by Plaintiff's counsel indicates that $999.99 was neither the prevailing price of the All-in-One PC during the three-month period immediately preceding Plaintiff's purchase, nor during the one-month period after his purchase, as shown below.



60.     Likewise, daily pricing data collected by Plaintiff's counsel indicates that $16.99 was not the prevailing price of the G2 Mouse during the three-month period immediately preceding Plaintiff's purchase, as shown below.



---

† Data was not collected for four days in each of June, July, and August, and seven days in September.

†† Data was not collected for ten days in June, six days in July, four days in August, and one day in September.

CLASS ACTION COMPLAINT

61.     Indeed, as of the filing of this complaint, HP continues to advertise the All-in-One PC and G2 Mouse using the false reference prices of $999.99 and $16.99, in clear violation of California law.[6]

62.     Plaintiff's understanding of the value of the All-in-One PC and G2 Mouse was based on his belief that HP regularly sold them for $999.99 and $16.99, respectively, and that $999.99 and $16.99 represented their market values.  HP thereby induced Plaintiff to purchase the All-in-One PC and G2 Mouse by falsely representing to him that he was saving a significant amount of money off their reference prices and by failing to disclose that the reference prices, which Plaintiff reasonably believed to be their regular prices, were not the actual prices at which HP formerly offered the products for sale for a reasonably substantial period of time.  Plaintiff would not have purchased the All-in-One PC and G2 Mouse, or would have paid less for them, had he known that their true regular prices were less than the advertised reference prices and that the advertised savings were fictitious.

63.     Plaintiff desires to make purchases on HP's website in the future and would make such purchases if he could be certain that the reference prices displayed on HP's website represented the bona fide former prices of HP's products and that the advertised savings represented the actual savings he would receive based on bona fide former prices.

64.     Plaintiff is susceptible to HP's ongoing false advertising scheme because he cannot be certain whether HP has corrected its deceptive pricing practices.  As such, without an injunction ordering HP to cease its deceptive pricing practices, Plaintiff is unable to rely on HP's representations regarding the prices of its products when deciding whether to make future purchases on HP's website.

## CLASS ALLEGATIONS

65.     Plaintiff brings this suit pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all others similarly situated.  The Class and Consumer Subclass ("Classes") are defined as follows:

---

[6] *See* https://www.hp.com/us-en/shop/pdp/hp-all-in-one-pc-24-dp1056qe and https://www.hp.com/us-en/shop/pdp/hp-x3000-g2-wireless-mouse, last visited October 13, 2021.

**Class:**  All individuals and entities that, on or after October 13, 2017, purchased one or more HP products on HP's website that were advertised as discounted from a reference price (i.e., a strikethrough price).

**Consumer Subclass:**  All members of the Nationwide Class who are "consumers" within the meaning of California Civil Code § 1761(d) and made their respective purchases on or after October 13, 2018.

66.   Excluded from the Classes are HP, its parents, subsidiaries, affiliates, officers, directors, legal representatives, predecessors, successors, assigns, and employees, and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

67.   <u>Numerosity</u>:  Although the exact number of members of the Classes is uncertain and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable.  Plaintiff is informed and believes there are hundreds of thousands, if not millions, of members of the Classes that have been damaged by HP's deceptive practices alleged herein.  The disposition of the claims of all Classes in a single action will provide substantial benefits to all parties and to the Court.  The members of the Classes are readily identifiable from information and records in HP's possession, custody, or control.

68.   <u>Commonality</u>:  This action involves common questions of law and fact, including, but not limited to, the following:

a.     whether HP made false or misleading statements of fact in its advertisements;

b.     whether HP's advertisements had a tendency to mislead a reasonable consumer;

c.     whether HP's advertising and marketing practices, as alleged herein, violated established law;

d.     whether HP intended the reference prices advertised on its website to represent the regular and/or former prices of the products offered for sale on its website;

e.     whether HP ever sold or offered for sale the products at the advertised reference prices;

f.     whether the limited-time offers advertised on HP's website were, in fact, so limited in time;

g.      whether HP's statements concerning the reference prices, discounts, and limited-time offers displayed on its website were material, such that a reasonable consumer would attach importance to and be induced to act on the information in determining whether to make a purchase on HP's website;

h.      whether a reasonable consumer would interpret HP's reference prices as the regular and/or former prices of the products advertised on HP's website;

i.      whether a reasonable consumer would believe the products offered for sale on HP's website have a market value equal to the advertised reference price;

j.      whether HP misrepresented and/or failed to disclose material facts about the reference prices, discounts, and limited-time offers advertised on its website;

k.      whether HP knew, or by the exercise of reasonable care should have known, that the reference prices, discounts, and limited-time offers advertised on its website were untrue and misleading;

l.      whether HP intended the reference prices, discounts, and limited-time offers advertised on its website to induce customers to purchase products;

m.      whether the practices alleged herein constituted a breach of contract;

n.      whether the practices alleged herein constituted a breach of express warranty;

o.      whether HP's pricing scheme alleged herein—consisting of false reference prices, false discounts, and fake limited-time offers—was false or misleading within the meaning of California's False Advertising Law, Consumer Legal Remedies Act, or Unfair Competition Law.

p.      how to calculate the prevailing market price for products sold on HP's website for the purposes of Cal. Bus. & Prof. Code § 17501;

q.      whether the reference prices displayed on HP's website equaled the prevailing market price for the products in question during the three-month period preceding their publication;

r.      whether HP's pricing scheme alleged herein constitutes "fraud," as that term is defined in Cal. Civ. Code § 3294(c)(3);

s. whether HP has been unjustly enriched from products falsely advertised and sold on its website;

t. whether HP is likely to continue engaging in false advertising such that an injunction is necessary; and

u. whether Plaintiff and members of the Classes are entitled to damages, restitution, and/or punitive damages as a result of HP's conduct alleged herein.

69. <u>Typicality</u>:  Plaintiff's claims are typical of the Class claims in that Plaintiff, like all members of the Classes, was deceived and damaged by HP's misrepresentations and corresponding failure to provide the advertised discounts, savings, and product values.  Furthermore, the factual bases of HP's misconduct are common to all members of the Classes and represent a common thread resulting in injury to the Classes.

70. <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of all members of the classes, and Plaintiff's interests are coincident with and not antagonistic to those of other members of the Classes.  Plaintiff has retained competent counsel who are experienced in prosecuting class actions.

71. Class certification is appropriate under Rule 23(b)(2) because HP has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to all members of the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

72. Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any question that may affect only individual members of the Classes.  Plaintiff and members of the Classes have all suffered, and will continue to suffer, harm and damages as a result of HP's uniform deceptive pricing practices.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Individual litigation of the claims of all members of the Classes is impracticable because the cost of litigation would be prohibitively expensive given the relatively small size of the individual Class members' claims.  Moreover, individualized litigation would impose an immense burden upon the courts and present the potential for varying, inconsistent, or contradictory judgments.  By contrast,

maintenance of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all members of the Classes. Absent a class action, Plaintiff and members of the Classes would be unable seek redress, and HP's deceptive pricing practices would continue unabated without remedy or relief.

### FIRST CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of the Class)**

73.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

74.     Plaintiff brings this cause of action on behalf of himself and the Class.

75.     Plaintiff and Class members entered into written contracts with HP when they placed orders to purchase products on HP's website.

76.     The contracts are drafted by HP and are uniform as to their material terms, which are presented to customers at the time they place an order on HP's website, and which are memorialized in the order confirmations HP emails to customers immediately after they place their order.

77.     The contracts provided that Plaintiff and Class members would pay HP for their products.

78.     The contracts further provided that (i) HP would provide Plaintiff and Class members products that had a market value equal to the reference price displayed on HP's website, and (ii) HP would provide a specific discount equal to the difference between the reference price and sale price.  The specified discount was a specific and material term of each contract.

79.     The specified discount was displayed to Plaintiff and Class members at the time they placed their orders and was memorialized in the order conformations that HP emailed to them after they had placed their orders.

80.     Plaintiff and Class members paid HP for the products they ordered and satisfied all other conditions of their contracts.

81.     HP breached the contracts with Plaintiff and Class members by failing to provide

1  products that had a market value equal to the reference price displayed on its website, and by failing

2  to provide the specified discount.

3        82.     As a direct and proximate result of HP's breaches, Plaintiff and Class members were

4  deprived of the benefit of their bargained-for exchange and have suffered damages in an amount to

5  be established at trial.

6                  **SECOND CAUSE OF ACTION**
   **Breach of Express Warranty**
7                  **(On Behalf of the Class)**

8        83.     Plaintiff incorporates by reference each of the allegations contained in the preceding

9  paragraphs of this Complaint.

10        84.     Plaintiff brings this cause of action on behalf of himself and the Class.

11        85.     The Uniform Commercial Code § 2-313 provides that any affirmation of fact or

12  promise made by a seller to a buyer which relates to the goods and becomes part of the basis of the

13  bargain creates an express warranty that the goods shall conform to the affirmation or promise.

14        86.     Through its advertising, marketing, and sales, HP made affirmations of fact to

15  Plaintiff and Class members including, but not limited to, affirmations that the reference prices

16  displayed on its website reflected the market values of the products Plaintiff and Class members

17  purchased.

18        87.     Through its advertising, marketing, and sales, HP made promises to Plaintiff and

19  Class members including, but not limited to, promises that Plaintiff and Class members would save

20  money as a result of the discounts advertised on HP's website and that the amount of money saved

21  would equal the difference between the reference price and the purchase price.

22        88.     The affirmations of fact and promises made by HP to Plaintiff and Class members

23  were specific, in writing, and expressed unequivocally, and were made to induce Plaintiff and Class

24  members to purchase products from HP's website.

25        89.     Plaintiff and Class members relied on the affirmations of fact and promises in

26  deciding to purchase products from HP.

27        90.     The affirmations of fact and promises became part of the basis of the bargain struck

28  between HP and Plaintiff and Class members and created an express warranty that the products

1     purchased by Plaintiff and Class members would conform to HP's representations.

2         91.     All conditions precedent to HP's liability under the express warranties created by

3     HP's representations have been fulfilled by Plaintiff and Class members or have been waived.

4         92.     HP breached the terms of the express warranty by failing to deliver products that

5     conformed to its representations.  The products did not have the market value specified by HP; the

6     products were not sold or offered for sale at the reference prices displayed on HP's website for a

7     reasonably substantial period of time; and Plaintiff and Class members did not receive the savings

8     HP had promised them.

9         93.     HP has actual or constructive notice that the products purchased by Plaintiff and

10     Class members were not delivered as warranted given the deliberate, pervasive, and ongoing nature

11     of its deceptive pricing scheme, as described herein.

12         94.     Despite having notice of its breaches of express warranty, HP has taken no action to

13     date to remedy its breaches of express warranty.

14         95.     As a direct and proximate result of HP's breaches of express warranty, Plaintiff and

15     Class members have been injured and have suffered actual damages.

16

**THIRD CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of the Class)**

17

18         96.     Plaintiff incorporates by reference each of the allegations contained in the preceding

19     paragraphs of this Complaint.

20         97.     Plaintiff brings this cause of action on behalf of himself and the Class.

21         98.     As alleged herein, HP made false representations and material omissions of fact to

22     Plaintiff and Class members concerning the existence, duration, and/or nature of the discounts and

23     savings advertised on its website.

24         99.     As part of those false representations, HP engaged in the following practices:

25         a.     falsely representing that customers were receiving a discount from a

26     reference price, when in fact HP inflated the reference price such that the promised discount

27     was false;

28         b.     falsely representing that customers were receiving savings equal to the

difference between the reference price and sale price, when in fact customers received no such savings, or received substantially less savings, because the reference price was inflated and not the actual price at which HP formerly sold the product for a reasonably substantial period of time; and

      c.    falsely representing that its discounts were limited-time offers, when in fact the discounts were not so limited in time.

100.    HP failed to disclose material facts regarding the above.  Specifically, HP failed to disclose to Plaintiff and Class members that (i) the advertised reference prices did not reflect bona fide regular prices—i.e., the price at which HP formerly sold or offered for sale the product for a reasonably substantial period of time; (ii) the advertised discounts were not based on bona fide regular prices; and (iii) the advertised limited-time offers were not so limited in time.  These omissions were material, and had HP disclosed the above information, Plaintiffs and Class members would not have purchased the products or would have paid less for them.

101.    HP's false representations and omissions are the type of representations and omissions that are regularly considered to be material—i.e., a reasonable person would attach importance to them and would be induced to act on the information in making a purchasing decision.

102.    HP's false representations and omissions relating to the discounts and savings displayed on its website are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

103.    HP's false representations and material omissions were made to Plaintiff and Class members for the purpose of affecting their purchasing decisions.

104.    HP had no reasonable grounds for believing that its false representations were true.

105.    HP failed to exercise reasonable care and/or diligence in making its false representations and material omissions to Plaintiff and Class members.

106.    Plaintiff and Class members reasonably and justifiably relied to their detriment on HP's false representations and material omissions.

107.    HP's false representations and material omissions were a factor in causing Plaintiff

1    and Class members to purchase products on HP's website.

2       108.    As a proximate result of HP's false representations and material omissions, Plaintiff

3    and Class members were damaged in an amount to be determined at trial.

4                            **FOURTH CAUSE OF ACTION**
                            **Intentional Misrepresentation**
5                              **(On Behalf of the Class)**

6       109.    Plaintiff incorporates by reference each of the allegations contained in the preceding

7    paragraphs of this Complaint.

8       110.    Plaintiff brings this cause of action on behalf of himself and the Class.

9       111.    As alleged herein, HP intentionally made false representations and material

10   omissions of fact to Plaintiff and Class members concerning the existence, duration, and/or nature

11   of the discounts and savings advertised on its website.

12      112.    As part of those false representations, HP intentionally engaged in the following

13   practices:

14          a.    falsely representing that customers were receiving a discount from a

15      reference price, when in fact HP inflated the reference price such that the promised discount

16      was false;

17          b.    falsely representing that customers were receiving savings equal to the

18      difference between the reference price and sale price, when in fact customers received no

19      such savings, or received substantially less savings, because the reference price was inflated

20      and not the actual price at which HP formerly sold the product for a reasonably substantial

21      period of time; and

22          c.    falsely representing that its discounts were limited-time offers, when in fact

23      the discounts were not so limited in time.

24      113.    HP intentionally failed to disclose material facts regarding the above.  Specifically,

25   HP intentionally failed to disclose to Plaintiff and Class members that (i) the advertised reference

26   prices did not reflect bona fide regular prices—i.e., the price at which HP formerly sold or offered

27   for sale the product for a reasonably substantial period of time; (ii) the advertised discounts were

28   not based on bona fide regular prices; and (iii) the advertised limited-time offers were not so limited

in time.  These omissions were material, and had HP disclosed the above information, Plaintiffs and Class members would not have purchased the products or would have paid less for them.

114.    HP's false representations and omissions are the type of representations and omissions that are regularly considered to be material—i.e., a reasonable person would attach importance to them and would be induced to act on the information in making a purchasing decision.

115.    HP's false representations and omissions relating to the discounts and savings displayed on its website are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

116.    HP intended Plaintiff and Class members to rely on its false representations and material omissions when making purchases on HP's website.

117.    HP knew that its intentional misrepresentations and material omissions were false and misleading at the time HP made them and/or acted recklessly in making such misrepresentations and omissions.

118.    Plaintiff and Class members reasonably and justifiably relied to their detriment on HP's intentional misrepresentations and material omissions.

119.    HP's intentional misrepresentations and material omissions were a substantial factor in causing Plaintiff and Class members to purchase products and services from HP.

120.    As a proximate result of HP's intentional misrepresentations and material omissions, Plaintiff and Class members suffered an ascertainable loss and are entitled to compensatory and punitive damages, in an amount to be determined at trial.

121.    In making intentional misrepresentations and material omissions to Plaintiff and Class members, HP acted with malice, oppression, and fraud.

122.    HP's conduct alleged herein constitutes "fraud," as that term is defined in Cal. Civ. Code § 3294(c)(3), because such conduct involved intentional misrepresentations, deceit, and/or concealment of material facts known to HP, and was done with the intent to cause Plaintiff and Class members to purchase products they would not have otherwise purchased and/or pay more for them based on a false perception of their market value.

1
2

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of the Class)**

3      123.    Plaintiff incorporates by reference each of the allegations contained in the preceding

4   paragraphs of this Complaint.

5      124.    Plaintiff brings this cause of action on behalf of himself and the Class.

6      125.    HP intentionally and/or recklessly made false representations and material omissions

7   to Plaintiff and Class members regarding the reference price and market value of products offered

8   for sale on its website.  HP did so to induce Plaintiff and Class members to purchase products on its

9   website.  Plaintiff and Class members reasonably and justifiably relied on HP's false

10  representations when purchasing products on HP's website.

11     126.    HP made false promises and material omissions to Plaintiff and Class members

12  regarding the discounts and savings they were supposedly receiving.  HP did so to induce Plaintiff

13  and Class members to make purchases on HP's website and to pay more for products than they

14  otherwise would have.  HP did not intend to keep, and in fact did not keep its false promises.

15  Plaintiff and Class members reasonably and justifiably relied on HP's false promises when making

16  purchases on HP's website.

17     127.    Plaintiff and Class members conferred benefits on HP by making purchases on HP's

18  website.

19     128.    HP has knowledge of such benefits, and voluntarily accepted and retained the

20  benefits conferred.

21     129.    HP has been unjustly enriched in retaining the revenues derived from the purchases

22  made by Plaintiff and Class members.

23     130.    Retention of that money under these circumstances is unjust and inequitable because

24  HP misrepresented that its products were discounted and had a market value which they in fact did

25  not have.

26     131.    HP's misrepresentations, failures to disclose, and false promises caused injuries to

27  Plaintiff and Class members because they would not have purchased the products, or would have paid

28  less for them, had they known that the products did not have the advertised particular worth or value.

-35-

1       132.    Because HP's retention of the non-gratuitous benefits conferred to it by Plaintiff and

2  Class members is unjust and inequitable, HP ought to pay restitution to Plaintiff and Class members

3  for its unjust enrichment.

4       133.    As a direct and proximate result of HP' unjust enrichment, Plaintiff and Class

5  members are entitled to restitution or disgorgement in an amount to be proved at trial.

6                          **SIXTH CAUSE OF ACTION**

      **Violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.***
7                              **(On Behalf of the Class)**

8       134.    Plaintiff incorporates by reference each of the allegations contained in the preceding

9  paragraphs of this Complaint.

10      135.    Plaintiff brings this cause of action on behalf of himself and the Class.

11      136.    HP has violated, and continues to violate, Section 17500 of the Business and

12  Professions Code by disseminating untrue and misleading advertisements over the internet to

13  Plaintiff and Class members.

14      137.    HP disseminated untrue and misleading advertisements by advertising false

15  reference prices, false discounts, and fake limited-time offers with respect to HP products offered

16  for sale on its website.

17      138.    HP disseminated such untrue and misleading advertisements with the intent to

18  induce Plaintiff and Class members to purchase products on its website.

19      139.    HP knew, or by the exercise of reasonable care should have known, that the false

20  reference prices, false discounts, and fake limited-time offers were untrue or misleading.

21      140.    HP fraudulently concealed from and intentionally failed to disclose to Plaintiff and

22  Class members the truth about the false reference prices, false discounts, and fake limited-time

23  offers.  Specifically, HP failed to inform Plaintiff and Class members that (i) the advertised

24  reference prices did not reflect bona fide regular prices—i.e., the price at which HP formerly sold

25  the computer for a reasonably substantial period of time; (ii) the advertised discounts were not based

26  on bona fide regular prices; and (iii) the advertised limited-time offers were not so limited in time.

27  Had HP disclosed this information to Plaintiff and Class members, they would not have purchased

28  the products in question or would have paid less for them.

141.    Plaintiff and Class members reasonably relied on HP's representations and/or omissions made in connection with the advertised reference prices, discounts, and limited-time offers, and were induced to purchase HP products based on the belief that they were receiving a discount on products valued at more than what they actually received, and that the discount would be available only for a limited time.

142.    HP's representations and/or omissions made in connection with its reference prices, discounts, and limited-time offers were likely to deceive reasonable consumers by obfuscating the true value of HP products.

143.    Had Plaintiff and Class members known that the reference prices were false and artificially inflated, they would not have purchased products from HP or would have paid less for them.

144.    As a direct and proximate result of HP's untrue and misleading advertising, HP has improperly acquired money from Plaintiff and Class members.  As such, Plaintiff requests this Court order HP to restore this money to them and all Class members.

145.    HP's violations of Section 17500 are ongoing because it continues to advertise false reference prices, false discounts, and fake limited-time offers to Plaintiff, Class members, and the public at large.  Unless restrained by this Court, HP will continue to engage in untrue and misleading advertising, as alleged above, in violation of Section 17500.  Accordingly, Plaintiff seeks an injunction enjoining HP from continuing to violate Section 17500.

**SEVENTH CAUSE OF ACTION**
**Violation of California's False Advertising Law, Bus. & Prof. Code § 17501**
**(On Behalf of the Class)**

146.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

147.    Plaintiff brings this cause of action on behalf of himself and the Class.

148.    HP has violated, and continues to violate, Section 17501 of the Business and Professions Code by advertising false former prices on its website.

149.    HP advertises former prices on its website by (i) displaying prices using strikethrough typeface (e.g., ~~$999.99~~) and/or (ii) displaying discounts using words and phrases such

as "Save," "You'll Save," and "You Saved," followed by a specific dollar amount.

150.    The former prices advertised by HP (i) do not reflect the prevailing market prices for the products in question within the three months immediately preceding publication of the advertisement, (ii) were not offered by HP on a bona fide basis for a majority of the days the products were offered for sale during the three-month period immediately preceding publication of the advertisement, and/or (iii) were never offered by HP on a bona fide basis.

151.    HP's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed, and provide no indication whether or to what extent the former prices advertised on its website were offered on a bona fide basis.

152.    The relevant "market" for the purpose of applying Section 17501 consists of offers made on HP's website because (i) all of the advertisements at issue concern HP products, manufactured by HP, and offered for sale on HP's website, (ii) HP intends its representations relating to former prices and discounts to refer to its own prices; and (iii) Plaintiff and Class members reasonably interpreted HP's former price advertisements to refer to HP's former prices.

153.    HP violated, and continues to violate, Section 17501 with actual or constructive knowledge that its former price advertisements are untrue or misleading.

154.    HP violated, and continues to violate, Section 17501 to induce Plaintiff and Class members to make purchases on its website based on the false impression they are receiving a discount on a product valued at more than what they actually received.

155.    Plaintiff and Class members reasonably relied on HP's representations and/or omissions made in violation of Section 17501, and were thereby induced to pay more for HP products and make purchases they would not have otherwise made.

156.    As a direct and proximate result of HP's violations of Section 17501, HP has improperly acquired money from Plaintiff and Class members.  As such, Plaintiff requests this Court order HP to restore this money to them and all Class members.

157.    HP's violations of Section 17501 are ongoing because it continues to advertise former prices that do not reflect the prevailing market prices for the products in question within the three months immediately preceding publication of the advertisement without stating clearly,

1  exactly, and conspicuously when the alleged former price did prevail.  Unless restrained by this

2  Court, HP will continue to violate Section 17501, as alleged above.  Accordingly, Plaintiff seeks an

3  injunction enjoining HP from continuing to violate Section 17501.

4                          **EIGHTH CAUSE OF ACTION**
   **Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.***
5                   **(On Behalf of the Consumer Subclass)**

6          158.    Plaintiff incorporates by reference each of the allegations contained in the preceding

7  paragraphs of this Complaint.

8          159.    Plaintiff brings this cause of action on behalf of himself and the Consumer Subclass.

9          160.    HP violated, and continues to violate, Section 1770(a)(5) of the California Civil

10  Code by representing that products offered for sale on its website have characteristics or benefits

11  which they do not have.  Specifically, HP represents that the value of its products is greater than it

12  actually is by advertising inflated reference prices for products sold on its website.

13          161.    HP violated, and continues to violate, Section 1770(a)(9) of the California Civil

14  Code by advertising products as discounted when HP intends to, and does in fact, sell them at their

15  regular prices.

16          162.    HP violated, and continues to violate, Section 1770(a)(13) of the California Civil

17  Code by making false or misleading statements of fact concerning reasons for, existence of, or

18  amounts of, price reductions on its website.  Specifically, HP has violated Section 1770(a)(13) by

19  engaging in the following unlawful acts and practices:

20          a.      misrepresenting the regular prices of products on its website by advertising

21      false reference prices;

22          b.      advertising discounts and savings that are inflated or nonexistent because

23      they are based on false reference prices; and

24          c.      misrepresenting that the discounts and savings on its website are available

25      only for a limited time, when in fact the discounts and savings are not so limited in time.

26          163.    HP violated, and continues to violate, Section 1770(a)(16) of the California Civil

27  Code by representing that the subject of a transaction has been supplied in accordance with a

28  previous representation when it has not.  Specifically, HP represents on its website that it sells

products at specified discounts.  After a customer places an order, HP emails the customer an order confirmation confirming that the products were sold at a discount.  But in fact, HP does not sell, nor does it intend to sell, its products at the specified discounts.

164.   Pursuant to Cal. Civ. Code § 1782(a), on October 8, 2021, Plaintiff's counsel sent notice to HP by certified mail detailing its particular violations of § 1770 of the CLRA, as alleged above, and demanded that it rectify such violations by (i) giving notice to all affected customers, (ii) removing all false reference prices from its website, (iii) removing all false discounts from its website, (iv) removing all fake limited-time offers from its website, and (v) providing restitution and damages to Plaintiff and Class members.

165.   Pursuant to Cal. Civ. Code § 1782(d), if HP fails to rectify, or fails to agree to rectify, its violations of § 1770 within thirty (30) days of receiving Plaintiff's letter, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive, and statutory damages under the CLRA. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

### NINTH CAUSE OF ACTION
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the Class)**

166.   Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

167.   Plaintiff brings this cause of action on behalf of himself and the Class.

168.   HP has violated, and continues to violate, the "unlawful" prong of California's Unfair Competition Law, Bus. Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in the following unlawful business acts and practices:

a.   disseminating untrue and misleading advertisements over the internet by advertising false reference prices, false discounts, and fake limited-time offers, in violation of Bus. & Prof. Code § 17500;

b.   advertising former prices of products which do reflect the prevailing market prices for the products in question within the three months immediately preceding publication of the advertisement without stating clearly, exactly, and conspicuously when the alleged former price did prevail, in violation of Bus. & Prof. Code § 17501;

CLASS ACTION COMPLAINT

1    c. by representing that products offered for sale on its website have

2 characteristics or benefits which they do not have in violation of Civ. Code § 1770(a)(5);

3    d. by advertising products on its website with intent not to sell them as

4 advertised, in violation of Civ. Code § 1770(a)(9);

5    e. making false or misleading statements of fact concerning the reasons for,

6 existence of, or amounts of price reductions as to products sold on its website, in violation

7 of Civ. Code § 1770(a)(13); and

8    f. representing that products sold on its website were supplied in accordance

9 with its previous representations when in fact they were not, in violation of Civ. Code §

10 1770(a)(16).

11  169. HP has violated, and continues to violate, the "fraudulent prong" of the UCL by

12 engaging in the following fraudulent business acts and practices:

13    a. using misrepresentations, deception, and/or concealment of material

14 information in connection with the former price and market value of products sold on HP's

15 website, such that Plaintiff and Class members were likely to be deceived;

16    b. advertising reference prices, discounts, and limited-time offers that are false,

17 misleading, and/or have a capacity, likelihood, or tendency to deceive Plaintiff and Class

18 members; and

19    c. failing to provide Plaintiff and Class members with information as to when,

20 if ever, the reference prices displayed on HP's website were bona fide offer prices.

21  170. HP has violated, and continues to violate, the "unfair" prong of the UCL by

22 engaging in the following unfair business acts and practices:

23    a. engaging in false reference pricing in connection with the sale of products on

24 its website such that Plaintiff and Class members, who could not have reasonably avoided

25 such predatory schemes, have been injured—a practice that serves no benefit to consumers

26 or competition;

27    b. engaging in false reference pricing whereby the harm to consumers,

28 competition, and the public far outweighs any utility of the practice, which only serves to

CLASS ACTION COMPLAINT

deceive consumers and give HP an unfair advantage over other computer manufacturers;
and

        c.      engaging in false and misleading advertising in contravention of public
policy, including such public policy as reflected in Cal. Bus. & Prof. Code § 17501, Cal.
Civ. Code § 1770(a)(13), and 16 C.F.R. §§ 233.1 and 233.5.

### RELIEF REQUESTED

      WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests the
court order the following relief and enter judgment against HP Inc. as follows:

      A.      An order certifying that this action may be maintained as a class action, that Plaintiff
be appointed representative of the Classes, and Plaintiff's counsel be appointed Class Counsel;

      B.      An order enjoining HP from continuing to violate California's False Advertising
Law, Consumer Legal Remedies Act, and Unfair Competition Law, as described herein;

      C.      A judgment awarding Plaintiff and Class members restitution and/or other equitable
relief, including, without limitation, disgorgement of all money HP improperly acquired from
Plaintiff and Class members as a result of its false advertising and unlawful, unfair, and fraudulent
business practices;

      D.      A judgment awarding Plaintiff and Class members actual damages in an amount to
be determined at trial;

      E.      A judgment awarding Plaintiff and Class members punitive damages in an amount to
be determined at trial;

      F.      A judgment awarding Plaintiff and his costs of suit; including reasonable attorney's
fees pursuant to California Civil Code § 1780(d), Code of Civil Procedure § 1021.5, and as
otherwise permitted by statute;

      G.      Pre- and post-judgment interest; and

      H.      Such other and further relief as may be necessary or appropriate under the
circumstances.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Local Rule 3-6, Plaintiff demands a jury trial on all triable issues.


Dated:  October 13, 2021                        Respectfully submitted,



By:    /s/ Daniel A. Rozenblatt
       Daniel A. Rozenblatt (SBN 336058)
       Seth W. Wiener (SBN 203747)
       EDGE, A PROFESSIONAL LAW CORPORATION
       1341 La Playa Street 20
       San Francisco, CA 94122
       Telephone: (415) 515-4809

       Tarek H. Zohdy (SBN 247775)
       Cody R. Padgett (SBN 275553)
       Laura E. Goolsby (SBN 321721)
       CAPSTONE LAW APC
       1875 Century Park East, Suite 1000
       Los Angeles, California 90067
       Telephone: (310) 556-4811
       Facsimile: (310) 943-0396

       Attorneys for Plaintiff
       RODNEY CARVALHO

CLASS ACTION COMPLAINT