**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel@edge.law
Seth W. Wiener (SBN 203747)
seth@edge.law
1341 La Playa Street 20
San Francisco, CA 94122
Telephone: (415) 515-4809

**CAPSTONE LAW APC**
Tarek H. Zohdy (SBN 247775)
tarek.zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
laura.goolsby@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiffs
RODNEY CARVALHO and MARK MAHER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY CARVALHO and MARK MAHER, individually and on behalf of all others similarly situated, | Case No.: 5:21-cv-08015-BLF |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| HP INC., a Delaware corporation, | |
| Defendant. | |

1    Plaintiffs Rodney Carvalho and Mark Maher ("Plaintiffs"), individually and on behalf of all

2  others similarly situated, bring this action against Defendant HP Inc. ("HP").  Upon personal

3  knowledge as to their own acts and status and upon information and belief as to all other matters,

4  Plaintiffs allege the following:

5                                    **<u>INTRODUCTION</u>**

6    1.    This is a class action against HP for false advertising on its website, HP.com.  HP is

7  the largest computer seller in the United States.  To sell more products and maximize its profits, HP

8  displays false reference prices on its website and advertises false savings based on those prices.

9  The reference prices are false because they do not represent the actual prices at which HP regularly

10  sells its products.  The savings are false because they do not represent the actual savings obtained

11  by customers.  This unlawful marketing practice, commonly known as false reference pricing,

12  artificially increases demand for HP products and induces customers to pay more for them based on

13  a false impression of their value.  HP's use of false reference prices and false savings is pervasive

14  throughout its website.

15    2.    California law and federal regulations specifically prohibit this type of false

16  advertising.  For example, California's consumer protection statute prohibits "[m]aking false or

17  misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions."

18  Civ. Code § 1770(a)(13).  California's false advertising law prohibits advertising a former price

19  unless it was the prevailing market price during the previous three months.  Bus. & Prof. Code §

20  17501.  As explained in the Federal Trade Commission's (FTC) Guide Against Deceptive Pricing,

> [When] the former price being advertised is not bona fide but fictitious—for example,
> where an artificial, inflated price was established for the purpose of enabling the
> subsequent offer of a large reduction—the "bargain" being advertised is a false one;
> the purchaser is not receiving the unusual value he expects.

24  16 C.F.R. § 233.1.

25    3.    HP willfully violates these laws.  For example, on September 7, 2021, Plaintiff

26  Carvalho purchased an All-in-One desktop computer on HP's website.  HP advertised the computer

27  as being on sale for $899.99 and represented to customers that they would "Save $100 instantly" off

28  the regular price of $999.99, which was displayed in strikethrough typeface (e.g., ~~$999.99~~).  Below is a

screenshot of Carvalho's computer, as advertised on HP's website the day Carvalho made his purchase.



**September 7, 2021**

4.     At the time of his purchase, Carvalho believed he was buying a computer that was valued at and regularly sold for $999.99.  But discovery will show that in the weeks and months prior to Carvalho's purchase, HP rarely, if ever, offered his computer for sale at the advertised reference price of $999.99.  Indeed, pricing data compiled by Plaintiffs' counsel demonstrates as much:

**Advertised Prices of Carvalho's Computer on HP.com**

| Date | Ref. Price | Sale Price |
|---|---|---|
| 4/29/2021 | $999.99 | $899.99 |
| 5/29/2021 | $999.99 | $899.99 |
| 6/29/2021 | $999.99 | $899.99 |
| 7/29/2021 | $999.99 | $899.99 |
| 8/29/2021 | $999.99 | $899.99 |
| 9/29/2021 | $999.99 | $899.99 |

5.     By using false reference prices to artificially increase the perceived value of HP products, HP harms consumers by inducing them to pay more for its products and make purchases they would not have otherwise made.

-2-
FIRST AMENDED CLASS ACTION COMPLAINT

6.      HP's false reference prices also harm competition by giving HP an unfair advantage over other computer manufacturers that do not engage in false reference pricing.  After all, a customer is more likely to purchase a $2,000 computer advertised at 50% off its regular price than pay full price for a $1,000 computer.

7.      In addition to using false reference prices, HP also falsely advertises limited-quantity and limited-time offers.  For example, on May 28, 2021, HP featured Carvalho's computer in the "Weekly Deal" section of its website and advertised there was "**Only 1 Left!**"  Yet in the weeks and months that followed, HP continued to sell Carvalho's computer but removed any representations about the supposed limited quantity.



8.      In another effort to artificially increase demand for its products, on September 28, 2021, HP advertised Carvalho's computer for $899.99 as part of a "**72 Hour Flash Sale**."  At the top of the screen, HP displayed a banner that stated, "**Get limited time deals on select products**" and "**Hurry! This sale ends in:**" above a live countdown timer.  Below is an example of a screenshot that was taken on September 28, 2021, at 3:07 p.m., indicating the sale would end in 8 hours, 52 minutes, and 31 seconds.



9.      But the sale did not end in 8 hours, 52 minutes, and 31 seconds.  Instead, HP merely removed the flash sale marketing from its website and continued to sell Carvalho's computer at the same price and discount, as shown below.



10.     Indeed, instead of increasing the price of Carvalho's computer after the flash sale ended, HP simply invented a new sale—the "HP Days" sale.  Below is an example of a screenshot taken from HP's website on October 3, 2021, five days after the flash sale ended.  As shown below, HP continued to advertise Carvalho's computer at the same price and discount of $899.99, $100 off the reference price of $999.99.



11.     Discovery will show that HP's flash sales and other limited-time offers are merely falsehoods intended to induce prospective customers to make purchases they would not have otherwise made and pay more for HP products based on a false impression they are getting a special deal.

12.     HP advertises false reference prices, false discounts, and fake-limited time offers for hundreds of products on its website every day.  The pervasive, ongoing nature of its deceptive pricing scheme demonstrates that false reference pricing is central to its overall marketing strategy.

In bringing this lawsuit, Plaintiffs intend to curb these and other unlawful and deceptive advertising practices on HP's website.  Plaintiffs seek public injunctive relief in the form of a court order prohibiting HP from continuing to falsely advertise on its website, and seek compensation for themselves and all others similarly situated who have been duped by HP's false advertising.

## THE PARTIES

13.  Plaintiff Rodney Carvalho ("Carvalho") is a resident of Las Vegas, Nevada.  On September 7, 2021, Carvalho accessed HP's website from his residence and purchased a computer and mouse from HP for personal use.

14.  Plaintiff Mark Maher ("Maher") is a resident of Pittsburg, California.  On June 14, 2021, Maher accessed HP's website from his residence and purchased a laptop computer from HP for personal use.

15.  Defendant HP Inc. ("HP") is a Delaware corporation, with its principal place of business at 1501 Page Mill Road, Palo Alto, California 94304.  HP sells computers and related peripheral parts, software and services to customers throughout the United States through its website, HP.com.

## JURISDICTION AND VENUE

16.  This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the aggregate claims of the members of the proposed Classes exceed $5 million (exclusive of interest and costs), the proposed Classes consist of 100 or more members, and at least one member of the proposed Classes is a citizen of a different state than HP.

17.  California has personal jurisdiction over HP because HP has its principal place of business in California and is thus subject to general jurisdiction in California.

18.  Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because HP resides in this District, and a substantial part of the events or omissions which give rise to Plaintiffs' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

19.  Pursuant to the Northern District of California's Local Rule No. 3-2(e), assignment

FIRST AMENDED CLASS ACTION COMPLAINT

of this matter to the San Jose Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in Palo Alto, California, which is located in Santa Clara County.

## FACTUAL ALLEGATIONS

20.     HP is a $56.6 billion Fortune 500 company headquartered in Palo Alto, California.[1] It is the largest computer manufacturer in the United States and the second largest in the world.  In the second quarter of 2021 alone, HP shipped over 4 million PCs to the United States and had a 28.4% market share of the U.S. market.[2]  HP's customers include individual consumers, small to medium-sized businesses, state and federal governments, K-12 and higher education organizations, and large corporations.

21.     HP does not have any physical retail stores in the United States.  Instead, HP markets and sells its products and services directly to customers through its website, HP.com.  In August 2021, HP's website received over 80 million visits, of which approximately 28% originated from the United States.[3]

22.     HP's online success has in significant part resulted from its use of false reference prices, false discounts, and fake limited-time offers.

**A.     HP's Pricing Scheme**

23.     HP creates an illusion of savings on its website by advertising false reference prices and false discounts based on those prices.

24.     HP perpetrates this scheme by advertising a **reference price**—i.e., the product's full, non-discounted price—which it typically displays in strikethrough typeface (e.g., ~~$999.99~~).

25.     Adjacent to the reference price, HP advertises a **sale price**, which is the price at which the product is currently offered for sale.  HP typically displays the sale price in larger, bolder

---

[1] Source: https://investor.hp.com/news/press-release-details/2020/HP-Inc.-Reports-Fiscal-2020-Full-Year-and-Fourth-Quarter-Results/default.aspx.

[2] Source: https://www.gartner.com/en/newsroom/press-releases/2021-07-12-gartner-says-worldwide-pc-shipments-grew-4-point-six-in-second-quarter-of-2021.

[3] Sources: https://www.semrush.com/analytics/traffic/journey/hp.com; https://www.alexa.com/siteinfo/hp.com.

FIRST AMENDED CLASS ACTION COMPLAINT

font, often using a contrasting color.

26.    Throughout its website, HP also advertises **discounts** or **savings**, which are typically displayed as a dollar amount equal to the difference between the reference price and the sale price. HP prominently displays the purported discounts on its website together with words or phrases such as "Save," "You'll Save," and "You Saved."

27.    Below are examples of how HP advertises false discounts on its website.




28.    After customers click the button to buy a product, HP directs them to additional pages where they can customize and add accessories to their order.  As shown below, on each of these pages, HP prominently displays the reference price, the sale price, and the savings customers are purportedly receiving.

FIRST AMENDED CLASS ACTION COMPLAINT





29.    Once customers reach the page displaying their online shopping cart, HP again displays the reference price, sale price, and savings.  As shown below, to induce a sale, HP purposely draws its prospective customers' attention to the amount of savings by displaying the amount in bold font on a contrasting blue background.



30.    When customers proceed to check out, they are directed to pages where they can enter their information and review their order.  On each of these pages, HP again falsely promises customers savings equal to the difference between the reference price and sale price.  These "savings" are part of the contract that is entered into between HP and its customers and part of the bargain that is struck between them.  Below is an example of these representations that are made to customers at the time they place their order.

FIRST AMENDED CLASS ACTION COMPLAINT



31. After customers place their order, the promised savings are confirmed on a web page on HP's website and memorialized in an email HP sends to customers after receiving their order.

**Website Confirmation**



**Email Confirmation**

| Product details | Status | Qty | Price |
|---|---|---|---|
| HP ENVY 13 Laptop PC | Processing | 1 | $600.99 |
| Product number: 1F5L3AV | Estimated shipment: Nov 18, | | |
| •Natural silver | 2021 | | |
| •13.3" diagonal FHD, IPS, BrightView, micro-edge, | | | |
| WLED-backlit (1920 x 1080) | | | |
| •256 GB PCIe® NVMe™ M.2 SSD | | | |
| •Intel® Wi-Fi 6 AX 201 (2x2) and Bluetooth® 5 combo | | | |
| (Supporting Gigabit file transfer speeds) | | | |
| •3-cell, 51 Wh Li-ion polymer | | | |
| •Intel® Core™ i5-1135G7 (up to 4.2 GHz, 8 MB L3 | | | |
| cache, 4 cores) + 8 GB (onboard) + Intel® Iris® Xe | | | |
| Graphics | | | |
| $4.00 per unit recycling fee required* | | | |

| Summary of savings: | | Subtotal: | $600.99 |
|---|---|---|---|
| Instant Discounts: $300.00 | | Shipping & Handling: | Free |
| Total Savings: $300.00 | | CA Tax: | $51.84 |
| | | CA Recycling fee*: | $4.00 |
| | | **Total:** | **$656.83** |

FIRST AMENDED CLASS ACTION COMPLAINT

**B.       HP's False reference prices and False Discounts**

32.       Discovery will show that on any given day, HP offers for sale approximately 350 different laptop and desktop computers on its website, and advertises approximately 35% of those computers at a discount from a reference price.  But discovery will show that the majority of the reference prices are false and misleading because they do not represent the actual prices at which the computers were sold or offered for sale for a reasonably substantial period of time.

33.       HP's pricing scheme is misleading because the savings advertised on its website (which are based on the advertised reference prices) do not represent the actual savings customers receive, as Plaintiffs and reasonable consumers understand that term.  Moreover, HP's reference prices violate California law because they do not reflect the prevailing market prices of the products in question during the three-month period immediately preceding their publication.

34.       For example, on March 27, 2021, HP advertised an HP ENVY Laptop, part number 19T04AV_1 ("Envy Laptop") on its website.  HP offered the laptop for sale for $799.99 and represented to customers they were saving of $150 off the reference price of $949.99.



35.       Yet, pricing data compiled by Plaintiffs' counsel indicates that in the weeks and months that followed, HP rarely, if ever, sold the Envy Laptop at the advertised reference price of $949.99.

**Advertised Prices of Envy Laptop on HP.com**

| Date | Ref. Price | Sale Price |
| --- | --- | --- |
| 3/27/2021 | $949.99 | $799.99 |
| 4/24/2021 | $949.99 | $849.99 |
| 5/24/2021 | $949.99 | $829.99 |
| 6/24/2021 | $949.99 | $799.99 |
| 7/24/2021 | $949.99 | $799.99 |
| 8/24/2021 | $949.99 | $749.99 |
| 9/24/2021 | $949.99 | $749.99 |

36.     Pricing data collected by Plaintiffs' counsel for hundreds of computers advertised on HP's website over the course of more than three months indicates that a significant percentage of computers sold on HP's website are offered at discounted prices more often than they are offered at their reference prices.  For example, below are charts reflecting the reference price and sale price of twelve different laptop and desktop computers, as advertised on HP's website for a period of more than three months.  As shown, the sale price of these products rarely, if ever, equals the reference price.









FIRST AMENDED CLASS ACTION COMPLAINT



FIRST AMENDED CLASS ACTION COMPLAINT

37. HP's use of false reference prices is not limited to computers. HP also advertises false reference prices for its monitors, printers, accessories, and warranties. For example, the charts below reflect the reference and sale prices of eight non-computer products advertised on HP's website for a period of more than three months. As shown, the sale price of these products rarely, if ever, equals the reference price.











## C.    HP's Fake Limited-Time Offers

38.    In addition to advertising false reference prices and false discounts, HP further misrepresents that the discounts are available only for a limited time and fails to disclose the continuing nature of these discounts.  By giving potential customers the false impression that they will miss out on the advertised markdowns if they do not make a purchase soon, HP induces customers to make purchases they would not have otherwise made and pay more for HP products than they would have otherwise paid.  Additionally, by imparting a false sense of urgency on prospective customers, HP deters them from shopping at competitor websites.

39.    For that reason, the FTC's Guide Against Deceptive Pricing provides:

> [Retailers] should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a "limited" offer which, in fact, is not limited.  In all of these situations, as well as in others too numerous to mention, advertisers should make certain that the bargain offer is genuine and truthful.

16 C.F.R. § 233.5.

40.    HP employs a variety of means to impart this false sense of urgency on potential customers.  One way is by featuring products in the "Weekly Deals" section of its website, which suggests that the advertised markdowns will expire at the end of the week.  HP lures potential customers to its Weekly Deals by displaying a red banner at the top of its website.



41.    In reality, the Weekly Deals frequently last much longer than a week.  For example, on May 13, 2021, HP advertised a Spectre X360 Convertible Laptop, part number 9AJ99AV_1

-15-

FIRST AMENDED CLASS ACTION COMPLAINT

("Spectre X360"), in the Weekly Deal section of its website.  As shown below, the laptop was advertised as being on sale for $899.99, $150 off the reference price of $1,049.99.

**May 13, 2021**



42.     By featuring the Spectre X360 in the Weekly Deal section of its website, a reasonable consumer is thus led to believe that the advertised discount will last only a week. However, at the end of the week, HP continued to advertise the Spectre X360 at the same price and discount and continued to do so for several more weeks to come.





43.     Indeed, despite advertising the price of $899.99 as a "Memorial Day Special" on May 27 and June 3, as shown above, HP continued to sell the Spectre X360 for $899.99 through July 19, 2021.  (For reference, Memorial Day was on May 31.)  On July 19, HP increased the price of the Spectre X360 by $50 but still continued to sell it for less than the advertised reference price, as shown below.



44.     In addition to advertising fake Weekly Deals, HP also uses fake flash sales to deceive customers about the duration of its discounts.  For example, on May 5, 2021, HP advertised

an HP Envy All-in-One, part number 3UQ84AA#ABA ("Envy All-in-One"), for $1,999.99 as part

of a "**1 Day Flash Sale**" and represented to customers they would "**Save $400**" off the reference

price of $2,399.99.  At the top of the screen, HP displayed a banner that stated, "**Get limited time**

**deals on select products**" and "**Hurry! This sale ends in:**" above a live countdown timer.  Below

is an example of a screenshot that was taken on May 5, 2021 at 8:42 p.m., indicating the sale would

end in 3 hours, 17 minutes, and 7 seconds, which corresponded to midnight.



45.     Reasonable consumers viewing this advertisement are thus led to believe that if they

do not make a purchase within the specified time frame, they will miss out on the advertised savings

of $400.  But in fact, despite representing the sale would end at midnight on May 5, 2021, HP

FIRST AMENDED CLASS ACTION COMPLAINT

continued to advertise the Envy All-in-One at the exact same price the very next day, as shown below.

**May 6, 2021**



46.     Similarly, on multiple occasions Carvalho's computer was also advertised as part of a flash sale.  For example, on June 11, 2021, HP advertised Carvalho's computer for $949.99 as part of a "**2 Day Flash Sale**" and represented to customers they would "**Save $50**" off the reference price of $999.99.  Below is an example of a screenshot taken on June 11, 2021, depicting the flash sale.

1

June 11, 2021



20        47.     A reasonable consumer contemplating buying Carvalho's computer is thus induced to

21   complete the purchase within 25 hours, 59 minutes, and 2 seconds, lest the consumer miss out on the

22   discounted price of $949.99.  In fact, the consumer would have been better off waiting until after the

23   flash sale ended because, as shown below, later that month HP reduced the price even further to

24   $899.99—fifty dollars less than the "flash sale" price.



D.   **The Ongoing Nature of HP's Deceptive Pricing**

48.    On October 8, 2021, Plaintiffs' counsel sent a pre-suit demand letter to HP notifying it of its unlawful and deceptive marketing practices. Although HP received the letter, it continues to advertise false regular prices, false discounts, and fake limited-time offers on numerous products advertised on its website.

49.    Plaintiffs desire to make purchases on HP's website in the future and would make such purchases if they could be certain that the reference prices advertised for the products they wish to purchase represented bona fide former prices and that the advertised savings represented the actual savings based on bona fide former prices.

50.    When shopping on HP's website, Plaintiffs do not have access to HP's former prices and cannot determine which reference prices represent bona fide former prices or which savings represent actual savings. Moreover, Plaintiffs have no way of determining in the future whether HP has corrected its deceptive pricing practices.

51.    Without an injunction ordering HP to cease its deceptive pricing practices, Plaintiffs are unable to rely on HP's representations regarding the prices of its products in deciding whether or not to purchase a product on HP's website in the future. Without such an injunction, there is a real and immediate threat Plaintiffs will be wronged again in a similar way when making future purchases on HP's website.

FIRST AMENDED CLASS ACTION COMPLAINT

**E.**     __Plaintiff Carvalho's Purchase__

52.     On September 7, 2021, Carvalho accessed HP's website from his residence in Las Vegas, Nevada, and purchased an HP All-in-One 24-dp1056qe PC, part number 20W59AA#ABA ("All-in-One PC"), and an HP X3000 G2 Wireless Mouse, part number 2C3M3AA#ABA ("G2 Mouse").

53.     HP advertised the All-in-One PC as being on sale for $899.99 and represented to Carvalho that he would save $100 off the reference price of $999.99.  HP additionally advertised that Carvalho would receive an additional 5% off with the coupon code HP21LDS5 as part of a Labor Day sale.

54.     Enticed by the idea of paying less than the regular price and getting a $999.99 computer for only $899.99 (minus an additional 5% off), Carvalho proceeded to add the All-in-One PC to his shopping cart.

55.     After clicking the button to add the All-in-One PC to his shopping cart, Carvalho was directed to a web page where HP advertised additional accessories for Carvalho to purchase, including the G2 Mouse.  HP advertised the G2 Mouse as being on sale for $11.99, $5.00 off the reference price of $16.99.  Below is an example of the advertisement Carvalho viewed after adding the All-in-One PC to his shopping cart.



-22-

56.     Enticed by the idea of paying less than the regular price and getting a $16.99 mouse for only $11.99 (minus an additional 5% off), Carvalho added the G2 Mouse to his order.

57.     Carvalho was then directed to his online shopping cart.  In his shopping cart, HP represented to Carvalho that he was saving $105.00 off the reference prices of the All-in-One PC and G2 Mouse by displaying "YOU SAVED **$105.00** ON YOUR ORDER" on a contrasting blue background below his order total.

58.     Carvalho then obtained an additional 5% off by entering the Labor Day coupon code HP21LDS5.

59.     Carvalho was then directed to the checkout page where he input his contact information, shipping information, and payment information.  On the checkout page, HP again represented to Carvalho the amount he was saving on his order—now $168.60, due to the additional 5% off and a free HP Stereo USB Headset valued at $18.00 that HP included in his order.

60.     After inputting his information, Carvalho was directed to a final page where he could review and place his order.  On the review page, HP again represented to Carvalho he was saving $168.60 on his order.

61.     In reliance on HP's representations and omissions with respect to the pricing of the All-in-One PC and G2 Mouse, the amount of savings he was purportedly receiving, and the limited-time nature of the advertised discounts, Carvalho placed his order.

62.     Immediately after completing his purchase, HP directed Carvalho to a web page confirming the amount he purportedly saved on his order.  HP also sent Carvalho an order confirmation via email, which confirmed that Carvalho had saved $168.60 on his order—an amount equal to the sum of the differences between the reference prices and sale prices of the All-in-One PC and G2 Mouse ($145.00 and $5.60, respectively), plus the value of the HP Stereo USB Headset ($18.00).

| ORDER RECEIVED<br>06:35 PM EDT, Sep 07, 2021 | | TO SHIP | | |
|---|---|---|---|---|
| **Product details** | | **Status** | **Qty** | **Price** |
| HP All-in-One 24-dp1056qe Bundle PC<br>20W59AA#ABA | | Processing<br>Estimated shipment: Sep 08, 2021 | 1 | $854.99 |
| **Product details** | | **Status** | **Qty** | **Price** |
| HP X3000 G2 Wireless Mouse<br>2C3M3AA#ABA | | Processing<br>Estimated shipment: Sep 08, 2021 | 1 | $11.39 |
| **Product details** | | **Status** | **Qty** | **Price** |
| HP Stereo USB Headset<br>T1A67AA | | Processing<br>Estimated shipment: Sep 08, 2021 | 1 | $0.00 |
| Summary of savings:<br>Instant Discounts: $168.60<br>Total Savings: $168.60 | | Subtotal:<br>Shipping & Handling:<br>NV Tax: | | $866.38<br>Free<br>$72.56 |
| | | **Total:** | | **$938.94** |

63.     Carvalho purchased the All-in-One PC and G2 Mouse after HP had advertised them using false reference prices of $999.99 and $16.99, respectively.  At the time, Carvalho believed he was purchasing a computer valued at $999.99 for approximately 15% off and a mouse valued at $16.99 for approximately 33% off.  Carvalho believed $999.99 and $16.99 were the regular prices of his computer and mouse, and that they would be sold at those prices at the end of the Labor Day sale.

64.     However, discovery will show that prior to Carvalho's purchase, HP did not sell the All-in-One PC for $999.99 for a reasonably substantial period of time, if ever at all.  Indeed, daily pricing data collected by Plaintiffs' counsel indicates that $999.99 was neither the prevailing price of the All-in-One PC during the three-month period immediately preceding Carvalho's purchase, nor during the one-month period after his purchase, as shown below.



65.     Likewise, daily pricing data collected by Plaintiffs' counsel indicates that $16.99 was not the prevailing price of the G2 Mouse during the three-month period immediately preceding Carvalho's purchase, as shown below.



66.     Carvalho's understanding of the value of the All-in-One PC and G2 Mouse was based on his belief that HP regularly sold them for $999.99 and $16.99, respectively, and that $999.99 and $16.99 represented their market values.  HP thereby induced Carvalho to purchase the

---

† Data was not collected for four days in each of June, July, and August, and seven days in September.

†† Data was not collected for ten days in June, six days in July, four days in August, and one day in September.

All-in-One PC and G2 Mouse by falsely representing to him that he was saving a significant amount of money off their reference prices and by failing to disclose that the reference prices, which Carvalho reasonably believed to be their regular prices, were not the actual prices at which HP formerly offered the products for sale for a reasonably substantial period of time.  Carvalho would not have purchased the All-in-One PC and G2 Mouse, or would have paid less for them, had he known that their true regular prices were less than the advertised reference prices and that the advertised savings were fictitious.

**F.      Plaintiff Maher's Purchase**

67.      On June 14, 2021, Maher accessed HP's website from his residence in Pittsburg, California, and purchased an HP Laptop 17t-by400, part number 195P5AV_1 ("17t Laptop").

68.      HP advertised the 17t Laptop as being on sale for $599.99 and represented to Maher that he would save $130 off the reference base price of $729.99.  Below is an example of the advertisement Maher viewed before adding the 17t Laptop to his shopping cart.



69.      Enticed by the idea of paying less than the regular price and getting $130 off the base price, Maher proceeded to add the 17t Laptop to his shopping cart.

70.      After clicking the button to add the 17t Laptop to his shopping cart, Maher was directed to a web page where he could customize his 17t Laptop. Maher upgraded the Wi-Fi adapter and SDRAM, which added $100.00 to the base price of his laptop and increased the sale price to $699.99.

71.     Maher was then directed to his online shopping cart.  In his shopping cart, HP represented to Maher that he was saving $130.00 off the reference base price of the 17t Laptop by displaying "YOU SAVED **$130.00** ON YOUR ORDER" on a contrasting blue background below his order total.

72.     Maher was then directed to the checkout page where he input his contact information, shipping information, and payment information.  On the checkout page, HP again represented to Maher the amount he was purportedly saving on his order.

73.     After inputting his information, Maher was directed to a final page where he could review and place his order.  On the review page, HP again represented to Maher he was saving $130.00 on his order.

74.     In reliance on HP's representations and omissions with respect to the pricing of the 17t Laptop and the amount of savings he was purportedly receiving, Maher placed his order.

75.     Immediately after completing his purchase, HP directed Maher to a web page confirming he had saved $130.00 on his order—an amount equal to the difference between the reference price of $829.99 ($729.99 base price plus $100 in upgrades) and the sale price of $699.99. Below is an example of a screenshot taken from Maher's HP account showing the details of his order.

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



19   76.   Maher purchased the 17t Laptop after HP had advertised it using a false reference

20  base price of $729.99.  At the time, Maher believed that after he added $100 in upgrades, he was

21  purchasing a computer valued at $829.99 for $130.00 off.  Maher believed that $729.99 was the

22  regular base price of his laptop, and that $829.99 was the regular price of his laptop with the

23  upgrades.

24   77.   However, discovery will show that prior to Maher's purchase, the base price of the

25  17t Laptop was not $729.99, and HP did not sell the 17t Laptop using a base price of $729.99 for a

26  reasonably substantial period of time.  Indeed, daily pricing data collected by Plaintiffs' counsel

27  suggests that prior to Maher's purchase, HP never offered the 17t Laptop for sale with a base price

28  of $729.99, as shown below.

FIRST AMENDED CLASS ACTION COMPLAINT



78.     Maher's understanding of the value of the 17t Laptop was based on his belief that its regular base price was $729.99 and that $729.99 represented its market value without any upgrades. HP thereby induced Maher to purchase the 17t Laptop by falsely representing to him that he was saving a significant amount of money off the base price of the 17t Laptop and by failing to disclose that the advertised base price, which Maher reasonably believed to be the regular base price, was not the actual base price at which HP formerly sold the 17t Laptop for a reasonably substantial period of time.  Maher would not have purchased the 17t Laptop, or would have paid less for it, had he known that its true regular base price was less than the advertised base price and that the discount and savings advertised by HP was fictitious.

## CLASS ALLEGATIONS

79.     Plaintiffs bring this suit pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated.  The Class and Consumer Subclass ("Classes") are defined as follows:

> **Class:**  All individuals and entities that, on or after October 13, 2017, purchased one or more HP products on HP's website that were advertised as discounted from a reference price (i.e., a strikethrough price).

> **Consumer Subclass:**  All members of the Nationwide Class who are "consumers" within the meaning of California Civil Code § 1761(d) and made their respective purchases on or after October 13, 2018.

80.     Excluded from the Classes are HP, its parents, subsidiaries, affiliates, officers,

directors, legal representatives, predecessors, successors, assigns, and employees, and all judges

assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

81.     <u>Numerosity</u>:  Although the exact number of members of the Classes is uncertain and

can only be ascertained through appropriate discovery, the number is significant enough such that

joinder is impracticable.  Plaintiffs are informed and believes there are hundreds of thousands, if not

millions, of members of the Classes that have been damaged by HP's deceptive practices alleged

herein.  The disposition of the claims of all Classes in a single action will provide substantial

benefits to all parties and to the Court.  The members of the Classes are readily identifiable from

information and records in HP's possession, custody, or control.

82.     <u>Commonality</u>:  This action involves common questions of law and fact, including,

but not limited to, the following:

a.      whether HP made false or misleading statements of fact in its advertisements;

b.      whether HP's advertisements had a tendency to mislead a reasonable

consumer;

c.      whether HP's advertising and marketing practices, as alleged herein, violated

established law;

d.      whether HP intended the reference prices advertised on its website to

represent the regular and/or former prices of the products offered for sale on its website;

e.      whether HP ever sold or offered for sale the products at the advertised

reference prices;

f.      whether the limited-time offers advertised on HP's website were, in fact, so

limited in time;

g.      whether HP's statements concerning the reference prices, discounts, and

limited-time offers displayed on its website were material, such that a reasonable consumer

would attach importance to and be induced to act on the information in determining whether

to make a purchase on HP's website;

h.      whether a reasonable consumer would interpret HP's reference prices as the

regular and/or former prices of the products advertised on HP's website;

FIRST AMENDED CLASS ACTION COMPLAINT

1          i.      whether a reasonable consumer would believe the products offered for sale

2 on HP's website have a market value equal to the advertised reference price;

3          j.      whether HP misrepresented and/or failed to disclose material facts about the

4 reference prices, discounts, and limited-time offers advertised on its website;

5          k.      whether HP knew, or by the exercise of reasonable care should have known,

6 that the reference prices, discounts, and limited-time offers advertised on its website were

7 untrue and misleading;

8          l.      whether HP intended the reference prices, discounts, and limited-time offers

9 advertised on its website to induce customers to purchase products;

10          m.      whether the practices alleged herein constituted a breach of contract;

11          n.      whether the practices alleged herein constituted a breach of express warranty;

12          o.      whether HP's pricing scheme alleged herein—consisting of false reference

13 prices, false discounts, and fake limited-time offers—was false or misleading within the

14 meaning of California's False Advertising Law, Consumer Legal Remedies Act, or Unfair

15 Competition Law.

16          p.      how to calculate the prevailing market price for products sold on HP's

17 website for the purposes of Cal. Bus. & Prof. Code § 17501;

18          q.      whether the reference prices displayed on HP's website equaled the

19 prevailing market price for the products in question during the three-month period preceding

20 their publication;

21          r.      whether HP's pricing scheme alleged herein constitutes "fraud," as that term

22 is defined in Cal. Civ. Code § 3294(c)(3);

23          s.      whether HP has been unjustly enriched from products falsely advertised and

24 sold on its website;

25          t.      whether HP is likely to continue engaging in false advertising such that an

26 injunction is necessary; and

27          u.      whether Plaintiffs and members of the Classes are entitled to damages,

28 restitution, and/or punitive damages as a result of HP's conduct alleged herein.

83.     <u>Typicality</u>:  Plaintiffs' claims are typical of the Class claims in that Plaintiffs, like all members of the Classes, were deceived and damaged by HP's misrepresentations and corresponding failure to provide the advertised discounts, savings, and product values. Furthermore, the factual bases of HP's misconduct are common to all members of the Classes and represent a common thread resulting in injury to the Classes.

84.     <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of all members of the classes, and Plaintiffs' interests are coincident with and not antagonistic to those of other members of the Classes.  Plaintiffs have retained competent counsel who are experienced in prosecuting class actions.

85.     Class certification is appropriate under Rule 23(b)(2) because HP has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to all members of the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

86.     Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any question that may affect only individual members of the Classes.  Plaintiffs and members of the Classes have all suffered, and will continue to suffer, harm and damages as a result of HP's uniform deceptive pricing practices.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation of the claims of all members of the Classes is impracticable because the cost of litigation would be prohibitively expensive given the relatively small size of the individual Class members' claims.  Moreover, individualized litigation would impose an immense burden upon the courts and present the potential for varying, inconsistent, or contradictory judgments.  By contrast, maintenance of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all members of the Classes. Absent a class action, Plaintiffs and members of the Classes would be unable seek redress, and HP's deceptive pricing practices would continue unabated without remedy or relief.

1
2

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of the Class)**

3   87.   Plaintiffs incorporate by reference each of the allegations contained in the preceding

4   paragraphs of this Complaint.

5   88.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

6   89.   Plaintiffs and Class members entered into written contracts with HP when they

7   placed orders to purchase products on HP's website.

8   90.   The contracts are drafted by HP and are uniform as to their material terms, which are

9   presented to customers at the time they place an order on HP's website, and which are

10   memorialized in the order confirmations HP emails to customers immediately after they place their

11   order.

12   91.   The contracts provided that Plaintiffs and Class members would pay HP for their

13   products.

14   92.   The contracts further provided that (i) HP would provide Plaintiffs and Class

15   members products that had a market value equal to the reference price displayed on HP's website,

16   and (ii) HP would provide a specific discount equal to the difference between the reference price

17   and sale price.  The specified discount was a specific and material term of each contract.

18   93.   The specified discount was displayed to Plaintiffs and Class members at the time

19   they placed their orders and was memorialized in the order conformations that HP emailed to them

20   after they had placed their orders.

21   94.   Plaintiffs and Class members paid HP for the products they ordered and satisfied all

22   other conditions of their contracts.

23   95.   HP breached the contracts with Plaintiffs and Class members by failing to provide

24   products that had a market value equal to the reference price displayed on its website, and by failing

25   to provide the specified discount.

26   96.   As a direct and proximate result of HP's breaches, Plaintiffs and Class members

27   were deprived of the benefit of their bargained-for exchange and have suffered damages in an

28   amount to be established at trial.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of the Class)**

97.     Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

98.     Plaintiffs bring this cause of action on behalf of themselves and the Class.

99.     The Uniform Commercial Code § 2-313 provides that any affirmation of fact or promise made by a seller to a buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

100.     Through its advertising, marketing, and sales, HP made affirmations of fact to Plaintiffs and Class members including, but not limited to, affirmations that the reference prices displayed on its website reflected the market values of the products Plaintiffs and Class members purchased.

101.     Through its advertising, marketing, and sales, HP made promises to Plaintiffs and Class members including, but not limited to, promises that Plaintiffs and Class members would save money as a result of the discounts advertised on HP's website and that the amount of money saved would equal the difference between the reference price and the purchase price.

102.     The affirmations of fact and promises made by HP to Plaintiffs and Class members were specific, in writing, and expressed unequivocally, and were made to induce Plaintiffs and Class members to purchase products from HP's website.

103.     Plaintiffs and Class members relied on the affirmations of fact and promises in deciding to purchase products from HP.

104.     The affirmations of fact and promises became part of the basis of the bargain struck between HP and Plaintiffs and Class members and created an express warranty that the products purchased by Plaintiffs and Class members would conform to HP's representations.

105.     All conditions precedent to HP's liability under the express warranties created by HP's representations have been fulfilled by Plaintiffs and Class members or have been waived.

106.     HP breached the terms of the express warranty by failing to deliver products that conformed to its representations.  The products did not have the market value specified by HP; the

-34-

1   products were not sold or offered for sale at the reference prices displayed on HP's website for a

2   reasonably substantial period of time; and Plaintiffs and Class members did not receive the savings

3   HP had promised them.

4         107.   HP has actual or constructive notice that the products purchased by Plaintiffs and

5   Class members were not delivered as warranted given the deliberate, pervasive, and ongoing nature

6   of its deceptive pricing scheme, as described herein.

7         108.   Despite having notice of its breaches of express warranty, HP has taken no action to

8   date to remedy its breaches of express warranty.

9         109.   As a direct and proximate result of HP's breaches of express warranty, Plaintiffs and

10   Class members have been injured and have suffered actual damages.

**THIRD CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of the Class)**

13         110.   Plaintiffs incorporate by reference each of the allegations contained in the preceding

14   paragraphs of this Complaint.

15         111.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

16         112.   As alleged herein, HP made false representations and material omissions of fact to

17   Plaintiffs and Class members concerning the existence, duration, and/or nature of the discounts and

18   savings advertised on its website.

19         113.   As part of those false representations, HP engaged in the following practices:

20         a.   falsely representing that customers were receiving a discount from a

21   reference price, when in fact HP inflated the reference price such that the promised discount

22   was false;

23         b.   falsely representing that customers were receiving savings equal to the

24   difference between the reference price and sale price, when in fact customers received no

25   such savings, or received substantially less savings, because the reference price was inflated

26   and not the actual price at which HP formerly sold the product for a reasonably substantial

27   period of time; and

28         c.   falsely representing that its discounts were limited-time offers, when in fact

1    the discounts were not so limited in time.

2        114.    HP failed to disclose material facts regarding the above.  Specifically, HP failed to

3    disclose to Plaintiffs and Class members that (i) the advertised reference prices did not reflect bona

4    fide regular prices—i.e., the price at which HP formerly sold or offered for sale the product for a

5    reasonably substantial period of time; (ii) the advertised discounts were not based on bona fide

6    regular prices; and (iii) the advertised limited-time offers were not so limited in time.  These

7    omissions were material, and had HP disclosed the above information, Plaintiffs and Class

8    members would not have purchased the products or would have paid less for them.

9        115.    HP's false representations and omissions are the type of representations and

10   omissions that are regularly considered to be material—i.e., a reasonable person would attach

11   importance to them and would be induced to act on the information in making a purchasing

12   decision.

13       116.    HP's false representations and omissions relating to the discounts and savings

14   displayed on its website are objectively material to the reasonable consumer, and therefore reliance

15   upon such representations may be presumed as a matter of law.

16       117.    HP's false representations and material omissions were made to Plaintiffs and Class

17   members for the purpose of affecting their purchasing decisions.

18       118.    HP had no reasonable grounds for believing that its false representations were true.

19       119.    HP failed to exercise reasonable care and/or diligence in making its false

20   representations and material omissions to Plaintiffs and Class members.

21       120.    Plaintiffs and Class members reasonably and justifiably relied to their detriment on

22   HP's false representations and material omissions.

23       121.    HP's false representations and material omissions were a factor in causing Plaintiffs

24   and Class members to purchase products on HP's website.

25       122.    As a proximate result of HP's false representations and material omissions, Plaintiffs

26   and Class members were damaged in an amount to be determined at trial.

27

28

### FOURTH CAUSE OF ACTION
### Intentional Misrepresentation
### (On Behalf of the Class)

123.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

124.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

125.    As alleged herein, HP intentionally made false representations and material omissions of fact to Plaintiffs and Class members concerning the existence, duration, and/or nature of the discounts and savings advertised on its website.

126.    As part of those false representations, HP intentionally engaged in the following practices:

a.    falsely representing that customers were receiving a discount from a reference price, when in fact HP inflated the reference price such that the promised discount was false;

b.    falsely representing that customers were receiving savings equal to the difference between the reference price and sale price, when in fact customers received no such savings, or received substantially less savings, because the reference price was inflated and not the actual price at which HP formerly sold the product for a reasonably substantial period of time; and

c.    falsely representing that its discounts were limited-time offers, when in fact the discounts were not so limited in time.

127.    HP intentionally failed to disclose material facts regarding the above.  Specifically, HP intentionally failed to disclose to Plaintiffs and Class members that (i) the advertised reference prices did not reflect bona fide regular prices—i.e., the price at which HP formerly sold or offered for sale the product for a reasonably substantial period of time; (ii) the advertised discounts were not based on bona fide regular prices; and (iii) the advertised limited-time offers were not so limited in time.  These omissions were material, and had HP disclosed the above information, Plaintiffs and Class members would not have purchased the products or would have paid less for them.

128.    HP's false representations and omissions are the type of representations and

omissions that are regularly considered to be material—i.e., a reasonable person would attach importance to them and would be induced to act on the information in making a purchasing decision.

129.     HP's false representations and omissions relating to the discounts and savings displayed on its website are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

130.     HP intended Plaintiffs and Class members to rely on its false representations and material omissions when making purchases on HP's website.

131.     HP knew that its intentional misrepresentations and material omissions were false and misleading at the time HP made them and/or acted recklessly in making such misrepresentations and omissions.

132.     Plaintiffs and Class members reasonably and justifiably relied to their detriment on HP's intentional misrepresentations and material omissions.

133.     HP's intentional misrepresentations and material omissions were a substantial factor in causing Plaintiffs and Class members to purchase products and services from HP.

134.     As a proximate result of HP's intentional misrepresentations and material omissions, Plaintiffs and Class members suffered an ascertainable loss and are entitled to compensatory and punitive damages, in an amount to be determined at trial.

135.     In making intentional misrepresentations and material omissions to Plaintiffs and Class members, HP acted with malice, oppression, and fraud.

136.     HP's conduct alleged herein constitutes "fraud," as that term is defined in Cal. Civ. Code § 3294(c)(3), because such conduct involved intentional misrepresentations, deceit, and/or concealment of material facts known to HP, and was done with the intent to cause Plaintiffs and Class members to purchase products they would not have otherwise purchased and/or pay more for them based on a false perception of their market value.

## FIFTH CAUSE OF ACTION
**Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of the Consumer Subclass)**

137.     Plaintiffs incorporate by reference each of the allegations contained in the preceding

1   paragraphs of this Complaint.

2       138.    Plaintiffs bring this cause of action on behalf of themselves and the Consumer

3   Subclass.

4       139.    HP violated, and continues to violate, Section 1770(a)(5) of the California Civil

5   Code by representing that products offered for sale on its website have characteristics or benefits

6   which they do not have.  Specifically, HP represents that the value of its products is greater than it

7   actually is by advertising inflated reference prices for products sold on its website.

8       140.    HP violated, and continues to violate, Section 1770(a)(9) of the California Civil

9   Code by advertising products as discounted when HP intends to, and does in fact, sell them at their

10  regular prices.

11      141.    HP violated, and continues to violate, Section 1770(a)(13) of the California Civil

12  Code by making false or misleading statements of fact concerning reasons for, existence of, or

13  amounts of, price reductions on its website.  Specifically, HP has violated Section 1770(a)(13) by

14  engaging in the following unlawful acts and practices:

15          a.      misrepresenting the regular prices of products on its website by advertising

16      false reference prices;

17          b.      advertising discounts and savings that are inflated or nonexistent because

18      they are based on false reference prices; and

19          c.      misrepresenting that the discounts and savings on its website are available

20      only for a limited time, when in fact the discounts and savings are not so limited in time.

21      142.    HP violated, and continues to violate, Section 1770(a)(16) of the California Civil

22  Code by representing that the subject of a transaction has been supplied in accordance with a

23  previous representation when it has not.  Specifically, HP represents on its website that it sells

24  products at specified discounts.  After a customer places an order, HP emails the customer an order

25  confirmation confirming that the products were sold at a discount.  But in fact, HP does not sell, nor

26  does it intend to sell, its products at the specified discounts.

27      143.    Pursuant to California Civil Code section 1782(a), on October 8, 2021, Plaintiffs'

28  counsel provided proper notice to HP of Plaintiff Carvalho's intent to pursue damages under the

1  Consumers Legal Remedies Act on behalf of himself and all others similarly situated, and provided

2  HP a reasonable opportunity to cure. The letter was sent via certified mail, return receipt requested,

3  to HP's principal office in California, located at 1501 Page Mill Road, Palo Alto, CA 94304, and to

4  HP's agent for service of process, CT Corporation System, located at 330 N Brand Blvd., Glendale,

5  CA 91203. According to the United States Postal Service, HP and its agent received the letters on

6  October 18, 2021 and October 13, 2021, respectively. As of the filing this Complaint, HP has not

7  taken any actions to correct the false advertising on its website, nor has it addressed any of other

8  issues raised in the letter, such as such as notifying and providing monetary compensation to Class

9  members.

10       144.     Plaintiffs seek actual damages pursuant to California Civil Code section 1780(a)(1),

11  public injunctive relief pursuant to section 1780(a)(2), punitive damages pursuant to section

12  1780(a)(4), and any other relief the court deems proper pursuant to section 1780(a)(5).

13                              **SIXTH CAUSE OF ACTION**
                                **Unjust Enrichment**
14                              **(On Behalf of the Class)**

15       145.     Plaintiffs incorporate by reference each of the allegations contained in the preceding

16  paragraphs of this Complaint.

17       146.     Plaintiffs bring this cause of action on behalf of themselves and the Class.

18       147.     Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this

19  cause of action for equitable monetary relief in the alternative to the damages they seek in their first

20  through fifth causes of action; Plaintiffs are entitled to equitable monetary relief because they lack

21  an adequate remedy at law; the legal remedies available to them are not as equally prompt and

22  certain, and in other ways efficient.

23       148.     HP intentionally and/or recklessly made false representations and material omissions

24  to Plaintiffs and Class members regarding the reference price and market value of products offered

25  for sale on its website.  HP did so to induce Plaintiffs and Class members to purchase products on

26  its website.  Plaintiffs and Class members reasonably and justifiably relied on HP's false

27  representations when purchasing products on HP's website.

28       149.     HP made false promises and material omissions to Plaintiffs and Class members

regarding the discounts and savings they were supposedly receiving.  HP did so to induce Plaintiffs and Class members to make purchases on HP's website and to pay more for products than they otherwise would have.  HP did not intend to keep, and in fact did not keep its false promises. Plaintiffs and Class members reasonably and justifiably relied on HP's false promises when making purchases on HP's website.

150.    Plaintiffs and Class members conferred benefits on HP by making purchases on HP's website.

151.    HP has knowledge of such benefits, and voluntarily accepted and retained the benefits conferred.

152.    HP has been unjustly enriched in retaining the revenues derived from the purchases made by Plaintiffs and Class members.

153.    Retention of that money under these circumstances is unjust and inequitable because HP misrepresented that its products were discounted and had a market value which they in fact did not have.

154.    HP's misrepresentations, failures to disclose, and false promises caused injuries to Plaintiffs and Class members because they would not have purchased the products, or would have paid less for them, had they known that the products did not have the advertised particular worth or value.

155.    Because HP's retention of the non-gratuitous benefits conferred to it by Plaintiffs and Class members is unjust and inequitable, HP ought to pay restitution to Plaintiffs and Class members for its unjust enrichment.

156.    As a direct and proximate result of HP' unjust enrichment, Plaintiffs and Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

### SEVENTH CAUSE OF ACTION
**Violation of California's False Advertising Law, Bus. & Prof. Code § 17500**
**(On Behalf of the Class)**

157.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

158.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

159.   Plaintiffs bring this cause of action for public injunctive relief pursuant to Section 17535 of the Business and Professions Code and seek an order enjoining HP from continuing to violate Section 17500.  Plaintiffs are entitled to this forward-looking relief because there is no adequate remedy at law that would protect Plaintiffs, Class members, and the public at large from HP's ongoing violations of Section 17500.

160.   Plaintiffs additionally bring this cause of action for restitution pursuant to Section 17535 of the Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through fifth causes of action.  Plaintiffs are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them are not as equally prompt and certain, and in other ways efficient.

161.   HP has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements over the internet to Plaintiffs and Class members.

162.   HP disseminated untrue and misleading advertisements by advertising false reference prices, false discounts, and fake limited-time offers with respect to HP products offered for sale on its website.

163.   HP disseminated such untrue and misleading advertisements with the intent to induce Plaintiffs and Class members to purchase products on its website.

164.   HP knew, or by the exercise of reasonable care should have known, that the false reference prices, false discounts, and fake limited-time offers were untrue or misleading.

165.   HP fraudulently concealed from and intentionally failed to disclose to Plaintiffs and Class members the truth about the false reference prices, false discounts, and fake limited-time offers.  Specifically, HP failed to inform Plaintiffs and Class members that (i) the advertised reference prices did not reflect bona fide regular prices—i.e., the price at which HP formerly sold the computer for a reasonably substantial period of time; (ii) the advertised discounts were not based on bona fide regular prices; and (iii) the advertised limited-time offers were not so limited in time.  Had HP disclosed this information to Plaintiffs and Class members, they would not have purchased

the products in question or would have paid less for them.

166.    Plaintiffs and Class members reasonably relied on HP's representations and/or omissions made in connection with the advertised reference prices, discounts, and limited-time offers, and were induced to purchase HP products based on the belief that they were receiving a discount on products valued at more than what they actually received, and that the discount would be available only for a limited time.

167.    HP's representations and/or omissions made in connection with its reference prices, discounts, and limited-time offers were likely to deceive reasonable consumers by obfuscating the true value of HP products.

168.    Had Plaintiffs and Class members known that the reference prices were false and artificially inflated, they would not have purchased products from HP or would have paid less for them.

169.    As a direct and proximate result of HP's untrue and misleading advertising, HP has improperly acquired money from Plaintiffs and Class members.  As such, Plaintiffs request this Court order HP to restore this money to them and all Class members.

170.    HP's violations of Section 17500 are ongoing because it continues to advertise false reference prices, false discounts, and fake limited-time offers to Plaintiffs, Class members, and the public at large.  Unless restrained by this Court, HP will continue to engage in untrue and misleading advertising, as alleged above, in violation of Section 17500.  Accordingly, Plaintiffs seek an injunction enjoining HP from continuing to violate Section 17500.

## EIGHTH CAUSE OF ACTION
### Violation of California's False Advertising Law, Bus. & Prof. Code § 17501
### (On Behalf of the Class)

171.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

172.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

173.    Plaintiffs bring this cause of action for public injunctive relief pursuant to Section 17535 of the Business and Professions Code and seek an order enjoining HP from continuing to violate Section 17501.  Plaintiffs are entitled to this forward-looking relief because there is no

1    adequate remedy at law that would protect Plaintiffs, Class members, and the public at large from

2    HP's ongoing violations of Section 17501.

3           174.    Plaintiffs additionally bring this cause of action for restitution pursuant to Section

4    17535 of the Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil

5    Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through

6    fifth causes of action.  Plaintiffs are entitled to restitution because they lack an adequate remedy at

7    law; the legal remedies available to them are not as equally prompt and certain, and in other ways

8    efficient.

9           175.    HP has violated, and continues to violate, Section 17501 of the Business and

10   Professions Code by advertising false former prices on its website.

11          176.    HP advertises former prices on its website by (i) displaying prices using

12   strikethrough typeface (e.g., $~~999.99~~) and/or (ii) displaying discounts using words and phrases such

13   as "Save," "You'll Save," and "You Saved," followed by a specific dollar amount.

14          177.    The former prices advertised by HP (i) do not reflect the prevailing market prices for

15   the products in question within the three months immediately preceding publication of the

16   advertisement, (ii) were not offered by HP on a bona fide basis for a majority of the days the

17   products were offered for sale during the three-month period immediately preceding publication of

18   the advertisement, and/or (iii) were never offered by HP on a bona fide basis.

19          178.    HP's former price advertisements do not state clearly, exactly, and conspicuously

20   when, if ever, the former prices prevailed, and provide no indication whether or to what extent the

21   former prices advertised on its website were offered on a bona fide basis.

22          179.    The relevant "market" for the purpose of applying Section 17501 consists of offers

23   made on HP's website because (i) all of the advertisements at issue concern HP products,

24   manufactured by HP, and offered for sale on HP's website, (ii) HP intends its representations

25   relating to former prices and discounts to refer to its own prices; and (iii) Plaintiffs and Class

26   members reasonably interpreted HP's former price advertisements to refer to HP's former prices.

27          180.    HP violated, and continues to violate, Section 17501 with actual or constructive

28   knowledge that its former price advertisements are untrue or misleading.

FIRST AMENDED CLASS ACTION COMPLAINT

181.     HP violated, and continues to violate, Section 17501 to induce Plaintiffs and Class members to make purchases on its website based on the false impression they are receiving a discount on a product valued at more than what they actually received.

182.     Plaintiffs and Class members reasonably relied on HP's representations and/or omissions made in violation of Section 17501, and were thereby induced to pay more for HP products and make purchases they would not have otherwise made.

183.     As a direct and proximate result of HP's violations of Section 17501, HP has improperly acquired money from Plaintiffs and Class members.  As such, Plaintiffs request this Court order HP to restore this money to them and all Class members.

184.     HP's violations of Section 17501 are ongoing because it continues to advertise former prices that do not reflect the prevailing market prices for the products in question within the three months immediately preceding publication of the advertisement without stating clearly, exactly, and conspicuously when the alleged former price did prevail.  Unless restrained by this Court, HP will continue to violate Section 17501, as alleged above.  Accordingly, Plaintiffs seek an injunction enjoining HP from continuing to violate Section 17501.

### NINTH CAUSE OF ACTION
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*
(On Behalf of the Class)**

185.     Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

186.     Plaintiffs bring this cause of action on behalf of themselves and the Class.

187.     Plaintiffs bring this cause of action for public injunctive relief pursuant to Section 17203 of the Business and Professions Code and seek an order enjoining HP from continuing to violate California's Unfair Competition Law.  Plaintiffs are entitled to this forward-looking relief because there is no adequate remedy at law that would protect Plaintiffs, Class members, and the public at large from HP's ongoing violations of California's Unfair Competition Law.

188.     Plaintiffs additionally bring this cause of action for restitution pursuant to Section 17203 of the Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through

fifth causes of action.  Plaintiffs are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them are not as equally prompt and certain, and in other ways efficient.

189.    HP has violated, and continues to violate, the "unlawful" prong of California's Unfair Competition Law, Bus. Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in the following unlawful business acts and practices:

   a.    disseminating untrue and misleading advertisements over the internet by advertising false reference prices, false discounts, and fake limited-time offers, in violation of Bus. & Prof. Code § 17500;

   b.    advertising former prices of products which do reflect the prevailing market prices for the products in question within the three months immediately preceding publication of the advertisement without stating clearly, exactly, and conspicuously when the alleged former price did prevail, in violation of Bus. & Prof. Code § 17501;

   c.    by representing that products offered for sale on its website have characteristics or benefits which they do not have in violation of Civ. Code § 1770(a)(5);

   d.    by advertising products on its website with intent not to sell them as advertised, in violation of Civ. Code § 1770(a)(9);

   e.    making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions as to products sold on its website, in violation of Civ. Code § 1770(a)(13); and

   f.    representing that products sold on its website were supplied in accordance with its previous representations when in fact they were not, in violation of Civ. Code § 1770(a)(16).

190.    HP has violated, and continues to violate, the "fraudulent prong" of the UCL by engaging in the following fraudulent business acts and practices:

   a.    using misrepresentations, deception, and/or concealment of material information in connection with the former price and market value of products sold on HP's website, such that Plaintiffs and Class members were likely to be deceived;

b.      advertising reference prices, discounts, and limited-time offers that are false, misleading, and/or have a capacity, likelihood, or tendency to deceive Plaintiffs and Class members; and

c.      failing to provide Plaintiffs and Class members with information as to when, if ever, the reference prices displayed on HP's website were bona fide offer prices.

191.   HP has violated, and continues to violate, the "unfair" prong of the UCL by engaging in the following unfair business acts and practices:

a.      engaging in false reference pricing in connection with the sale of products on its website such that Plaintiffs and Class members, who could not have reasonably avoided such predatory schemes, have been injured—a practice that serves no benefit to consumers or competition;

b.      engaging in false reference pricing whereby the harm to consumers, competition, and the public far outweighs any utility of the practice, which only serves to deceive consumers and give HP an unfair advantage over other computer manufacturers; and

c.      engaging in false and misleading advertising in contravention of public policy, including such public policy as reflected in Cal. Bus. & Prof. Code § 17501, Cal. Civ. Code § 1770(a)(13), and 16 C.F.R. §§ 233.1 and 233.5.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the court order the following relief and enter judgment against HP Inc. as follows:

A.      An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed representatives of the Classes, and Plaintiffs' counsel be appointed Class Counsel;

B.      An order enjoining HP from continuing to violate in the future California's Consumer Legal Remedies Act, False Advertising Law, and Unfair Competition Law, as described herein;

C.      A judgment awarding Plaintiffs and Class members actual and punitive damages in

an amount to be determined at trial or, in the alternative, equitable monetary relief including,

without limitation, restitution and disgorgement of all money HP improperly acquired from

Plaintiffs and Class members as a result of its false advertising and unlawful, unfair, and fraudulent

business practices;

     D.    A judgment awarding Plaintiffs costs of suit; including reasonable attorney's fees

pursuant to California Civil Code § 1780(d), Code of Civil Procedure § 1021.5, and as otherwise

permitted by statute;

     E.    Pre- and post-judgment interest; and

     F.    Such other and further relief as may be necessary or appropriate under the

circumstances.

## DEMAND FOR JURY TRIAL

     Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Local

Rule 3-6, Plaintiffs demand a jury trial on all triable issues.

Dated:  December 30, 2021     Respectfully submitted,

By:   /s/ Daniel A. Rozenblatt

Daniel A. Rozenblatt (SBN 336058)
Seth W. Wiener (SBN 203747)
EDGE, A PROFESSIONAL LAW CORPORATION
1341 La Playa Street 20
San Francisco, CA 94122
Telephone: (415) 515-4809

Tarek H. Zohdy (SBN 247775)
Cody R. Padgett (SBN 275553)
Laura E. Goolsby (SBN 321721)
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiffs
RODNEY CARVALHO and MARK MAHER