1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

7 RODNEY CARVALHO, et al.,                    Case No.  21-cv-08015-BLF

8                        Plaintiffs,

9            v.                              **ORDER GRANTING IN PART AND
                                             DENYING IN PART MOTION TO**
10 HP, INC.,                                 **DISMISS**

11                        Defendant.         [Re:  ECF No. 19]

12

13        In this case, Plaintiffs Rodney Carvalho and Mark Maher challenge the manner in which

14 Defendant HP Inc. advertises products on its website.  Plaintiffs allege that HP displays false and

15 inflated reference or "strikethrough" prices for its products that it then offers to consumers at a

16 purported "discount price."  HP allegedly markets its products this way to create the impression

17 that consumers are saving money when in fact HP never sells its products at the higher

18 strikethrough prices.  Plaintiffs seek to represent classes of individuals who purchased purportedly

19 discounted products on HP's website in the last five years.

20        Now before the Court is HP's motion to dismiss the First Amended Complaint under

21 Federal Rules of Civil Procedure 9(b) and 12(b)(6).  *See* ECF No. 19 ("MTD"); *see also* ECF No.

22 29 ("Reply").  Plaintiffs oppose the motion.  ECF No. 22 ("Opp.").  The Court held a hearing on

23 the motion on May 26, 2022.  ECF No. 39.  For the following reasons, HP's motion to dismiss is

24 GRANTED IN PART AND DENIED IN PART.

25   **I.   BACKGROUND**

26        As alleged in the First Amended Complaint and accepted as true for the purposes of this

27 motion, Defendant HP Inc. is a technology company that sells computers and related peripheral

28 parts, software, and services to consumers in the United States through its website HP.com.  ECF

United States District Court
Northern District of California

1    No. 18 ("FAC") ¶¶ 1, 15, 20.

2         Plaintiffs allege that HP creates an illusion of savings on its website by advertising false

3    reference prices and discounts based on those prices.  FAC ¶ 23.  For any given product, HP's

4    website displays a price in strikethrough typeface (i.e., ~~$999.99~~) that Plaintiffs characterize as a

5    "reference price" but the Court will call a "strikethrough price" in this Order.  *Id.* ¶ 24.  At the

6    bottom of each page, HP includes a section entitled "Disclaimer +").  ECF No. 19-1, Ex. A ("HP

7    RJN")[1], ECF No. 22-1 ("Rozenblatt Decl.") Ex. 2.  Clicking on the "+" expands the Disclaimer

8    section.  Rozenblatt Decl. Exs. 2–3.  One of the disclaimers makes clear that the strikethrough

9    price is a Manufacturer's Suggested Retail Price ("MSRP").  It states:

10             HP's MSRP is subject to discount.  HP's MSRP price is shown as
               either a stand-alone price or as a strikethrough price with a discounted
11             or promotional price also listed.  Discounted or promotional pricing
               is indicated by the presence of an additional higher MSRP
12             strikethrough price.

13   *See* HP RJN.  No asterisk or other indication of a disclaimer appears next to the strikethrough

14   prices.  Rozenblatt Decl. Ex. 1.

15         Near the strikethrough price and typically in a larger and bolder font, HP advertises a "sale

16   price," the price at which the product is currently offered for sale.  *Id.* ¶ 25.  Throughout its

17   website, HP also advertises discounts of savings using words such as "Save," "You'll Save," and

18   "You Saved."  *Id.* ¶ 26.  As a customer goes through the purchasing process and after their order,

19   HP displays many of these same representations that the customer has saved money.  *Id.* ¶¶ 28–31.

20   Plaintiffs allege that approximately 35% of the products HP sells on its website are sold in this

21   manner.  *Id.* ¶ 32.

22         In general, however, the savings HP advertises on its website do not represent the actual

23   savings that customers receive because the strikethrough prices do not represent the actual prices

24   at which computers were sold or offered for sale for a reasonably substantial period of time.  FAC

25   ¶ 32.  For example, on March 27, 2021, HP advertised its HP ENVY laptop for sale at $799.99

26

27   [1] HP's request for judicial notice is GRANTED because the exhibit—a screenshot of a product
     page on HP's website—contains "information posted on certain . . . web pages that Plaintiffs
28   referenced in the [First Amended Complaint]."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992,
     998 (9th Cir. 2010); *see also* FAC ¶¶ 3, 7, 8, 10, 52–60).

United States District Court
Northern District of California

and represented to customers that they were saving $150 from the strikethrough price of $949.99. *Id.* ¶ 34.  But Plaintiffs allege that in the months that followed, HP rarely, if ever, sold the ENVY laptop at a price of $949.99.  *Id.* ¶ 35.  HP engages in similar pricing practices for other products, including products other than computers.  *Id.* ¶¶ 36–37 (charts showing prices of other products over multiple months).  Plaintiffs allege that they have no way of determining if the prices HP advertises as strikethrough prices are in fact prices at which HP ever sells its products.  *Id.* ¶ 50.

Additionally, according to Plaintiffs, HP falsely advertises that the discounts are available only for a limited time when in fact those discounts continue beyond their advertised expiration date.  FAC ¶ 38.  For example, HP advertises "Weekly Deals," but those deals in fact last longer than one week and in some cases don't end for months.  *Id.* ¶¶ 40–42.  HP also advertises similar sales, such as a "Memorial Day Special" and "Flash Sales".  *Id.* ¶¶ 43–47.  This practice induces consumers to make purchases they otherwise may not have made due to a false sense of urgency in obtaining a lower price.  *Id.* ¶ 38.

On September 7, 2021, Plaintiff Rodney Carvalho purchased from HP's website an HP All-in-One 24-dp1056qe PC and HP X3000 G2 Wireless Mouse.  FAC ¶ 52.  The All-in-One PC was advertised as being on sale for $899.99 from a strikethrough price of $999.99, which HP represented was a savings of $100.  *Id.* ¶ 53.  HP also advertised an additional 5% savings with a coupon code for a Labor Day sale.  *Id.*  Carvalho added the All-in-One PC to his cart and was then told that he could purchase the G2 Mouse for $11.99, $5.00 off the strikethrough price of $16.99. *Id.* ¶¶ 54–55.  He added the G2 Mouse to his cart.  *Id.*  In his shopping cart, HP stated that "YOU SAVED **$105.00** ON YOUR ORDER."  *Id.* ¶ 57.  Carvalho typed in the coupon code and received an additional 5% for the Labor Day sale.  *Id.* ¶ 58.  Two further checkout pages, the order confirmation page, and an order confirmation email told Carvalho that he saved $168.60 on his order.  *Id.* ¶¶ 59–62.  Carvalho alleges that HP did not sell the All-in-One PC at $999.99 or the G2 Mouse at $16.99 for any reasonably substantial period of time in the three months prior to his purchase or in the one month following his purchase.  *Id.* ¶ 64.

On June 14, 2021, Plaintiff Mark Maher purchased from HP's website an HP Laptop 17t-by400.  FAC ¶ 67.  The 17t Laptop was advertised as being on sale for $599.99, $130 off the

1    strikethrough price of $729.99.  *Id.* ¶ 68.  Maher added the product to his cart and purchased an

2    additional Wi-Fi adapter to bring his total purchase to $699.99.  *Id.* ¶ 70.  In his shopping cart, HP

3    stated that "YOU SAVED **$130.00** ON YOUR ORDER."  *Id.* ¶ 71.  Two further checkout pages

4    and the order confirmation page indicated that Maher saved $130.  *Id.* ¶¶ 72–73, 75.  Maher

5    alleges that HP did not sell the 17t Laptop at $729.99 for any reasonably substantial period of

6    time.  *Id.* ¶ 77.

7         Plaintiffs filed this lawsuit on October 13, 2021, *see* ECF No. 1, and by stipulation filed

8    the operative First Amended Complaint on December 30, 2021, *see* FAC.  The First Amended

9    Complaint asserts nine causes of action:  (1) breach of contract, FAC ¶¶ 87–96; (2) breach of

10   express warranty, *id.* ¶¶ 97–109; (3) negligent misrepresentation, *id.* ¶¶ 110–122; (4) intentional

11   misrepresentation, *id.* ¶¶ 123–136; (5) violation of California's Consumer Legal Remedies Act

12   ("CLRA"), Cal. Civ. Code § 1750, FAC ¶¶ 137–144; (6) unjust enrichment, FAC ¶¶ 145–156; (7)

13   violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, FAC

14   ¶¶ 157–170; (8) violation of the FAL's provision regarding former prices, Cal. Bus. & Prof. Code

15   § 17501, FAC ¶¶ 171–184; and (9) violation of California's Unfair Competition Law ("UCL"),

16   FAC ¶¶ 185–191.  Plaintiffs seek to represent a class of all individuals and entities that, on or after

17   October 13, 2017, purchased one or more HP products on HP's website that were advertised as

18   discounted from a strikethrough price.  FAC ¶ 79.  Plaintiffs also seek to represent one subclass of

19   class members who are "consumers" within the meaning of Cal. Civ. Code § 1761(d) and made

20   their purchases on or after October 13, 2018.  *Id.*

21   **II.    LEGAL STANDARD**

22        "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

23   claim upon which relief can be granted 'tests the legal sufficiency of a claim.'"  *Conservation*

24   *Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

25   729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

26   as true all well-pled factual allegations and construes them in the light most favorable to the

27   plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court

28   need not "accept as true allegations that contradict matters properly subject to judicial notice" or

1    "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

2    inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation

3    marks and citations omitted).  While a complaint need not contain detailed factual allegations, it

4    "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

5    on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

6    550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the

7    reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  On a motion to

8    dismiss, the Court's review is limited to the face of the complaint and matters judicially

9    noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v.*

10   *Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

11        "In alleging fraud or mistake, a party must state with particularity the circumstances

12   constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Malice, intent, knowledge, and other

13   conditions of a person's mind may be alleged generally." *Id.*  Rule 9(b) demands that the

14   circumstances constituting any alleged fraud be plead "specific[ally] enough to give defendants

15   notice of the particular misconduct . . . so that they can defend against the charge and not just deny

16   that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

17   2009) (internal citation omitted).  Claims of fraud must be accompanied by the "who, what, when,

18   where, and how" of the misconduct alleged.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997),

19   *superseded by statute on other grounds* (internal citation omitted).

## III.    DISCUSSION

21        HP makes multiple arguments that, taken together, seek dismissal of Plaintiffs' entire First

22   Amended Complaint.  The Court evaluates each argument in turn and concludes that some but not

23   all claims will be dismissed.

### A.    Contract and Warranty Claims

25        As an initial matter, Plaintiffs do not oppose HP's motion to dismiss their first and second

26   claims for breach of contract and breach of express warranty.  *See* MTD at 14–17 (moving to

27   dismiss those claims); Opp. at 3 n.2 (conceding dismissal).  Accordingly, HP's motion to dismiss

28   the breach of contract and breach of express warranty claims is GRANTED WITHOUT LEAVE

United States District Court
Northern District of California

1    TO AMEND.

2        **B.**    **FAL, UCL, and CLRA Claims**

3          HP moves to dismiss the UCL, CLRA, and two FAL claims.  HP says that these claims are

4    subject to Rule 9(b)'s heightened pleading standard, which in this price comparison case requires

5    Plaintiffs to plead that the strikethrough price is an inaccurate representation of the price at which

6    the good is sold in the marketplace (not just at the single retailer).  *See* MTD at 10–13.  Plaintiffs

7    do not dispute that their claims are subject to Rule 9(b), instead asserting that they need not plead

8    that other retailers do not sell the goods at the strikethrough price because a reasonable consumer

9    would interpret the strikethrough prices as "former prices," which are subject to a specific

10   California regulatory scheme.  *See* Opp. at 4–20.

11         California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

12   Cal. Bus. & Prof. Code § 17200.  "California's FAL prohibits any unfair, deceptive, untrue or

13   misleading advertising."  *Id*. (internal quotation marks and citation omitted).   A violation of the

14   FAL necessarily constitutes a violation of the UCL.  *See id.*  Finally, "California's CLRA

15   prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'"  *Id*. (quoting

16   Cal. Civ. Code § 1770).

17         "Whether a business practice is deceptive or misleading under these California statutes [is]

18   governed by the reasonable consumer test."  *Mars Petcare US, Inc. v. Moore*, 966 F.3d at 1017

19   (internal quotation marks and citations omitted).  Under this standard, Plaintiffs "must show that

20   members of the public are likely to be deceived."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934,

21   938 (9th Cir. 2008) (internal quotation marks and citation omitted).  The reasonable consumer test

22   may be satisfied by advertising that is false or, alternatively, advertising that is true but

23   nonetheless misleading.  *See id.*  However, "a plaintiff's unreasonable assumptions about

24   [advertising] will not suffice."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).  Thus,

25   while application of the reasonable consumer test typically involves question of fact that may not

26   be resolved on a motion to dismiss, dismissal is appropriate where the court determines that the

27   plaintiff's claims are not plausible.  *See id.* at 886.  ("In sum, the district court properly dismissed

28   this action under Federal Rule of Civil Procedure 12(b)(6) because Trader Joe's representations on

the front label and the ingredients statement of its Manuka Honey product are not misleading to a reasonable consumer as a matter of law."); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) ("Becerra has not sufficiently alleged that Diet Dr Pepper's labeling is false or misleading and dismissal was therefore proper.").

### i.   Exclusive vs. Non-Exclusive Products

Courts in this circuit have applied the reasonable consumer test to cases like this one involving price comparisons. They have divided price comparison cases into two categories: cases involving "exclusive products" and those involving "non-exclusive products." *See Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1084 (C.D. Cal. 2018).[2]

"In exclusive product cases, a store, often an outlet store, sells a lower-price, different version of a product sold in traditional retail stores. The outlet uses the price of the product made for the retail store as a comparative reference price on price tags. However, the actual product being sold in the outlet is made exclusively for the outlet and is never sold for the comparative reference price at a traditional retail store." *Id.* Courts allow those cases to proceed based on allegations specific to that outlet or retail store exclusively selling the product. *See, e.g.*, *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (reversing grant of motion to dismiss where plaintiff alleged that Neiman Marcus outlet used reference prices to products sold at Neiman Marcus retail stores, but products were made exclusively for the outlet store); *Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at *7 (N.D. Cal. Oct. 9, 2015) (same, as to Nordstrom Rack and Nordstrom retail stores).

There is no dispute that this is a "non-exclusive products" case in which "more than one retailer offers the product at issue for sale." *Stein Mart*, 291 F. Supp. 3d at 1084. The computers and related peripherals that HP sells are sold both through HP's online website at HP.com and through traditional big box retailers, such as Best Buy and Staples. "Because other retailers offer the same product for sale, there are legitimate prices to which to compare the defendant's

---

[2] Although *Stein Mart* adjudicated a motion for class certification and motion for summary judgment, its discussion of the different standards for exclusive products and non-exclusive products cases remains instructive. Several of the decisions it cites (which are also cited in this Order) adjudicated motions to dismiss.

United States District Court
Northern District of California

comparative reference price.  In those cases, courts tend to reject claims unless the plaintiff

establishes that the comparative reference price is misleading." *Id.*; *see also Sperling v. DSW Inc.*,

2015 WL 13309476, at *8–9 (C.D. Cal. Nov. 19, 2015) (granting motion to dismiss where

plaintiff did not provide allegations about market prices); *Haley v. Macy's, Inc.*, 263 F. Supp. 3d

819, 824 (N.D. Cal. 2017) (further explaining distinction between exclusive product cases and

non-exclusive product cases).

      Here, Plaintiffs have not met their pleading burden.  Plaintiffs' complaint does not contain

any allegations that the strikethrough prices displayed on HP's website are "inflated" or "why they

do not accurately reflect prevailing market prices."  *See Stein Mart*, 291 F. Supp. 3d at 1084

(citing *Jacobo v. Ross Stores, Inc.*, 2017 WL 3382053, at *2, 6 (C.D. Cal. Aug. 2, 2017)).  Instead,

Plaintiffs allege only that the strikethrough prices displayed on HP's website did not reflect the

price at which the products were sold on HP's website in the weeks and months prior to their

purchases.  *See* FAC ¶¶ 4, 32, 33, 64, 65, 77, 78.  While those allegations may suffice at the

motion to dismiss stage for an exclusive products case, they do not suffice for a non-exclusive

products case.  Plaintiffs' arguments regarding the thoroughness of their allegations of HP.com's

pricing history for several products are thus unresponsive to this issue.  Plaintiffs additionally

protest that the exclusive and non-exclusive products cases involved advertising that used

language such as "Compare at" and that these allegations are not required by the California

consumer protection statutes in general.  The Court, however, sees this as a distinction without a

difference.  The justification for requiring allegations of product pricing at other retailers extends

to any non-exclusive products, notwithstanding the label that a retailer uses on its site to advertise

the strikethrough or comparison price.

      While these cases do require dismissal with leave to amend at this stage of the case, the

cases do not go as far as HP suggests.  Much of HP's motion to dismiss seeks dismissal of

Plaintiffs' claims with prejudice based on its website disclosure that the strikethrough prices are

MSRPs, which are subject to specific rules promulgated by the Federal Trade Commission, and

not former prices, which are subject to specific California statutory rules that Plaintiffs rely upon.

*See, e.g.*, MTD at 8–9 (citing 16 C.F.R. § 233.3).  But this case is governed by the reasonable

consumer standard.  Whether the price or the disclaimer is advertised in a way that is "likely to deceive" a reasonable consumer in violation of the broad provisions of the FAL, UCL, and CLRA is an issue the Court cannot resolve at this juncture.  And the fact that a consumer could only learn that the strikethrough price is a MSRP upon reading the fine print at the bottom of the webpage and then clicking on the "+" suggests that a reasonable consumer could justifiably be unaware of that disclaimer.  All that the Court holds as to those claims is that Plaintiffs have not met their pleading burden based on the current complaint.

Plaintiffs' eighth claim under a specific provision of the FAL, however, is a different matter.  That claim alleges HP's advertising of its strikethrough prices violates § 17501 of the Business & Professions Code.  While the more general provisions of the CLRA, UCL, and FAL create liability for deceptive business practices in the eyes of a reasonable consumer, § 17501 governs a specific type of advertising conduct:  former prices.  Section 17501 states that "[n]o price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price" within certain periods of time.  But the disclaimer at the bottom of HP's website—which the Court has already found is subject to judicial notice—establishes that these prices are *not* in fact former prices, but instead MSRPs.  Because the prices are in fact MSRPs and not "former price[s]," HP could never be liable under § 17501, which applies only to a "former price[s]," regardless of how a reasonable consumer interpreted the advertisements.  None of Plaintiffs' cited cases involved a disclaimer on the same page as the product purchase page indicating that the price is an MSRP price.  *See, e.g.*, *Morrow v. Carter's, Inc.*, 2017 WL 9882667, at *6 (N.D. Ga. Mar. 6, 2017) (price tag did not include disclaimer, but website did); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *4 (N.D. Cal. Jun. 15, 2016) (no disclaimer); *Hansen v. Newegg.com Am., Inc.*, 25 Cal. App. 5th 714, 720, 730–31 (2018) (same).  The eighth claim for violation of § 17501 will thus be subject to dismissal without leave to amend.

### ii.    Limited-Time Offer Claims

HP also argues that Plaintiff's UCL, FAL, and CLRA claims are subject to dismissal to the extent that they challenge HP's advertising of limited-time offers.  MTD at 9–10.  HP argues that Plaintiffs have provided insufficient allegations that they relied on limited-time offers and that

1    Plaintiffs lack standing to assert claims for limited-time offers.  *Id.*  Although not expressly

2    addressed in their opposition brief, at the hearing Plaintiffs pointed to limited-time-offer

3    allegations in their complaint regarding the Labor Day sale code that Carvalho used in his

4    purchase.

5          The Court finds that Plaintiff Carvalho provided sufficient allegations regarding limited-

6    time offers.  Contrary to HP's argument otherwise, the First Amended Complaint alleges that

7    Carvalho additionally used a Labor Day coupon code to obtain an additional 5% off his purchase.

8    *See* FAC ¶ 58.  The FAC also alleges that Carvalho relied on HP's representations and omissions

9    about "the limited-time nature of the advertised discounts."  *Id.* ¶ 61; *see also id.* ¶ 63 (Carvalho

10   believed that the strikethrough prices would resume "at the end of the Labor Day sale").  These

11   allegations are sufficient to allow the limited-time offer claims to proceed because Carvalho has

12   standing for those claims.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013)

13   (standing for California consumer protection claims where plaintiff alleged that advertised

14   discounts conveyed false information about the goods he purchased).  HP's motion to dismiss the

15   UCL, FAL, and CLRA claims to the extent they are based on limited-time offer allegations is

16   DENIED.

17                                    *       *       *

18         HP's remaining claim-specific arguments for dismissing the UCL and § 17500 claim relate

19   to Plaintiffs' insufficient pricing allegations or HP's knowledge of the misleading nature of its

20   pricing practices.  *See* MTD at 17–19.  Without adequate allegations of pricing at other retailers

21   for HP's non-exclusive products, the Court cannot evaluate those claim-specific arguments.  HP

22   may raise those arguments again in any subsequent motion to dismiss.

23         HP's motion to dismiss Plaintiffs' fifth, seventh, and ninth claims for violation of the

24   CLRA, FAL, and UCL is thus GRANTED WITH LEAVE TO AMEND for failure to provide

25   allegations regarding the pricing of the non-exclusive products at other retailers.  HP's motion to

26   dismiss Plaintiffs' eighth claim for violation of the FAL's provision regarding former prices is

27   GRANTED WITHOUT LEAVE TO AMEND.

28

### C.    Negligent and Intentional Misrepresentation Claims

HP moves to dismiss the negligent and intentional misrepresentation claims on two grounds:  (1) failure to meet Rule 9(b)'s heightened pleading burden, *see* MTD at 7–10; and (2) the economic loss doctrine, *see id.* at 14.  Plaintiffs oppose both grounds for dismissal.  *See* Opp. at 21–22.  The Court's conclusions above regarding the UCL, FAL, and CLRA claims apply equally to the negligent and intentional misrepresentation claims.  Because HP's website sells non-exclusive products, Plaintiffs must provide allegations that that the strikethrough prices displayed on HP's website are "inflated" or "why they do not accurately reflect prevailing market prices."  *Stein Mart*, 291 F. Supp. 3d at 1084.  Without such allegations, they have not alleged actional misrepresentations of fact that would be necessary to sustain any claim for negligent or intentional misrepresentation.  *See Mahfood v. QVC, Inc.*, 2007 WL 9363986, at *4 (C.D. Cal. Feb. 7, 2007) (Rule 9(b) heightened pleading standard not met where plaintiff failed to allege facts leading to inference that comparative prices were false or misleading).

Plaintiffs' claims for negligent and intentional misrepresentation are thus DISMISSED WITH LEAVE TO AMEND.  Although the Court does not reach the issue given its Rule 9(b) analysis, Plaintiffs should carefully consider whether the economic loss doctrine bars these claims.

### D.    Unjust Enrichment Claim

HP next moves to dismiss Plaintiffs' unjust enrichment claim.  *See* MTD at 19–20.  HP first argues that there is no independent claim for unjust enrichment under California law.  *See id.* at 19.  But the Ninth Circuit has recognized that California law does indeed permit an independent claim for unjust enrichment.  *See Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at *13 (N.D. Cal. Mar. 9, 2020) (citing *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015)).  HP also argues that Plaintiffs seek relief on a breach of contract claim and cannot simultaneously bring an unjust enrichment claim, *see* MTD at 19, but the breach of contract claim is being dismissed.  Finally, HP argues that the unjust enrichment claim is duplicative of their statutory or tort claims, *see id.* at 19–20, but the Court declines to dismiss on this basis at this stage of the case.  HP's motion to dismiss the unjust enrichment claim on these bases is thus DENIED.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### E.   *Sonner*:  Inadequate Remedy at Law

Finally, HP argues that Plaintiffs' claims for equitable monetary relief under the UCL, FAL, and unjust enrichment must be dismissed because Plaintiffs have failed to allege inadequate remedies at law under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  MTD at 20–21.  Plaintiffs argue that they are entitled to plead remedies in the alternative and that, in any case, they have sufficiently alleged that they lack adequate remedies at law.  *See* Opp. at 23–25.

In a separate case raising this issue, the Court recently concluded that *Sonner* does not "impose strict requirements at the pleading stage" because it "pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial."  *See Jeong v. Nexo Fin., LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022).  In fact, "there is no binding precent that holds that pleading equitable restitution in the alternative is improper."  *Id.* (citing cases).  The cases HP cites reflect the other side of the "intra-circuit split" on whether claims for equitable monetary relief can proceed past the pleading stage where legal remedies are also sought.  *See Byton N. Am. Co. v. Breitfeld*, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020).  The Court finds that Plaintiffs may proceed with their equitable restitution claims at this stage, especially given that they have now dismissed their breach of contract claim.  The Court may reconsider this issue at a later stage of the case.

HP's motion to dismiss the claims for equitable monetary relief due to *Sonner* are thus DENIED.

### IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

- HP's motion to dismiss the first and second claims for breach of contract and breach of express warranty is GRANTED WITHOUT LEAVE TO AMEND;

- HP's motion to dismiss the third and fourth claims for negligent and intentional misrepresentation is GRANTED WITH LEAVE TO AMEND;

- HP's motion to dismiss the fifth, seventh, and ninth claims for violation of the CLRA, FAL, and UCL is GRANTED WITH LEAVE TO AMEND as to the strikethrough prices allegations and DENIED as to the limited time offer

allegations;

- HP's motion to dismiss the sixth claim for unjust enrichment is DENIED; and
- HP's motion to dismiss the eighth claim for violation of the FAL's provision regarding former prices is GRANTED WITHOUT LEAVE TO AMEND.

Plaintiffs SHALL file a Second Amended Complaint **no later than 21 days from the date of this Order**.  Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Plaintiffs' claims with prejudice.  Leave to amend is limited to the defects identified in this Order.  Plaintiffs may not add new claims or parties absent leave of Court.

Dated:  June 24, 2022

BETH LABSON FREEMAN
United States District Judge