**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel@edge.law
Seth W. Wiener (SBN 203747)
seth@edge.law
1341 La Playa Street 20
San Francisco, CA 94122
Telephone: (415) 515-4809

**CAPSTONE LAW APC**
Tarek H. Zohdy (SBN 247775)
tarek.zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
laura.goolsby@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

Attorneys for Plaintiffs
RODNEY CARVALHO and MARK MAHER

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY CARVALHO and MARK MAHER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>HP INC., a Delaware corporation,<br><br>    Defendant. | Case No.: 5:21-cv-08015-BLF<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Rodney Carvalho and Mark Maher ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Defendant HP Inc. ("HP").  Upon personal knowledge as to their own acts and status and upon information and belief as to all other matters, Plaintiffs allege the following:

## INTRODUCTION

1.      This is a class action against HP for false advertising on its website, HP.com.  HP is the largest computer seller in the United States.  To sell more products and maximize its profits, HP displays misleading strikethrough prices on its website and advertises fictitious savings based on those prices.  The strikethrough prices are misleading because they do not represent the actual prices at which HP regularly sells its products.  The savings are fictitious because they do not represent the actual savings obtained by customers.  This unlawful marketing practice, commonly known as false reference pricing, artificially increases demand for HP products and induces customers to pay more for them based on a false impression of their value.  HP's use of misleading strikethrough prices and fictitious savings is pervasive throughout its website.

2.      California law and federal regulations specifically prohibit this type of false advertising.  For example, California's consumer protection statute prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Civ. Code § 1770(a)(13).  The Federal Trade Commission's (FTC) Guide Against Deceptive Pricing states:

> [When] the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. § 233.1.

3.      HP willfully violates these laws.  For example, on September 7, 2021, Plaintiff Carvalho purchased a desktop computer on HP's website.  HP advertised the computer as being on sale for $899.99 and represented to customers that they would "Save $100 instantly" off the regular price of $999.99, which was displayed in strikethrough typeface (e.g., $~~999.99~~).  Below is a screenshot of Carvalho's computer, as advertised on HP's website the day Carvalho made his purchase.

**September 7, 2021**



4.    At the time of his purchase, Carvalho believed he was buying a computer that was valued at and regularly sold for $999.99.  But discovery will show that in the weeks and months prior to Carvalho's purchase, HP rarely, if ever, offered his computer for sale at the advertised strikethrough price of $999.99.  Indeed, pricing data compiled by Plaintiffs' counsel demonstrates as much:

**Advertised Prices of Carvalho's Computer on HP.com**

| Date | Ref. Price | Sale Price |
|------|-----------|-----------|
| 4/29/2021 | $999.99 | $899.99 |
| 5/29/2021 | $999.99 | $899.99 |
| 6/29/2021 | $999.99 | $899.99 |
| 7/29/2021 | $999.99 | $899.99 |
| 8/29/2021 | $999.99 | $899.99 |
| 9/29/2021 | $999.99 | $899.99 |

5.    By using misleading strikethrough prices to artificially increase the perceived value of HP products, HP harms consumers by inducing them to pay more for its products and make purchases they would not have otherwise made.

6.    HP's strikethrough prices also harm competition by giving HP an unfair advantage over other computer manufacturers that do not engage in false reference pricing.  After all, a

customer is more likely to purchase a $2,000 computer advertised at 50% off its regular price than pay full price for a $1,000 computer.

7.     In addition to using misleading strikethrough prices, HP also falsely advertises limited-quantity and limited-time offers.  For example, on May 28, 2021, HP featured Carvalho's computer in the "Weekly Deal" section of its website and advertised there was "**Only 1 Left!**"  Yet in the weeks and months that followed, HP continued to sell Carvalho's computer but removed any representations about the supposed limited quantity.

| <u>**May 28, 2021**</u> | <u>**June 4, 2021**</u> |
|---|---|
|  |  |

8.     In another effort to artificially increase demand for its products, on September 28, 2021, HP advertised Carvalho's computer for $899.99 as part of a "**72 Hour Flash Sale**."  At the top of the screen, HP displayed a banner that stated, "**Get limited time deals on select products**" and "**Hurry! This sale ends in:**" above a live countdown timer.  Below is an example of a screenshot that was taken on September 28, 2021, at 3:07 p.m., indicating the sale would end in 8 hours, 52 minutes, and 31 seconds.



9.      But the sale did not end in 8 hours, 52 minutes, and 31 seconds.  Instead, HP merely removed the flash sale marketing from its website and continued to sell Carvalho's computer at the same price and discount, as shown below.



-4-

10.    Indeed, instead of increasing the price of Carvalho's computer after the flash sale ended, HP simply invented a new sale—the "HP Days" sale.  Below is an example of a screenshot taken from HP's website on October 3, 2021, five days after the flash sale ended.  As shown below, HP continued to advertise Carvalho's computer at the same price and discount of $899.99, $100 off the strikethrough price of $999.99.



11.    Discovery will show that HP's flash sales and other limited-time offers are merely falsehoods intended to induce prospective customers to make purchases they would not have otherwise made and pay more for HP products based on a false impression they are getting a special deal.

12.    HP advertises misleading strikethrough prices, fictitious savings, and fake-limited time offers for hundreds of products on its website every day.  The pervasive, ongoing nature of its deceptive pricing scheme demonstrates that false reference pricing is central to its overall marketing

strategy.  In bringing this lawsuit, Plaintiffs intend to curb these and other unlawful and deceptive advertising practices on HP's website.  Plaintiffs seek public injunctive relief in the form of a court order prohibiting HP from continuing to falsely advertise on its website, and seek compensation for themselves and all others similarly situated who have been duped by HP's false advertising.

## THE PARTIES

13.    Plaintiff Rodney Carvalho ("Carvalho") is a resident of Las Vegas, Nevada.  On September 7, 2021, Carvalho accessed HP's website from his residence and purchased a computer and mouse from HP for personal use.

14.    Plaintiff Mark Maher ("Maher") is a resident of Pittsburg, California.  On June 14, 2021, Maher accessed HP's website from his residence and purchased a laptop computer from HP for personal use.

15.    Defendant HP Inc. ("HP") is a Delaware corporation, with its principal place of business at 1501 Page Mill Road, Palo Alto, California 94304.  HP sells computers and related peripheral parts, software and services to customers throughout the United States through its website, HP.com.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the aggregate claims of the members of the proposed Classes exceed $5 million (exclusive of interest and costs), the proposed Classes consist of 100 or more members, and at least one member of the proposed Classes is a citizen of a different state than HP.

17.    California has personal jurisdiction over HP because HP has its principal place of business in California and is thus subject to general jurisdiction in California.

18.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because HP resides in this District, and a substantial part of the events or omissions which give rise to Plaintiffs' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

19.    Pursuant to the Northern District of California's Local Rule No. 3-2(e), assignment

of this matter to the San Jose Division is appropriate because a substantial part of the events or omissions which give rise to the claims asserted herein occurred in Palo Alto, California, which is located in Santa Clara County.

## **FACTUAL ALLEGATIONS**

20.    HP is a $56.6 billion Fortune 500 company headquartered in Palo Alto, California.[1] It is the largest computer manufacturer in the United States and the second largest in the world.  In the second quarter of 2021 alone, HP shipped over 4 million PCs to the United States and had a 28.4% market share of the U.S. market.[2]  HP's customers include individual consumers, small to medium-sized businesses, state and federal governments, K-12 and higher education organizations, and large corporations.

21.    HP does not have any physical retail stores in the United States.  Instead, HP markets and sells its products and services directly to customers through its website, HP.com, and through third-party websites.  In August 2021, HP's website received over 80 million visits, of which approximately 28% originated from the United States.[3]

22.    HP's online success has in significant part resulted from advertising misleading strikethrough prices, fictitious savings, and fake limited-time offers.

**A.    HP's Pricing Scheme**

23.    HP creates an illusion of savings on its website by advertising misleading strikethrough prices and fictitious savings based on those prices.

24.    HP perpetrates this scheme by advertising a **strikethrough price**—i.e., the product's full, non-discounted price—which it typically displays in strikethrough typeface (e.g., ~~$999.99~~).

25.    Adjacent to the strikethrough price, HP advertises a **sale price**, which is the price at which the product is currently offered for sale.  HP typically displays the sale price in larger, bolder font, often using a contrasting color.

---

[1] Source: https://investor.hp.com/news/press-release-details/2020/HP-Inc.-Reports-Fiscal-2020-Full-Year-and-Fourth-Quarter-Results/default.aspx.

[2] Source: https://www.gartner.com/en/newsroom/press-releases/2021-07-12-gartner-says-worldwide-pc-shipments-grew-4-point-six-in-second-quarter-of-2021.

[3] Sources: https://www.semrush.com/analytics/traffic/journey/hp.com; https://www.alexa.com/siteinfo/hp.com.

26.     Throughout its website, HP also advertises **discounts** or **savings**, which are typically displayed as a dollar amount equal to the difference between the strikethrough price and the sale price.  HP prominently displays the purported savings on its website together with words or phrases such as "Save," "You'll Save," and "You Saved."

27.     Below are examples of how HP advertises fictitious savings on its website.



28.     After customers click the button to buy a product, HP directs them to additional pages where they can customize and add accessories to their order.  As shown below, on each of these pages, HP prominently displays the strikethrough price, the sale price, and the savings customers are purportedly receiving.

1
2
3
4
5
6
7
8
9
10





11   29.     Once customers reach the page displaying their online shopping cart, HP again

12   displays the strikethrough price, sale price, and savings.  As shown below, to induce a sale, HP

13   purposely draws its prospective customers' attention to the amount of savings by displaying the

14   amount in bold font on a contrasting blue background.

15
16
17
18   
19
20
21
22

23   30.     When customers proceed to check out, they are directed to pages where they can

24   enter their information and review their order.  On each of these pages, HP again falsely promises

25   customers savings equal to the difference between the strikethrough price and sale price.  These

26   "savings" are part of the contract that is entered into between HP and its customers and part of the

27   bargain that is struck between them.  Below is an example of these representations that are made to

28   customers at the time they place their order.



**SECURE CHECKOUT**

CONTACT INFO — SHIPPING — PAYMENT

PLACE ORDER

Please review all order details before submitting. You will be charged by placing your order and agree to HP's privacy statement and terms and conditions (including order cancel and change terms).

**1. CONTACT INFORMATION**

31.     After customers place their order, the promised savings are confirmed on a web page on HP's website and memorialized in an email HP sends to customers after receiving their order.

**Website Confirmation**



THANK YOU FOR YOUR ORDER, ██████.

YOU SAVED $300.00 ON YOUR ORDER

Your order will begin processing within one hour of being placed. If you need to change or cancel your order, please review options here. Restrictions may apply.

**Email Confirmation**

| Product details | Status | Qty | Price |
|---|---|---|---|
| **HP ENVY 13 Laptop PC**<br>Product number: 1F5L3AV<br>•Natural silver<br>•13.3" diagonal FHD, IPS, BrightView, micro-edge, WLED-backlit (1920 x 1080)<br>•256 GB PCIe® NVMe™ M.2 SSD<br>•Intel® Wi-Fi 6 AX 201 (2x2) and Bluetooth® 5 combo (Supporting Gigabit file transfer speeds)<br>•3-cell, 51 Wh Li-ion polymer<br>•Intel® Core™ i5-1135G7 (up to 4.2 GHz, 8 MB L3 cache, 4 cores) + 8 GB (onboard) + Intel® Iris® Xe Graphics<br>$4.00 per unit recycling fee required* | Processing<br>Estimated shipment: Nov 18, 2021 | 1 | $600.99 |

| **Summary of savings:**<br>Instant Discounts: $300.00<br>Total Savings: $300.00 | Subtotal:<br>Shipping & Handling:<br>CA Tax:<br>CA Recycling fee*: | $600.99<br>Free<br>$51.84<br>$4.00 |
|---|---|---|
| | **Total:** | **$656.83** |

**B.      HP's Misleading Strikethrough Prices and Fictitious Savings**

32.      Discovery will show that on any given day, HP offers for sale approximately 350 different laptop and desktop computers on its website, and advertises approximately 35% of those computers at a discount from a strikethrough price.  But discovery will show that the majority of the strikethrough prices are misleading because they do not represent the actual prices at which the computers were sold or offered for sale for a reasonably substantial period of time.

33.      HP's pricing scheme is misleading because the savings advertised on its website (which are based on the advertised strikethrough prices) do not represent the actual savings customers receive, as Plaintiffs and reasonable consumers understand that term.  Moreover, HP's strikethrough prices violate California law because they mislead consumers about the existence and amounts of HP's price reductions.

34.      For example, on March 27, 2021, HP advertised an HP ENVY Laptop, part number 19T04AV_1 ("Envy Laptop") on its website.  HP offered the laptop for sale for $799.99 and represented to customers they were saving of $150 off the strikethrough price of $949.99.

**March 27, 2021**



35.      Yet, pricing data compiled by Plaintiffs' counsel indicates that in the weeks and months that followed, HP rarely, if ever, sold the Envy Laptop at the advertised strikethrough price of $949.99.

**Advertised Prices of Envy Laptop on HP.com**

| Date | Ref. Price | Sale Price |
|---|---|---|
| 3/27/2021 | $949.99 | $799.99 |
| 4/24/2021 | $949.99 | $849.99 |
| 5/24/2021 | $949.99 | $829.99 |
| 6/24/2021 | $949.99 | $799.99 |
| 7/24/2021 | $949.99 | $799.99 |
| 8/24/2021 | $949.99 | $749.99 |
| 9/24/2021 | $949.99 | $749.99 |

36.     Pricing data collected by Plaintiffs' counsel for hundreds of computers advertised on HP's website over the course of more than three months indicates that a significant percentage of computers sold on HP's website are offered at discounted prices more often than they are offered at their strikethrough prices.  For example, below are charts reflecting the strikethrough price and sale price of twelve different laptop and desktop computers, as advertised on HP's website for a period of more than three months.  As shown, the sale price of these products rarely, if ever, equals the strikethrough price.











SECOND AMENDED CLASS ACTION COMPLAINT

37.     HP's use of misleading strikethrough prices is not limited to computers.  HP also advertises misleading strikethrough prices for its monitors, printers, accessories, and warranties. For example, the charts below reflect the strikethrough and sale prices of eight non-computer products advertised on HP's website for a period of more than three months.  As shown, the sale price of these products rarely, if ever, equals the strikethrough price.



HP 1y Post Warranty Plan
Part #U4820PA

HP 3 year w_Accidental Care
Part #U9ED6A

## C.   HP's Fake Limited-Time Offers

38.     In addition to advertising misleading strikethrough prices and fictitious savings, HP further misrepresents that the discounts are available only for a limited time and fails to disclose the continuing nature of these discounts.  By giving potential customers the false impression that they will miss out on the advertised markdowns if they do not make a purchase soon, HP induces customers to make purchases they would not have otherwise made and pay more for HP products than they would have otherwise paid.  Additionally, by imparting a false sense of urgency on prospective customers, HP deters them from shopping at competitor websites.

39.     For that reason, the FTC's Guide Against Deceptive Pricing provides:

> [Retailers] should not offer an advance sale under circumstances where they do not in good faith expect to increase the price at a later date, or make a "limited" offer which, in fact, is not limited.  In all of these situations, as well as in others too numerous to mention, advertisers should make certain that the bargain offer is genuine and truthful.

16 C.F.R. § 233.5.

40.     HP employs a variety of means to impart this false sense of urgency on potential customers.  One way is by featuring products in the "Weekly Deals" section of its website, which suggests that the advertised markdowns will expire at the end of the week.  HP lures potential customers to its Weekly Deals by displaying a red banner at the top of its website.



Weekly Deals     Enjoy great savings on select products, and get FREE shipping storewide.     SHOP

41.     In reality, the Weekly Deals frequently last much longer than a week.  For example, on May 13, 2021, HP advertised a Spectre X360 Convertible Laptop, part number 9AJ99AV_1

-15-

("Spectre X360"), in the Weekly Deal section of its website.  As shown below, the laptop was advertised as being on sale for $899.99, $150 off the strikethrough price of $1,049.99.

**May 13, 2021**



42.     By featuring the Spectre X360 in the Weekly Deal section of its website, a reasonable consumer is thus led to believe that the advertised discount will last only a week. However, at the end of the week, HP continued to advertise the Spectre X360 at the same price and discount and continued to do so for several more weeks to come.

| **May 20, 2021** | **May 27, 2021** | **June 3, 2021** |
|---|---|---|
|  |  |  |

43.  Indeed, despite advertising the price of $899.99 as a "Memorial Day Special" on May 27 and June 3, as shown above, HP continued to sell the Spectre X360 for $899.99 through July 19, 2021.  (For reference, Memorial Day was on May 31.)  On July 19, HP increased the price of the Spectre X360 by $50 but still continued to sell it for less than the advertised strikethrough price, as shown below.



44.  In addition to advertising fake Weekly Deals, HP also uses fake flash sales to deceive customers about the duration of its discounts.  For example, on May 5, 2021, HP advertised

an HP Envy All-in-One, part number 3UQ84AA#ABA ("Envy All-in-One"), for $1,999.99 as part of a "**1 Day Flash Sale**" and represented to customers they would "**Save $400**" off the strikethrough price of $2,399.99.  At the top of the screen, HP displayed a banner that stated, "**Get limited time deals on select products**" and "**Hurry! This sale ends in:**" above a live countdown timer.  Below is an example of a screenshot that was taken on May 5, 2021 at 8:42 p.m., indicating the sale would end in 3 hours, 17 minutes, and 7 seconds, which corresponded to midnight.



45.     Reasonable consumers viewing this advertisement are thus led to believe that if they do not make a purchase within the specified time frame, they will miss out on the advertised savings of $400.  But in fact, despite representing the sale would end at midnight on May 5, 2021, HP continued to advertise the Envy All-in-One at the exact same price the very next day, as shown below.

-18-

1

**May 6, 2021**

2



3

4

5

6

7

8

9

10

11

12

13

14

15

16        46.     Similarly, on multiple occasions Carvalho's computer was also advertised as part of

17   a flash sale.  For example, on June 11, 2021, HP advertised Carvalho's computer for $949.99 as

18   part of a "**2 Day Flash Sale**" and represented to customers they would "**Save $50**" off the

19   strikethrough price of $999.99.  Below is an example of a screenshot taken on June 11, 2021,

20   depicting the flash sale.

21

22

23

24

25

26

27

28

1



2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    47.    A reasonable consumer contemplating buying Carvalho's computer is thus induced to

21  complete the purchase within 25 hours, 59 minutes, and 2 seconds, lest the consumer miss out on the

22  discounted price of $949.99.  In fact, the consumer would have been better off waiting until after the

23  flash sale ended because, as shown below, later that month HP reduced the price even further to

24  $899.99—fifty dollars less than the "flash sale" price.

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT

HP All-in-One 24-dp1056qe PC
Part #20W59AA#ABA

**D.    The Ongoing Nature of HP's Deceptive Pricing**

48.    On October 8, 2021, Plaintiffs' counsel sent a pre-suit demand letter to HP notifying it of its unlawful and deceptive marketing practices.  Although HP received the letter, it continues to advertise misleading strikethrough prices, fictitious savings, and fake limited-time offers on numerous products advertised on its website.

49.    Plaintiffs desire to make purchases on HP's website in the future and would make such purchases if they could be certain that the strikethrough prices advertised for the products they wish to purchase represented bona fide former prices and that the advertised savings represented the actual savings based on bona fide former prices.

50.    When shopping on HP's website, Plaintiffs do not have access to HP's former prices and cannot determine which strikethrough prices represent bona fide former prices or which savings represent actual savings.  Moreover, Plaintiffs have no way of determining in the future whether HP has corrected its deceptive pricing practices.

51.    Without an injunction ordering HP to cease its deceptive pricing practices, Plaintiffs are unable to rely on HP's representations regarding the prices of its products in deciding whether or not to purchase a product on HP's website in the future.  Without such an injunction, there is a real and immediate threat Plaintiffs will be wronged again in a similar way when making future purchases on HP's website.

**E.**    **Exclusive Products**

52.    Discovery will show that the vast majority of computers offered for sale on HP's website are sold exclusively on HP's website and not available for purchase from traditional big box retailers such as Best Buy, Staples, Office Depot, Walmart, and Amazon ("Big Box Retailers").

53.    For example, an investigation by Plaintiffs' counsel reveals that on or about June 29, 2022, HP advertised 155 desktop computers at a discount on its website, ranging from 5% off to 60% off.[4]  Of those 155 desktop computers, only three (less than 2%) were available for purchase directly from a Big Box Retailer.[5]  Of the three desktop computers available for purchase directly from a Big Box Retailer, all three were offered at prices below the advertised strikethrough price on HP's website.

54.    Similarly, Plaintiffs' counsel's investigation reveals that on or about June 29, 2022, HP offered approximately 121 laptop and notebook computers at a discount on its website, ranging from 3% off to 60% off.[6]  Of those 121 laptop and notebook computers, only two (less than 2%) were available for purchase directly from a Big Box Retailer.  Of the two laptop and notebook computers available for purchase directly from a Big Box Retailer, both were offered at prices below the advertised strikethrough price on HP's website.

55.    Discovery will show that because the majority of products offered at a discount on HP's website are sold exclusively on HP's website (or by HP through third-party websites), the prevailing market price for those products are the prices at which HP offers them for sale.

56.    With respect to products that are sold exclusively on HP's website, the precise number and identity of those products are peculiarly within HP's knowledge because HP knows which products it sells to other retailers for resale and which products it does not sell to other retailers for resale.

---

[4] A list of the desktop computers, their advertised strikethrough and sale prices, and whether they were available for purchase online directly from the Big Box Retailers is attached hereto as **Exhibit A** and incorporated into Plaintiffs' complaint by reference.

[5] Products sold by HP or a third-party on a Big Box Retailer's website and products that were out of stock were not counted as being available for purchase directly from a Big Box Retailer.

[6] A list of the laptop and notebook computers, their advertised strikethrough and sale prices, and whether they were available for purchase online directly from the Big Box Retailers is attached hereto as **Exhibit B** and incorporated into Plaintiffs' complaint by reference.

57.     With respect to products that are not sold exclusively by HP, the precise number of sales of those products by other retailers is peculiarly within HP's knowledge because HP knows how many non-exclusive products it sells to other retailers for resale.  Thus, whether HP sells more non-exclusive products to consumers than it sells to other retailers is peculiarly within HP's knowledge.  Thus, for non-exclusive products that HP sells more to consumers than to other retailers, the prevailing market prices of those products are peculiarly within HP's knowledge.

F.     **Plaintiff Carvalho's Purchase**

58.     On September 7, 2021, Carvalho accessed HP's website from his residence in Las Vegas, Nevada, and purchased an HP All-in-One 24-dp1056qe PC, part number 20W59AA#ABA ("All-in-One PC"), and an HP X3000 G2 Wireless Mouse, part number 2C3M3AA#ABA ("G2 Mouse").

59.     HP advertised the All-in-One PC as being on sale for $899.99 and represented to Carvalho that he would save $100 off the strikethrough price of $999.99.  HP additionally advertised that Carvalho would receive an additional 5% off with the coupon code HP21LDS5 as part of a Labor Day sale.

60.     Enticed by the idea of paying less than the regular price and getting a $999.99 computer for only $899.99 (minus an additional 5% off), Carvalho proceeded to add the All-in-One PC to his shopping cart.

61.     After clicking the button to add the All-in-One PC to his shopping cart, Carvalho was directed to a web page where HP advertised additional accessories for Carvalho to purchase, including the G2 Mouse.  HP advertised the G2 Mouse as being on sale for $11.99, $5.00 off the strikethrough price of $16.99.  Below is an example of the advertisement Carvalho viewed after adding the All-in-One PC to his shopping cart.



62.    Enticed by the idea of paying less than the regular price and getting a $16.99 mouse for only $11.99 (minus an additional 5% off), Carvalho added the G2 Mouse to his order.

63.    Carvalho was then directed to his online shopping cart.  In his shopping cart, HP represented to Carvalho that he was saving $105.00 off the strikethrough prices of the All-in-One PC and G2 Mouse by displaying "YOU SAVED **$105.00** ON YOUR ORDER" on a contrasting blue background below his order total.

64.    Carvalho then obtained an additional 5% off by entering the Labor Day coupon code HP21LDS5.

65.    Carvalho was then directed to the checkout page where he input his contact information, shipping information, and payment information.  On the checkout page, HP again represented to Carvalho the amount he was saving on his order—now $168.60, due to the additional 5% off and a free HP Stereo USB Headset valued at $18.00 that HP included in his order.

66.    After inputting his information, Carvalho was directed to a final page where he could review and place his order.  On the review page, HP again represented to Carvalho he was saving $168.60 on his order.

67.    In reliance on HP's representations and omissions with respect to the pricing of the All-in-One PC and G2 Mouse, the amount of savings he was purportedly receiving, and the limited-time nature of the advertised discounts, Carvalho placed his order.

68.     Immediately after completing his purchase, HP directed Carvalho to a web page confirming the amount he purportedly saved on his order.  HP also sent Carvalho an order confirmation via email, which confirmed that Carvalho had saved $168.60 on his order—an amount equal to the sum of the differences between the strikethrough prices and sale prices of the All-in-One PC and G2 Mouse ($145.00 and $5.60, respectively), plus the value of the HP Stereo USB Headset ($18.00).



69.     Carvalho purchased the All-in-One PC and G2 Mouse after HP had advertised them using misleading strikethrough prices of $999.99 and $16.99, respectively.  At the time, Carvalho believed he was purchasing a computer valued at $999.99 for approximately 15% off and a mouse valued at $16.99 for approximately 33% off.  Carvalho believed $999.99 and $16.99 were the regular prices of his computer and mouse, and that they would be sold at those prices at the end of the Labor Day sale.

70.     However, discovery will show that prior to Carvalho's purchase, HP did not sell the

SECOND AMENDED CLASS ACTION COMPLAINT

All-in-One PC for $999.99 for a reasonably substantial period of time, if ever at all. Indeed, daily pricing data collected by Plaintiffs' counsel indicates that $999.99 was neither the prevailing price of the All-in-One PC during the three-month period immediately preceding Carvalho's purchase, nor during the one-month period after his purchase, as shown below.



71. Likewise, daily pricing data collected by Plaintiffs' counsel indicates that $16.99 was not the prevailing price of the G2 Mouse during the three-month period immediately preceding Carvalho's purchase, as shown below.



† Data was not collected for four days in each of June, July, and August, and seven days in September.
†† Data was not collected for ten days in June, six days in July, four days in August, and one day in September.

72.     Carvalho's understanding of the value of the All-in-One PC and G2 Mouse was based on his belief that HP regularly sold them for $999.99 and $16.99, respectively, and that $999.99 and $16.99 represented their values.  HP thereby induced Carvalho to purchase the All-in-One PC and G2 Mouse by falsely representing to him that he was saving a significant amount of money off their strikethrough prices and by failing to disclose that the strikethrough prices, which Carvalho reasonably believed to be their regular prices, were not the actual prices at which HP formerly offered the products for sale for a reasonably substantial period of time.  Carvalho would not have purchased the All-in-One PC and G2 Mouse, or would have paid less for them, had he known that their true regular prices were less than the advertised strikethrough prices and that the advertised savings were fictitious.

73.     Plaintiffs' counsel's investigation indicates and discovery will show that the All-in-One PC was not available for purchase directly from a Big Box Retailer.  Discovery will show that the prevailing market price for the All-in-One PC was the price at which HP sold the All-in-One PC on its website.

74.     Plaintiffs' counsel's investigation indicates and discovery will show that the G2 Mouse was only available for purchase directly from one Big Box Retailer, Amazon.com. Plaintiffs' counsel's investigation indicates and discovery will show that Amazon.com sells the G2 Mouse for $11.95, approximately the same price at which HP sold the G2 Mouse on its website. Discovery will show that the prevailing market price for the G2 Mouse was approximately the same price at which HP sold the G2 Mouse on its website.

**G.     Plaintiff Maher's Purchase**

75.     On June 14, 2021, Maher accessed HP's website from his residence in Pittsburg, California, and purchased an HP Laptop 17t-by400, part number 195P5AV_1 ("17t Laptop").

76.     HP advertised the 17t Laptop as being on sale for $599.99 and represented to Maher that he would save $130 off the strikethrough base price of $729.99.  Below is an example of the advertisement Maher viewed before adding the 17t Laptop to his shopping cart.



77.    Enticed by the idea of paying less than the regular price and getting $130 off the base price, Maher proceeded to add the 17t Laptop to his shopping cart.

78.    After clicking the button to add the 17t Laptop to his shopping cart, Maher was directed to a web page where he could customize his 17t Laptop.  Maher upgraded the Wi-Fi adapter and SDRAM, which added $100.00 to the base price of his laptop and increased the sale price to $699.99.

79.    Maher was then directed to his online shopping cart.  In his shopping cart, HP represented to Maher that he was saving $130.00 off the strikethrough base price of the 17t Laptop by displaying "YOU SAVED **$130.00** ON YOUR ORDER" on a contrasting blue background below his order total.

80.    Maher was then directed to the checkout page where he input his contact information, shipping information, and payment information.  On the checkout page, HP again represented to Maher the amount he was purportedly saving on his order.

81.    After inputting his information, Maher was directed to a final page where he could review and place his order.  On the review page, HP again represented to Maher he was saving $130.00 on his order.

82.    In reliance on HP's representations and omissions with respect to the pricing of the 17t Laptop and the amount of savings he was purportedly receiving, Maher placed his order.

83.    Immediately after completing his purchase, HP directed Maher to a web page

SECOND AMENDED CLASS ACTION COMPLAINT

confirming he had saved $130.00 on his order—an amount equal to the difference between the strikethrough price of $829.99 ($729.99 base price plus $100 in upgrades) and the sale price of $699.99.  Below is an example of a screenshot taken from Maher's HP account showing the details of his order.



84.     Maher purchased the 17t Laptop after HP had advertised it using a misleading strikethrough base price of $729.99.  At the time, Maher believed that after he added $100 in upgrades, he was purchasing a computer valued at $829.99 for $130.00 off.  Maher believed that $729.99 was the regular base price of his laptop, and that $829.99 was the regular price of his laptop with the upgrades.

85.     However, discovery will show that prior to Maher's purchase, the base price of the 17t Laptop was not $729.99, and HP did not sell the 17t Laptop using a base price of $729.99 for a reasonably substantial period of time.  Indeed, daily pricing data collected by Plaintiffs' counsel suggests that prior to Maher's purchase, HP never offered the 17t Laptop for sale with a base price of $729.99, as shown below.



86.     Maher's understanding of the value of the 17t Laptop was based on his belief that its regular base price was $729.99 and that $729.99 represented its value without any upgrades.  HP thereby induced Maher to purchase the 17t Laptop by falsely representing to him that he was saving a significant amount of money off the base price of the 17t Laptop and by failing to disclose that the advertised base price, which Maher reasonably believed to be the regular base price, was not the actual base price at which HP formerly sold the 17t Laptop for a reasonably substantial period of time.  Maher would not have purchased the 17t Laptop, or would have paid less for it, had he known that its true regular base price was less than the advertised base price and that the discount and savings advertised by HP was fictitious.

87.     Plaintiffs' counsel's investigation indicates and discovery will show that the 17t Laptop was not available for purchase directly from a Big Box Retailer.  Discovery will show that the prevailing market price for the 17t Laptop was the price at which HP sold the 17t Laptop on its website.

## CLASS ALLEGATIONS

88.     Plaintiffs bring this suit pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated.  The Class and Consumer Subclass ("Classes") are defined as follows:

> **Class:**  All individuals and entities that, on or after October 13, 2017, purchased one or more HP products on HP's website that were advertised as discounted from a strikethrough price.

> **Consumer Subclass:**  All members of the Nationwide Class who are "consumers" within the meaning of California Civil Code § 1761(d) and made their respective purchases on or after October 13, 2018.

89.     Excluded from the Classes are HP, its parents, subsidiaries, affiliates, officers, directors, legal representatives, predecessors, successors, assigns, and employees, and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

90.     <u>Numerosity</u>:  Although the exact number of members of the Classes is uncertain and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable.  Plaintiffs are informed and believes there are hundreds of thousands, if not millions, of members of the Classes that have been damaged by HP's deceptive practices alleged herein.  The disposition of the claims of all Classes in a single action will provide substantial benefits to all parties and to the Court.  The members of the Classes are readily identifiable from information and records in HP's possession, custody, or control.

91.     <u>Commonality</u>:  This action involves common questions of law and fact, including, but not limited to, the following:

        a.     whether HP made false or misleading statements of fact in its advertisements;

        b.     whether HP's advertisements had a tendency to mislead a reasonable consumer;

        c.     whether HP's advertising and marketing practices, as alleged herein, violated established law;

        d.     whether a reasonable consumer would interpret the strikethrough prices on HP's website as the regular price or former price of the products offered for sale on HP's website;

1      e.      whether HP ever sold or offered for sale the products at the advertised

2  strikethrough prices;

3      f.      whether the limited-time offers advertised on HP's website were, in fact, so

4  limited in time;

5      g.      whether HP's statements concerning the strikethrough prices, savings, and

6  limited-time offers displayed on its website were material, such that a reasonable consumer would

7  attach importance to and be induced to act on the information in deciding whether to make a

8  purchase on HP's website;

9      h.      whether a reasonable consumer would interpret the strikethrough prices on

10  HP's website as the regular or former prices of the products offered for sale on HP's website;

11      i.      whether a reasonable consumer would believe the products offered for sale

12  on HP's website have values equal to their strikethrough prices;

13      j.      whether HP misrepresented and/or failed to disclose material facts about the

14  strikethrough prices, discounts, and limited-time offers advertised on its website;

15      k.      whether HP knew, or by the exercise of reasonable care should have known,

16  that the strikethrough prices, discounts, and limited-time offers advertised on its website were

17  untrue and misleading;

18      l.      whether HP intended the strikethrough prices, discounts, and limited-time

19  offers advertised on its website to induce customers to purchase products;

20      m.      whether HP's pricing scheme alleged herein—consisting of misleading

21  strikethrough prices, fictitious savings, and fake limited-time offers—was false or misleading

22  within the meaning of California's False Advertising Law, Consumer Legal Remedies Act, or

23  Unfair Competition Law.

24      n.      whether HP has been unjustly enriched from products falsely advertised and

25  sold on its website;

26      o.      whether HP is likely to continue engaging in false advertising such that an

27  injunction is necessary; and

28      p.      whether Plaintiffs and members of the Classes are entitled to damages,

1  restitution, and/or punitive damages as a result of HP's conduct alleged herein.

2    92.    <u>Typicality</u>:  Plaintiffs' claims are typical of the Class claims in that Plaintiffs, like all

3  members of the Classes, were deceived and damaged by HP's misrepresentations and

4  corresponding failure to provide the advertised discounts, savings, and product values.

5  Furthermore, the factual bases of HP's misconduct are common to all members of the Classes and

6  represent a common thread resulting in injury to the Classes.

7    93.    <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of all members

8  of the classes, and Plaintiffs' interests are coincident with and not antagonistic to those of other

9  members of the Classes.  Plaintiffs have retained competent counsel who are experienced in

10  prosecuting class actions.

11    94.    Class certification is appropriate under Rule 23(b)(2) because HP has acted or

12  refused to act, with respect to some or all issues presented in this Complaint, on grounds generally

13  applicable to all members of the Classes, thereby making appropriate final injunctive relief with

14  respect to the Classes as a whole.

15    95.    Class certification is appropriate under Rule 23(b)(3) because common questions of

16  law and fact substantially predominate over any question that may affect only individual members

17  of the Classes.  Plaintiffs and members of the Classes have all suffered, and will continue to suffer,

18  harm and damages as a result of HP's uniform deceptive pricing practices.  A class action is

19  superior to other available methods for the fair and efficient adjudication of this controversy.

20  Individual litigation of the claims of all members of the Classes is impracticable because the cost of

21  litigation would be prohibitively expensive given the relatively small size of the individual Class

22  members' claims.  Moreover, individualized litigation would impose an immense burden upon the

23  courts and present the potential for varying, inconsistent, or contradictory judgments.  By contrast,

24  maintenance of this action as a class action, with respect to some or all of the issues presented in

25  this Complaint, presents fewer management difficulties, conserves the resources of the parties and

26  of the court system, and is the only means to protect the rights of all members of the Classes.

27  Absent a class action, Plaintiffs and members of the Classes would be unable seek redress, and

28  HP's deceptive pricing practices would continue unabated without remedy or relief.

**FIRST CAUSE OF ACTION**
**Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf of the Consumer Subclass)**

96.     Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

97.     Plaintiffs bring this cause of action on behalf of themselves and the Consumer Subclass.

98.     HP violated, and continues to violate, Section 1770(a)(5) of the California Civil Code by representing that products offered for sale on its website have characteristics or benefits which they do not have.  Specifically, HP represents that the value of its products is greater than it actually is by advertising inflated strikethrough prices for products sold on its website.

99.     HP violated, and continues to violate, Section 1770(a)(9) of the California Civil Code by advertising products as discounted when HP intends to, and does in fact, sell them at their regular prices.

100.     HP violated, and continues to violate, Section 1770(a)(13) of the California Civil Code by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website.  Specifically, HP has violated Section 1770(a)(13) by engaging in the following unlawful acts and practices:

        a.     misrepresenting the regular prices of products on its website by advertising misleading strikethrough prices;

        b.     advertising discounts and savings that are inflated or nonexistent because they are based on misleading strikethrough prices; and

        c.     misrepresenting that the discounts and savings on its website are available only for a limited time, when in fact the discounts and savings are not so limited in time.

101.     HP violated, and continues to violate, Section 1770(a)(16) of the California Civil Code by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.  Specifically, HP represents on its website that it sells products at specified discounts.  After a customer places an order, HP emails the customer an order confirmation confirming that the products were sold at a discount.  But in fact, HP does not sell, nor

1  does it intend to sell, its products at the specified discounts.

2      102.    Pursuant to California Civil Code section 1782(a), on October 8, 2021, Plaintiffs'

3  counsel provided proper notice to HP of Plaintiff Carvalho's intent to pursue damages under the

4  Consumers Legal Remedies Act on behalf of himself and all others similarly situated, and provided

5  HP a reasonable opportunity to cure.  The letter was sent via certified mail, return receipt requested,

6  to HP's principal office in California, located at 1501 Page Mill Road, Palo Alto, CA 94304, and to

7  HP's agent for service of process, CT Corporation System, located at 330 N Brand Blvd., Glendale,

8  CA 91203.  According to the United States Postal Service, HP and its agent received the letters on

9  October 18, 2021 and October 13, 2021, respectively.  As of the filing this Complaint, HP has not

10  taken any actions to correct the false advertising on its website, nor has it addressed any of other

11  issues raised in the letter, such as such as notifying and providing monetary compensation to Class

12  members.

13      103.    Plaintiffs seek actual damages pursuant to California Civil Code section 1780(a)(1),

14  public injunctive relief pursuant to section 1780(a)(2), punitive damages pursuant to section

15  1780(a)(4), and any other relief the court deems proper pursuant to section 1780(a)(5).

16                       **SECOND CAUSE OF ACTION**
                              **Unjust Enrichment**
17                          **(On Behalf of the Class)**

18      104.    Plaintiffs incorporate by reference each of the allegations contained in the preceding

19  paragraphs of this Complaint.

20      105.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

21      106.    Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this

22  cause of action for equitable monetary relief in the alternative to the damages they seek in their first

23  through fifth causes of action; Plaintiffs are entitled to equitable monetary relief because they lack

24  an adequate remedy at law; the legal remedies available to them are not as equally prompt and

25  certain, and in other ways efficient.

26      107.    HP intentionally and/or recklessly made false representations and material omissions

27  to Plaintiffs and Class members regarding the strikethrough price and value of products offered for

28  sale on its website.  HP did so to induce Plaintiffs and Class members to purchase products on its

website.  Plaintiffs and Class members reasonably and justifiably relied on HP's false representations when purchasing products on HP's website.

108.    HP made false promises and material omissions to Plaintiffs and Class members regarding the discounts and savings they were supposedly receiving.  HP did so to induce Plaintiffs and Class members to make purchases on HP's website and to pay more for products than they otherwise would have.  HP did not intend to keep, and in fact did not keep its false promises. Plaintiffs and Class members reasonably and justifiably relied on HP's false promises when making purchases on HP's website.

109.    Plaintiffs and Class members conferred benefits on HP by making purchases on HP's website.

110.    HP has knowledge of such benefits, and voluntarily accepted and retained the benefits conferred.

111.    HP has been unjustly enriched in retaining the revenues derived from the purchases made by Plaintiffs and Class members.

112.    Retention of that money under these circumstances is unjust and inequitable because HP misrepresented that its products were discounted and had a value which they in fact did not have.

113.    HP's misrepresentations, failures to disclose, and false promises caused injuries to Plaintiffs and Class members because they would not have purchased the products, or would have paid less for them, had they known that the products did not have the advertised particular worth or value.

114.    Because HP's retention of the non-gratuitous benefits conferred to it by Plaintiffs and Class members is unjust and inequitable, HP ought to pay restitution to Plaintiffs and Class members for its unjust enrichment.

115.    As a direct and proximate result of HP' unjust enrichment, Plaintiffs and Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

### THIRD CAUSE OF ACTION
**Violation of California's False Advertising Law, Bus. & Prof. Code § 17500**
**(On Behalf of the Class)**

116.   Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

117.   Plaintiffs bring this cause of action on behalf of themselves and the Class.

118.   Plaintiffs bring this cause of action for public injunctive relief pursuant to Section 17535 of the Business and Professions Code and seek an order enjoining HP from continuing to violate Section 17500.  Plaintiffs are entitled to this forward-looking relief because there is no adequate remedy at law that would protect Plaintiffs, Class members, and the public at large from HP's ongoing violations of Section 17500.

119.   Plaintiffs additionally bring this cause of action for restitution pursuant to Section 17535 of the Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through fifth causes of action.  Plaintiffs are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them are not as equally prompt and certain, and in other ways efficient.

120.   HP has violated, and continues to violate, Section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements over the internet to Plaintiffs and Class members.

121.   HP disseminated untrue and misleading advertisements by advertising misleading strikethrough prices, fictitious savings, and fake limited-time offers with respect to HP products offered for sale on its website.

122.   HP disseminated such untrue and misleading advertisements with the intent to induce Plaintiffs and Class members to purchase products on its website.

123.   HP knew, or by the exercise of reasonable care should have known, that the advertised strikethrough prices, discounts, and limited-time offers were untrue or misleading.

124.   HP fraudulently concealed from and intentionally failed to disclose to Plaintiffs and Class members the truth about its strikethrough prices, discounts, and limited-time offers.

Specifically, HP failed to inform Plaintiffs and Class members that (i) the advertised strikethrough prices did not reflect bona fide regular prices—i.e., the price at which HP formerly sold the computer for a reasonably substantial period of time; (ii) the advertised discounts were not based on bona fide regular prices; and (iii) the advertised limited-time offers were not so limited in time. Had HP disclosed this information to Plaintiffs and Class members, they would not have purchased the products in question or would have paid less for them.

125.    Plaintiffs and Class members reasonably relied on HP's representations and/or omissions made in connection with the advertised strikethrough prices, discounts, and limited-time offers, and were induced to purchase HP products based on the belief that they were receiving a discount on products valued at more than what they actually received, and that the discount would be available only for a limited time.

126.    HP's representations and/or omissions made in connection with its strikethrough prices, discounts, and limited-time offers were likely to deceive reasonable consumers by obfuscating the true value of HP products.

127.    Had Plaintiffs and Class members known that the strikethrough prices were misleading and artificially inflated, they would not have purchased products from HP or would have paid less for them.

128.    As a direct and proximate result of HP's untrue and misleading advertising, HP has improperly acquired money from Plaintiffs and Class members.  As such, Plaintiffs request this Court order HP to restore this money to them and all Class members.

129.    HP's violations of Section 17500 are ongoing because it continues to advertise misleading strikethrough prices, fictitious savings, and fake limited-time offers to Plaintiffs, Class members, and the public at large.  Unless restrained by this Court, HP will continue to engage in untrue and misleading advertising, as alleged above, in violation of Section 17500.  Accordingly, Plaintiffs seek an injunction enjoining HP from continuing to violate Section 17500.

**FOURTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of the Class)**

130.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

131.    Plaintiffs bring this cause of action on behalf of themselves and the Class.

132.    Plaintiffs bring this cause of action for public injunctive relief pursuant to Section 17203 of the Business and Professions Code and seek an order enjoining HP from continuing to violate California's Unfair Competition Law.  Plaintiffs are entitled to this forward-looking relief because there is no adequate remedy at law that would protect Plaintiffs, Class members, and the public at large from HP's ongoing violations of California's Unfair Competition Law.

133.    Plaintiffs additionally bring this cause of action for restitution pursuant to Section 17203 of the Business and Professions Code.  Pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek restitution in the alternative to the damages they seek in their first through fifth causes of action.  Plaintiffs are entitled to restitution because they lack an adequate remedy at law; the legal remedies available to them are not as equally prompt and certain, and in other ways efficient.

134.    HP has violated, and continues to violate, the "unlawful" prong of California's Unfair Competition Law, Bus. Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in the following unlawful business acts and practices:

a.    disseminating untrue and misleading advertisements over the internet by advertising misleading strikethrough prices, fictitious savings, and fake limited-time offers, in violation of Bus. & Prof. Code § 17500;

b.    by representing that products offered for sale on its website have characteristics or benefits which they do not have in violation of Civ. Code § 1770(a)(5);

c.    by advertising products on its website with intent not to sell them as advertised, in violation of Civ. Code § 1770(a)(9);

d.    making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions as to products sold on its website, in violation of Civ.

1  Code § 1770(a)(13); and

2          e.      representing that products sold on its website were supplied in accordance

3  with its previous representations when in fact they were not, in violation of Civ. Code §

4  1770(a)(16).

5          135.    HP has violated, and continues to violate, the "fraudulent prong" of the UCL by

6  engaging in the following fraudulent business acts and practices:

7          a.      using misrepresentations, deception, and/or concealment of material

8  information in connection with the former price and value of products sold on HP's website, such

9  that Plaintiffs and Class members were likely to be deceived;

10         b.      advertising strikethrough prices, discounts, and limited-time offers that are

11 false, misleading, and/or have a capacity, likelihood, or tendency to deceive Plaintiffs and Class

12 members; and

13         c.      failing to provide Plaintiffs and Class members with information as to when,

14 if ever, the strikethrough prices displayed on HP's website were bona fide offer prices.

15         136.    HP has violated, and continues to violate, the "unfair" prong of the UCL by

16 engaging in the following unfair business acts and practices:

17         a.      engaging in false reference pricing in connection with the sale of products on

18 its website such that Plaintiffs and Class members, who could not have reasonably avoided such

19 predatory schemes, have been injured—a practice that serves no benefit to consumers or

20 competition;

21         b.      engaging in false reference pricing whereby the harm to consumers,

22 competition, and the public far outweighs any utility of the practice, which only serves to deceive

23 consumers and give HP an unfair advantage over other computer manufacturers; and

24         c.      engaging in false and misleading advertising in contravention of public

25 policy, including such public policy as reflected in Cal. Bus. & Prof. Code §§ 17200 and 17500,

26 Cal. Civ. Code § 1770(a)(13), and 16 C.F.R. §§ 233.1 and 233.5.

27

28

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the court order the following relief and enter judgment against HP Inc. as follows:

A.    An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed representatives of the Classes, and Plaintiffs' counsel be appointed Class Counsel;

B.    An order enjoining HP from continuing to violate in the future California's Consumer Legal Remedies Act, False Advertising Law, and Unfair Competition Law, as described herein;

C.    A judgment awarding Plaintiffs and Class members actual and punitive damages in an amount to be determined at trial or, in the alternative, equitable monetary relief including, without limitation, restitution and disgorgement of all money HP improperly acquired from Plaintiffs and Class members as a result of its false advertising and unlawful, unfair, and fraudulent business practices;

D.    A judgment awarding Plaintiffs costs of suit; including reasonable attorney's fees pursuant to California Civil Code § 1780(d), Code of Civil Procedure § 1021.5, and as otherwise permitted by statute;

E.    Pre- and post-judgment interest; and

F.    Such other and further relief as may be necessary or appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and Northern District of California Local Rule 3-6, Plaintiffs demand a jury trial on all triable issues.

1   Dated:  July 15, 2022                    Respectfully submitted,

2

3                                        By:     /s/ Daniel A. Rozenblatt

4                                                Daniel A. Rozenblatt (SBN 336058)
                                                 Seth W. Wiener (SBN 203747)
5                                                EDGE, A PROFESSIONAL LAW CORPORATION
                                                 1341 La Playa Street 20
6                                                San Francisco, CA 94122
                                                 Telephone: (415) 515-4809
7

8                                                Tarek H. Zohdy (SBN 247775)
                                                 Cody R. Padgett (SBN 275553)
9                                                Laura E. Goolsby (SBN 321721)
                                                 CAPSTONE LAW APC
10                                               1875 Century Park East, Suite 1000
                                                 Los Angeles, California 90067
11                                               Telephone: (310) 556-4811
                                                 Facsimile: (310) 943-0396
12

13                                               Attorneys for Plaintiffs
                                                 RODNEY CARVALHO and MARK MAHER
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT