1

2

3                  UNITED STATES DISTRICT COURT

4                NORTHERN DISTRICT OF CALIFORNIA

5                       SAN JOSE DIVISION

6

7    RODNEY CARVALHO, et al.,            Case No.  21-cv-08015-BLF

8                  Plaintiffs,

9           v.                          **ORDER GRANTING IN PART AND
                                         DENYING IN PART MOTION TO
10   HP, INC.,                           DISMISS SECOND AMENDED
                                         COMPLAINT**
11                 Defendant.
                                         [Re:  ECF No. 46]
12

13          In this case, Plaintiffs Rodney Carvalho and Mark Maher challenge the manner in which

14   Defendant HP Inc. advertises products on its website.  Plaintiffs allege that HP displays false and

15   inflated "strikethrough" prices for its products that it then offers to consumers at a purported

16   "discount price."  HP allegedly markets its products this way to create the impression that

17   consumers are saving money when in fact HP never sells its products at the higher strikethrough

18   prices.  Plaintiffs seek to represent classes of individuals who purchased purportedly discounted

19   products on HP's website in the last five years.

20          Now before the Court is HP's motion to dismiss the Second Amended Complaint under

21   Federal Rules of Civil Procedure 9(b) and 12(b)(6).  *See* ECF No. 46 ("MTD"); *see also* ECF No.

22   54 ("Reply").  Plaintiffs oppose the motion.  ECF No. 51 ("Opp.").  The Court held a hearing on

23   the motion on December 15, 2022.  *See* ECF No. 56.  For the following reasons, HP's motion to

24   dismiss the Second Amended Complaint is GRANTED IN PART AND DENIED IN PART.

25   **I.    BACKGROUND**

26          As alleged in the Second Amended Complaint and accepted as true for the purposes of this

27   motion, Defendant HP Inc. is a technology company that sells computers and related peripheral

28   parts, software, and services to consumers in the United States through its website HP.com.  ECF

United States District Court
Northern District of California

No. 43 ("SAC") ¶¶ 1, 15, 20.

Plaintiffs allege that HP creates an illusion of savings on its website by advertising false strikethrough prices and discounts based on those prices. SAC ¶ 23. For any given product, HP's website displays a price in strikethrough typeface (i.e., ~~$999.99~~). *Id.* ¶ 24. At the bottom of each page, HP includes a section entitled "Disclaimer +". ECF No. 19-1, Ex. A ("HP RJN")[1], ECF No. 22-1 ("Rozenblatt Decl.") Ex. 2. Clicking on the "+" expands the Disclaimer section. Rozenblatt Decl. Exs. 2–3. One of the disclaimers makes clear that the strikethrough price is a Manufacturer's Suggested Retail Price ("MSRP"). It states:

> HP's MSRP is subject to discount. HP's MSRP price is shown as either a stand-alone price or as a strikethrough price with a discounted or promotional price also listed. Discounted or promotional pricing is indicated by the presence of an additional higher MSRP strikethrough price.

*See* HP RJN. No asterisk or other indication of a disclaimer appears next to the strikethrough prices. Rozenblatt Decl. Ex. 1.

Near the strikethrough price and typically in a larger and bolder font, HP advertises a "sale price," the price at which the product is currently offered for sale. SAC ¶ 25. Throughout its website, HP also advertises discounts of savings using words such as "Save," "You'll Save," and "You Saved." *Id.* ¶ 26. As a customer goes through the purchasing process and after their order, HP displays many of these same representations that the customer has saved money. *Id.* ¶¶ 28–31. Plaintiffs allege that approximately 35% of the products HP sells on its website are sold in this manner. *Id.* ¶ 32.

In general, however, the savings HP advertises on its website do not represent the actual savings that customers receive because the strikethrough prices do not represent the actual prices at which computers were sold or offered for sale for a reasonably substantial period of time. SAC ¶ 32. For example, on March 27, 2021, HP advertised its HP ENVY laptop for sale at $799.99 and represented to customers that they were saving $150 from the strikethrough price of $949.99. *Id.* ¶ 34. But Plaintiffs allege that in the months that followed, HP rarely, if ever, sold the ENVY

---

[1] The Court previously granted HP's request for judicial notice.

United States District Court
Northern District of California

laptop at a price of $949.99.  *Id.* ¶ 35.  HP engages in similar pricing practices for other products, including products other than computers.  *Id.* ¶¶ 36–37 (charts showing prices of other products over multiple months).  Plaintiffs allege that they have no way of determining if the prices HP advertises as strikethrough prices are in fact prices at which HP ever sells its products.  *Id.* ¶ 50.

Additionally, according to Plaintiffs, HP falsely advertises that the discounts are available only for a limited time when in fact those discounts continue beyond their advertised expiration date.  SAC ¶ 38.  For example, HP advertises "Weekly Deals," but those deals in fact last longer than one week and in some cases don't end for months.  *Id.* ¶¶ 40–42.  HP also advertises similar sales, such as a "Memorial Day Special" and "Flash Sales".  *Id.* ¶¶ 43–47.  This practice induces consumers to make purchases they otherwise may not have made due to a false sense of urgency in obtaining a lower price.  *Id.* ¶ 38.

Further, according to Plaintiffs, the "vast majority" of computers sold on HP's website are sold exclusively on HP's website and not from traditional big box retailers.  SAC ¶ 52.  Plaintiffs allege that, as of June 29, 2022, HP advertised 155 desktop computers at a discount on its website and of those, only three were available for purchase directly from a Big Box Retailer.  *Id.* ¶ 53, Ex. A.  Similarly, Plaintiffs allege that, as of June 29, 2022, HP advertised 121 laptop and notebook computers at a discount on its website and of those, only two were available for purchase directly from a Big Box Retailer.  *Id.* ¶ 54, Ex. B.  Plaintiffs further allege that the precise number and identity of products sold exclusively on HP's website as opposed to non-exclusively is information that is "peculiarly within HP's knowledge."  *Id.* ¶¶ 56-57.

On September 7, 2021, Plaintiff Rodney Carvalho purchased from HP's website an HP All-in-One 24-dp1056qe PC and HP X3000 G2 Wireless Mouse.  SAC ¶ 58.  The All-in-One PC was advertised as being on sale for $899.99 from a strikethrough price of $999.99, which HP represented was a savings of $100.  *Id.* ¶ 59.  HP also advertised an additional 5% savings with a coupon code for a Labor Day sale.  *Id.*  Carvalho added the All-in-One PC to his cart and was then told that he could purchase the G2 Mouse for $11.99, $5.00 off the strikethrough price of $16.99.  *Id.* ¶¶ 60–61.  He added the G2 Mouse to his cart.  *Id.* ¶ 62.  In his shopping cart, HP stated that "YOU SAVED **$105.00** ON YOUR ORDER."  *Id.* ¶ 63.  Carvalho typed in the coupon code and

3

1  received an additional 5% for the Labor Day sale.  *Id.* ¶ 64.  Two further checkout pages, the order

2  confirmation page, and an order confirmation email told Carvalho that he saved $168.60 on his

3  order.  *Id.* ¶¶ 65–68.  Carvalho alleges that HP did not sell the All-in-One PC at $999.99 or the G2

4  Mouse at $16.99 for any reasonably substantial period of time in the three months prior to his

5  purchase or in the one month following his purchase.  *Id.* ¶ 70-71.  Carvalho alleges that neither

6  item was available for purchase directly from a big box retailer.  *Id.* ¶¶ 73-74.

7        On June 14, 2021, Plaintiff Mark Maher purchased from HP's website an HP Laptop 17t-

8  by400.  SAC ¶ 75.  The 17t Laptop was advertised as being on sale for $599.99, $130 off the

9  strikethrough price of $729.99.  *Id.* ¶ 76.  Maher added the product to his cart and purchased an

10  additional Wi-Fi adapter to bring his total purchase to $699.99.  *Id.* ¶ 78.  In his shopping cart, HP

11  stated that "YOU SAVED **$130.00** ON YOUR ORDER."  *Id.* ¶ 79.  Two further checkout pages

12  and the order confirmation page indicated that Maher saved $130.  *Id.* ¶¶ 80–81, 83.  Maher

13  alleges that HP did not sell the 17t Laptop at $729.99 for any reasonably substantial period of

14  time.  *Id.* ¶ 85.  Maher alleges that this item was not available for purchase directly from a big box

15  retailer.  *Id.* ¶ 87.

16        Plaintiffs filed this lawsuit on October 13, 2021, *see* ECF No. 1, and filed the First

17  Amended Complaint on December 30, 2021, *see* ECF No. 18 ("FAC").  The FAC was dismissed

18  with leave to amend.  *Carvalho v. HP, Inc.*, No. 21-cv-08015-BLF, 2022 WL 2290595 (N.D. Cal.

19  June 24, 2022) ("First MTD Order").  Plaintiffs filed the operative Second Amended Complaint

20  on July 15, 2022.  *See* SAC.  The Second Amended Complaint asserts four causes of action:  (1)

21  violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, SAC

22  ¶¶ 96–103; (2) unjust enrichment, SAC ¶¶ 104–115; (3) violation of California's False Advertising

23  Law ("FAL"), Cal. Bus. & Prof. Code § 17500, SAC ¶¶ 116–129; and (4) violation of California's

24  Unfair Competition Law ("UCL"), SAC ¶¶ 130–136.  Plaintiffs seek to represent a class of all

25  individuals and entities that, on or after October 13, 2017, purchased one or more HP products on

26  HP's website that were advertised as discounted from a strikethrough price.  SAC ¶ 88.  Plaintiffs

27  also seek to represent one subclass of class members who are "consumers" within the meaning of

28  Cal. Civ. Code § 1761(d) and made their purchases on or after October 13, 2018.  *Id.*

United States District Court
Northern District of California

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  Rule 9(b) demands that the circumstances constituting any alleged fraud be plead "specific[ally] enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal citation omitted).  Claims of fraud must be accompanied by the "who, what, when, where, and how" of the misconduct alleged.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), *superseded by statute on other grounds* (internal citation omitted).

III.   **JUDICIAL NOTICE**

HP filed a request for judicial notice in connection with its motion to dismiss.  ECF No. 46-1 ("RJN").  HP requests that the Court take judicial notice of eleven exhibits, all of which are printouts of webpages listing various HP products for sale.  *See id.*  Plaintiffs oppose the request. ECF No. 51-1 ("RJN Opp.").  They dispute the information contained in the printouts, particularly HP's allegation that certain retailers sell certain products, and they argue that one exhibit omits essential information.  RJN Opp. at 2-3; *see also* ECF No. 51-2 ("Rozenblatt RJN Decl.") ¶¶ 5-7. They further argue that the exhibits that are printouts of mouses are not of the same mouse purchased by Carvalho.  RJN Opp. at 3; *see also* Rozenblatt RJN Decl. ¶¶ 2-4.

The Court finds that it is difficult to understand the relevance of these documents without an analysis from HP or an outside expert.  Further, the Court is concerned that taking judicial notice of these documents will turn this motion to dismiss into a de facto motion for summary judgment.  And the Court further notes the several objections made by Plaintiffs.  The Court therefore DENIES HP's request for judicial notice.

IV.   **DISCUSSION**

The Court evaluates each of HP's arguments in turn.

A.   **Limited Time and Limited Quantity Offers**

The SAC alleges that HP falsely advertises limited time and limited quantity offers.  SAC ¶¶ 7-12, 38-47.  HP argues that neither Carvalho nor Maher has standing to bring a claim as to limited quantity offers because they do not allege that they relied on a limited quantity offer in purchasing their products.  MTD at 12-13.  It further argues that Maher does not have standing to bring a claim as to limited time offers because he does not allege that he relied on any limited time offers.  *Id.*  Plaintiffs do not disagree, but they emphasize that the Court already decided that Carvalho has provided sufficient allegations as to limited time offers.  Opp. at 12.

1.   The Court agrees with the parties.  The portion of Plaintiffs' SAC naming the causes of action and their bases does not mention limited quantity offers, *see* SAC ¶¶ 96-136, but the Court will still make clear that Plaintiffs may not move forward on a theory as to limited quantity offers.  As to limited time offers, the Court reiterates that Carvalho has standing to

1    proceed on this theory.  The motion to dismiss the FAL, UCL, and CLRA claims as to a limited

2    quantity theory is GRANTED.  The motion to dismiss the FAL, UCL, and CLRA claims as to a

3    limited time theory is DENIED as to Carvalho and GRANTED as to Maher.

4          **B.    FAL, UCL, and CLRA Claims**

5          HP moves to dismiss the UCL, CLRA, and FAL claims.  HP argues that Plaintiffs have not

6    shown that the strikethrough prices are false or misleading.  MTD at 6-12.  It also argues that

7    Plaintiffs have not shown the prices are likely to deceive a reasonable consumer.  *Id.* at 13-14.

8          California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

9    Cal. Bus. & Prof. Code § 17200.  "California's FAL prohibits any unfair, deceptive, untrue or

10   misleading advertising."  *Id.* (internal quotation marks and citation omitted).   A violation of the

11   FAL necessarily constitutes a violation of the UCL.  *See id.*  Finally, "California's CLRA

12   prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'"  *Id.* (quoting

13   Cal. Civ. Code § 1770).

14         "Whether a business practice is deceptive or misleading under these California statutes [is]

15   governed by the reasonable consumer test."  *Mars Petcare US, Inc. v. Moore*, 966 F.3d at 1017

16   (internal quotation marks and citations omitted).  Under this standard, Plaintiffs "must show that

17   members of the public are likely to be deceived."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934,

18   938 (9th Cir. 2008) (internal quotation marks and citation omitted).  The reasonable consumer test

19   may be satisfied by advertising that is false or, alternatively, advertising that is true but

20   nonetheless misleading.  *See id.*  However, "a plaintiff's unreasonable assumptions about

21   [advertising] will not suffice."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).  Thus,

22   while application of the reasonable consumer test typically involves question of fact that may not

23   be resolved on a motion to dismiss, dismissal is appropriate where the court determines that the

24   plaintiff's claims are not plausible.  *See id.* at 886.  ("In sum, the district court properly dismissed

25   this action under Federal Rule of Civil Procedure 12(b)(6) because Trader Joe's representations on

26   the front label and the ingredients statement of its Manuka Honey product are not misleading to a

27   reasonable consumer as a matter of law."); *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225,

28   1231 (9th Cir. 2019) ("Becerra has not sufficiently alleged that Diet Dr Pepper's labeling is false

United States District Court
Northern District of California

7

1    or misleading and dismissal was therefore proper.").

2           **1. False or Misleading Prices**

3           Courts in this circuit applying the reasonable consumer test to cases like this one have

4    divided price comparison cases into two categories: cases involving "exclusive products" and

5    those involving "non-exclusive products." *See Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076,

6    1084 (C.D. Cal. 2018).[2]   "In exclusive product cases, a store, often an outlet store, sells a lower-

7    price, different version of a product sold in traditional retail stores.  The outlet uses the price of the

8    product made for the retail store as a comparative reference price on price tags.  However, the

9    actual product being sold in the outlet is made exclusively for the outlet and is never sold for the

10   comparative reference price at a traditional retail store." *Id.*  Courts allow those cases to proceed

11   based on allegations specific to that outlet or retail store exclusively selling the product.  *See, e.g.*,

12   *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017) (reversing grant

13   of motion to dismiss where plaintiff alleged that Neiman Marcus outlet used reference prices to

14   products sold at Neiman Marcus retail stores, but products were made exclusively for the outlet

15   store); *Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA (JMA), 2015 WL 10436858, at *7 (N.D.

16   Cal. Oct. 9, 2015) (denying motion to dismiss on similar basis as to Nordstrom Rack and

17   Nordstrom retail stores).  "In non-exclusive product cases, on the other hand, more than one

18   retailer offers the product at issue for sale. Because other retailers offer the same product for sale,

19   there are legitimate prices to which to compare the defendant's comparative reference price. In

20   those cases, courts tend to reject claims unless the plaintiff establishes that the comparative

21   reference price is misleading." *Stein Mart*, 291 F. Supp. 3d at 1084.

22          This Court previously stated there was "no dispute that this is a 'non-exclusive products'

23   case in which 'more than one retailer offers the product at issue for sale.'" *Carvalho*, 2022 WL

24   2290595, at *4 (quoting *Stein Mart*, 291 F. Supp. 3d at 1084).  But Plaintiffs now dispute this

25   characterization.  Plaintiffs allege that the "vast majority" of HP's desktop, laptop, and notebook

26

27   _____

[2] Although *Stein Mart* adjudicated a motion for class certification and motion for summary

28   judgment, its discussion of the different standards for exclusive products and non-exclusive
products cases remains instructive.  Several of the decisions it cites (which are also cited in this
Order) adjudicated motions to dismiss.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    computers are *not* sold at big box retailers.  *See* SAC ¶¶ 52-57.  If this is the case, then the Court

2    cannot look to "comparative reference price[s]" from these retailers to tell whether the

3    strikethrough price is misleading.  *See Stein Mart*, 291 F. Supp. 3d at 1084.  Instead, Plaintiffs

4    argue, the Court has to look at the prices at which HP sells the products, which it alleges are

5    usually below the strikethrough price.  Opp. at 11.  HP argues that the products are sold at other

6    retailers.  MTD at 6-12.

7            The Court finds that the exclusive vs. non-exclusive product framework is not particularly

8    instructive in this case, as the facts do not fit neatly into either category.  According to Plaintiffs'

9    allegations, which are based on a thorough investigation and must be taken as true at this stage, the

10   majority of the relevant HP products are not sold at traditional big box retailers, suggesting they

11   are not non-exclusive products.  *See* SAC ¶¶ 52-57.  On the other hand, this is not a traditional

12   exclusive product case, as there are no allegations that HP is selling these products at some sort of

13   discount or outlet store.  *See, e.g.*, *Rubenstein*, 687 F. App'x 564 (Neiman Marcus outlet vs.

14   Neiman Marcus retail store); *Branca*, 2015 WL 10436858 (Nordstrom vs. Nordstrom Rack).  The

15   Court declines to attempt to put this case into a category that is not a good fit.  Instead, the Court

16   will look at the reasoning underlying both non-exclusive and exclusive products cases: whether a

17   price is false or misleading in light of the price(s) at which that item is generally available for

18   purchase.  *Cf. Fisher v. Eddie Bauer LLC*, No. 19cv857 JM (WVG), 2020 WL 4218228, at *4

19   (S.D. Cal. Feb. 3, 2020) ("[T]he alleged fraud, i.e. that the discounted merchandise was not truly

20   discounted, is the same regardless of whether the product is exclusive or not.").

21           Plaintiffs allege that the strikethrough prices displayed on HP's website did not reflect the

22   price at which the products were sold on HP's website in the weeks and months prior to their

23   purchases.  *See* SAC ¶¶ 4, 35, 36, 37, 70, 71, 85.  And Plaintiffs allege that, based on an

24   investigation in June 2022, very few of these products are available for purchase at third-party

25   retailers.  *Id.* ¶¶ 52-57.  Of those that are available, the prices are all somewhere between the HP

26   strikethrough price and the HP sale price.  *See Id.* Exs. A, B.  The Court further notes that "the

27   particular facts as to whether the [strikethrough] prices are fictitious are likely only known to

28   [HP]."  *See Rubenstein*, 687 F. App'x at 568.

HP makes several arguments as to why the strikethrough prices are not misleading.  They argue that Plaintiffs' investigation as to whether the products were sold at third-party retailers was not thorough, that Plaintiffs' investigation shows the strikethrough prices are not misleading, that Plaintiffs' investigation was too late in time, and that Plaintiffs' investigation did not include all the relevant products.  MTD at 7-12.  As to the first argument, whether Plaintiffs' allegations as to sale at third-party retailers is accurate, the Court notes its discussion on the request for judicial notice.  The Court accepts Plaintiffs' allegations as to the availability of the products at third-party retailers, which was based on a thorough investigation, as true.  *See* SAC Exs. A, B.  HP next argues that when Plaintiffs did find the items for sale at third-party retailers, their prices were "uniformly higher than HP's sale prices and very close to the strikethrough prices."  MTD at 9-10. The Court agrees that all the prices at third-party retailers were higher than HP's sale prices, but it notes that they were also uniformly lower than HP's strikethrough prices.  *See* SAC Exs. A, B. And while some third-party prices were quite close to the strikethrough price, others were not.  *See id.*  Further, the Court's analysis is based not only on these prices, but also the prices for which products were available at HP before and after Plaintiffs' purchase.  Third, HP argues that the investigation into sale prices at third-party retailers was insufficient because it took place about a year after the purchases at issue in this case.  MTD at 9.  The Court notes that Plaintiffs provide the date of their investigation as required by Rule 9(b).  The Court also notes that "in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant."  *Rubenstein*, 687 F. App'x at 568 (quoting *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995)).  Information as to availability and price at third-party retailers in June and September 2021 is likely better known to HP.  The Court finds the date of Plaintiffs' investigation is sufficiently close to the date of the purchases for purposes of a motion to dismiss.  And finally, HP argues that Plaintiffs did not do an investigation of third-party retailers for the non-computer products in the case.  MTD at 10-12.  But Plaintiffs did provide an allegation as to the one non-computer product that they purchased.  SAC ¶ 74.  And Plaintiffs are not required at this early stage to do an investigation of every HP product.  The investigation was sufficient as to HP products as a whole to survive a motion to dismiss.  *See id.* Exs. A, B.

1    The Court finds that the totality of Plaintiffs' allegations as to the prices for which the

2    products are sold at HP and for which they are sold (or not sold) at third-party retailers show "why

3    [the strikethrough prices] [did] not accurately reflect prevailing market prices."  *See Stein Mart*,

4    291 F. Supp. 3d at 1084 (quoting *Sperling v. DSW Inc.*, No. EDCV 15-1366-JGB (SPx), 2015 WL

5    13309476, at *9 (C.D. Cal. Nov. 19, 2015)).  The Court therefore concludes that Plaintiffs have

6    adequately alleged that the strikethrough prices are misleading.

7                            **2.  Reasonable Consumer**

8        HP also argues that Plaintiffs have not shown that the strikethrough prices are likely to

9    deceive a reasonable consumer.  MTD at 13–14.  HP points to the fact that it provides a disclaimer

10   explaining that the strikethrough prices are MSRPs, and HP argues that it does not use the

11   "descriptive terminology" that is used to indicate former price comparisons under federal

12   regulation or that courts have found to be misleading.  *Id.* at 14.  These include terms such as

13   "regularly," "usually," "formerly," and "reduced to."  *Id.*  And HP argues that consumers

14   understand that manufacturers often provide a discount from the MSRP.  *Id.*

15       But as the Court stated in its First MTD Order, "the fact that a consumer could only learn

16   that the strikethrough price is a MSRP upon reading the fine print at the bottom of the webpage

17   and then clicking on the '+' suggests that a reasonable consumer could justifiably be unaware of

18   that disclaimer."  *Carvalho*, 2022 WL 2290595, at *5; *see also Sperling v. Stein Mart, Inc.*, No.

19   CV 15-01411 BRO (KKx), 2016 WL 11265686, at *5-6 (C.D. Cal. Mar. 15, 2016) (declining to

20   resolve on motion to dismiss whether reasonable consumer would be deceived by a "compare at"

21   price where consumer must go beyond the price tag to find the pricing policy, even though the

22   "compare at" language included an asterisk).  The fact that HP uses a strikethrough instead of the

23   identified terms is not determinative as to whether it will deceive a reasonable consumer.  The

24   Court continues to find that "whether the price or the disclaimer is advertised in a way that is

25   'likely to deceive' a reasonable consumer in violation of the broad provisions of the FAL, UCL,

26   and CLRA is an issue the Court cannot resolve at this juncture."  *Carvalho*, 2022 WL 2290595, at

27   *5; *see also Nunez v. Saks Inc.*, 771 F. App'x 401, 403 (9th Cir. 2019) ("Misinformation about a

28   product's 'normal' price is . . . significant to many consumers in the same way as a false product

                                          11

label would be." (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2003), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013))).  The Court therefore concludes that Plaintiffs have adequately alleged that a reasonable consumer is likely to be deceived by the strikethrough prices.

***

HP's motion to dismiss the FAL, UCL, and CLRA claims is DENIED.

### C.    Unjust Enrichment Claim

HP argues that Plaintiffs' unjust enrichment claim should be dismissed if the underlying fraud-based claims are dismissed.  MTD at 14–15.  Because the Court does not dismiss the underlying fraud-based claims, HP's motion to dismiss the unjust enrichment claim on this basis is DENIED.

## V.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that HP's motion to dismiss is:

2.    GRANTED as to a limited quantity theory for the FAL, UCL, and CLRA claims;

3.    DENIED as to a limited time theory for the FAL, UCL, and CLRA claims for Carvalho and GRANTED as to a limited time theory for the FAL, UCL, and CLRA claims for Maher;

4.    DENIED as to the FAL, UCL, and CLRA claims; and

5.    DENIED as to the unjust enrichment claim.

Dated:  December 20, 2022

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

12