**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel.rozenblatt@edge.law
Natasha Dandavati (SBN 285276)
natasha.dandavati@edge.law
981 Mission Street 20
San Francisco, CA 94103
Telephone: (415) 515-4809

**CAPSTONE LAW APC**
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Nathan N. Kiyam (SBN 317677)
nate.kiyam@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| RODNEY CARVALHO and MARK MAHER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>HP, INC., a Delaware corporation,<br><br>        Defendant. | Case No. 5:21-cv-08015-PCP<br>*Assigned to the Hon. P. Casey Pitts*<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SETTLEMENT CLASS REPRESENTATIVES SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        August 21, 2025<br>Time:        10:00 AM<br>Crtrm:      8<br><br>Action Filed:  October 13, 2021<br>Trial Date:    None Set |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2025 at 10:00 AM, in Courtroom 8 of the above-captioned Court, located at 280 South 1st Street, San Jose, California 95113, the Honorable P. Casey Pitts presiding, Plaintiffs Rodney Carvalho and Mark Maher, individually and on behalf of all others similarly situated, will, and hereby do, move this Court, pursuant to Federal Rule of Civil Procedure 23, to award attorneys' fees in the amount of $943,589.32, counsel's out-of-pocket costs in the amount of $56,410.68, and class representative service payment in the amount of $5,000 to each Plaintiff.

This Motion should be granted because, under the California and Ninth Circuit common fund doctrines, the fee request is reasonable when measured against the benefits conferred by the Settlement. Moreover, public policy recognizes that attracting competent counsel to litigate consumer cases on behalf of clients unable to pay hourly fees requires attorney fee awards commensurate with such risks and that no action would likely have been taken by Class Members individually, and no compensation would have been recovered for them, but for counsel's services on their behalf. The Settlement Class's response to date, including a 7.22% claims rate with just eight opt-outs and no objections, confirms that the requested attorneys' fees, costs and expenses, and service awards should be approved.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Settlement Class Representatives Service Awards; (3) the Declaration of Cody R. Padgett and the exhibits attached thereto ("Padgett Decl."); (4) the Declaration of Daniel A. Rozenblatt and the exhibits attached thereto ("Rozenblatt Decl."); (5) the Declaration of Rodney Carvalho; (6) the Declaration of Mark Maher; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing on this Motion.

On these grounds, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.[1]

---

[1] Plaintiffs plan to submit an omnibus [proposed] order in concert with their forthcoming Motion for Final Approval of Class Action Settlement, which Plaintiffs intend to file on July 10, 2025.

1

2 Dated: May 5, 2025     CAPSTONE LAW APC

3

4        By: /s/ *Cody R. Padgett*

5          Cody R. Padgett
          Nathan N. Kiyam

6          EDGE, A PROFESSIONAL LAW
          CORPORATION

7          Daniel A. Rozenblatt
          Natasha Dandavati

8

9          *Attorneys for Plaintiffs*
          *Rodney Carvalho and Mark Maher*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION...........................................................................................................1

II.     ARGUMENT .................................................................................................................3

     A.      Plaintiffs' request for attorneys' fees in an amount representing less
          than 25% of the common fund is reasonable. ......................................................3

     B.      The reasonableness of the percentage-based fee award is supported by
          other factors. .......................................................................................................6

          (1)     The results of the litigation support the requested fees............................6

          (2)     The substantial contingent risk, including the risk of further
                 litigation, supports the requested award of attorneys' fees. ....................9

          (3)     The skill of counsel and work performed support the fee
                 request. ...................................................................................................12

     C.      The lodestar cross-check confirms that the requested attorneys' fees are
          fair and reasonable. ...........................................................................................13

     D.      The requested out-of-pocket costs are reasonable and should be
          reimbursed. ........................................................................................................17

     E.      The Settlement Class Representatives Service Awards to the named
          Plaintiffs are fair and reasonable. .....................................................................17

III.    CONCLUSION ...........................................................................................................20

1

## TABLE OF AUTHORITIES

2

*FEDERAL CASES*

3  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................19, 22, 23

4  *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001).....................................................................21

5  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...................................13, 24

6  *Eisen v. Porsche Cars North American, Inc.*, Case No. 11-09405, 2014 U.S. Dist. LEXIS 14301,

7     2014 WL 439006 (C.D. Cal. Jan. 30, 2014)....................................................................14, 19

8  *Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ...................................................................13

9  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................11, 20, 21, 22, 23

10  *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ......................................17

11  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .......................................................19

12  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................15

13  *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ........................................................13, 15

14  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998)..............................13, 17

15  *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ....................................21

16  *Maslici v. ISM Vuzem d.o.o.*, 2023 WL 4335290, *4 (N.D. Cal. June 26, 2023) ......................19

17  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ......................................24

18  *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .............13, 14

19  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)...........................14, 17

20  *Parra v. Bashas, Inc.*, 536 F.3d 975 (9th Cir. 2008)..................................................................20

21  *Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................................15

22  *Ruch v. AM Retail Group, Inc.*, No. 14-cv-05352-MEJ, 2016 WL 1161453, at *7 (N.D. Cal. Mar.

23     24, 2016) .............................................................................................................................14

24  *Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) .................................................12, 13

25  *Sullivan v. DB Invs. Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).....................................................22

26  *Torrisi v. Tuscson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).............................................13

27  *Tyson Foods v. Bouaphakeo*, 577 U.S. 442 (2016) ...................................................................22

28  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114

(E.D. Cal. 2009) ...................................................................................................20

*Wakefield v. Wells Fargo & Co.*, No. C 13-05053 LB, 2014 WL 7240339 (N.D. Cal. Dec. 18, 2014)

..............................................................................................................................22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .............................................20


**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a)..............................................................................................22

Fed. R. Civ. P. 23(a)(1).........................................................................................19

Fed. R. Civ. P. 23(a)(2).........................................................................................20

Fed. R. Civ. P. 23(a)(4).........................................................................................21

Fed. R. Civ. P. 23(b)(3).............................................................................19, 22, 24

Fed. R. Civ. P. 23(c)(2)(B).....................................................................................24

Fed. R. Civ. P. 23(e)..............................................................................................13

Fed. R. Civ. P. 23(e)(1)....................................................................................13, 24

Fed. R. Civ. P. 23(e)(1)(A)....................................................................................12


**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL))........................2

Cal. Bus. & Prof. Code §§ 17500 *et seq.* (False Advertising Law (FAL)) ...................2

Cal. Civ. Proc. Code §§ 1750 *et seq.* (Cons Legal Remedies Act (CLRA))................2


**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)..........................12, 13

Manual for Complex Litigation (4th ed. 2004) ..................................................12, 19

## I.    <u>INTRODUCTION</u>

Plaintiffs Rodney Carvalho and Mark Maher ("Plaintiffs") respectfully move the Court to award attorneys' fees in the amount of $943,589.32, reimbursable expenses of $56,410.68, and Settlement Class Representatives service awards[2] of $5,000 to each Plaintiff. Plaintiffs submit this motion in connection with the $4 million common fund settlement reached by Plaintiffs and Defendant HP, Inc., ("Defendant" or "HP"). The settlement resolves Plaintiffs' claims that HP displayed misleading strikethrough prices and price reductions on its website in violation of California's consumer protection laws. According to Plaintiffs, this pricing practice created an illusion of savings and artificially inflated the perceived value of and the demand for HP's products. Plaintiffs contend that they and the Settlement Class[3] were injured by, *inter alia*, being induced to make purchases they otherwise would not have made and paying more for products than they otherwise would have paid, based on HP's false and misleading strikethrough prices and price reductions. Under the Settlement, Class Members who submit valid claims will be eligible to receive a Cash Benefit ranging from $10 to $100 based on the product type and estimated per-unit damages. The Cash Benefit tranches were determined with the assistance of economic damages expert Christian Tregillis of Hemming Morse, who proposed five Cash Benefit tranches corresponding the estimated average amount Class Members overpaid as a result of the strikethrough prices. On average, these payments will compensate claimants so that each Class Member who submits a valid claim is likely to receive a cash payment that fully compensates them for the estimated per-unit damages.

Having obtained valuable relief for Class Members, Plaintiffs seek an award of attorneys' fees in the amount of $943,589.32and reimbursable expenses of $56,410.68, totaling $1,000,000, from the non-reversionary settlement fund of $4,000,000. The agreed-upon Settlement Class Counsel Attorneys' Fees and Costs Award is the product of a non-collusive adversarial negotiation

---

[2] Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), Dkt. No. 92-1.

[3] Unless otherwise specified, the terms "Class" and "Settlement Class" are used herein interchangeably.  For example, the term "Class Members" refers to the "Settlement Class Members"; the term "Class Period" refers to "Settlement Class Period"; and so forth.

1  following mediation with the Honorable Irma E. Gonzalez. In light of the favorable results, the

2  contingent risk assumed by Plaintiffs' Counsel, and Plaintiffs' efforts to deliver benefits promptly to

3  the Settlement Class, the requested award is fair, reasonable, and appropriate under the California

4  and Ninth Circuit common fund doctrine. The percentage of the fund requested is below the Ninth

5  Circuit's 25% benchmark, and it represents just 23.6% of the $4 million non-reversionary

6  Settlement Fund (943,589.32 ÷ $1,000,000).[4]

7        To date, the claims rate is approximately 7.22%. Additionally, only eight Class Members

8  have opted out, and not a single Class Member has objected. Other factors support this fee request.

9  Plaintiffs' Counsel delivered excellent results to the Settlement Class in the face of adverse

10  conditions, having invested over one thousand four hundred hours of their time toward the zealous

11  prosecution of Plaintiffs' claims, with no guarantee of compensation. Plaintiffs' Counsel devoted

12  significant hours to: (1) engaging in an extensive pre-suit investigation, developing a proprietary

13  evidence preservation software application, (2) conducting extensive post-filing investigation,

14  including further inquiry into the "exclusivity" of products sold on HP's website—an issue that

15  gained significance following HP's first motion to dismiss; (3) opposing two motions to dismiss; (3)

16  engaging in meaningful discovery, both formal and informal, regarding the prices and discounts at

17  issue (4) preparing for mediation and working with a forensic accountant and damages expert to

18  develop a realistic model of HP's exposure and the Class Members' damages; (5) analyzing

19  extensive substantive case law that could affect the outcome of the case;  (6) negotiating a settlement

20  that provides meaningful, non-reversionary cash payments to Class Members from a common fund;

21  and (7) preparing the motions for preliminary approval, supplemental briefing, and final approval of

22  the class action settlement,[5] along with the instant Motion.

23        Plaintiffs also request a service award payment for their work on behalf of the Settlement

24  Class and reimbursement of Plaintiffs' Counsel's out-of-pocket litigation expenses.

25

26

---

27  [4]  When calculating lodestar as a percentage-of-the-fund, courts generally exclude reimbursable litigation expenses from the calculation.

28  [5] To be filed on July 10, 2025.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SETTLEMENT CLASS REPRESENTATIVES SERVICE AWARDS

For the reasons set forth in greater detail below, Plaintiffs respectfully submit that the requested attorneys' fees, costs and expenses, and service awards are fair and reasonable and should be approved.

## II.    <u>ARGUMENT</u>[6]

### A.    Plaintiffs' request for attorneys' fees in an amount representing less than 25% of the common fund is reasonable.

Plaintiffs, zealously advocating on behalf of the Class, have negotiated relief that will compensate Class Members for their average "damages," i.e., the amount they overpaid per Class Product due to the inflated reference pricing they allege violated California consumer protection statutes. Under the Settlement, Class Members can submit claims for a Cash Benefit ranging from $10 to $100, depending on the product type purchased (accessory or computer), the advertised reference price, the advertised sale price, and the advertised price reduction. Following the simple claims procedure approved by the Court, after notice and administration costs and service and fee awards are deducted (subject to the Court's approval), if the total Cash Benefits claimed by Class Members either exceed or fall below the monies available in the Settlement Fund the Cash Benefit amounts will be adjusted pro rata. (Settlement Agreement, Dkt. No. 92-1, §§ 1.32, 3.2-3.3.) All residual funds remaining will be distributed pro rata to Settlement Class members who submitted valid claims and cashed checks without reversion to HP, and no residual amount will be paid to a *cy pres* recipient. (*Id.*)

Plaintiffs now seek the negotiated fees representing 23.6% of the $4 million Settlement Fund. The fee request is reasonable under both federal and California law. Under California law,[7] the common fund method for awarding attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members. *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when

---

[6] Per the Northern District's Procedural Guidance for Class Action Settlements, please refer to the Motion for Preliminary Approval for the case history and background facts.

[7] For cases where state law applies, the state law governs "not only the right to fees, but also in the method of calculating the fees." *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach." [citation omitted]). Courts applying California law routinely award attorneys' fees equaling or exceeding 25% of the common fund's total potential value. *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. OF EMPIRICAL LEGAL STUDIES, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

Plaintiffs' fee request is also reasonable under federal law. While district courts have the discretion to award attorneys' fees based on either the lodestar method (essentially a modification of hourly billing) or the percentage method, where, as here, fees are requested from a certain and calculable common fund, the percentage-of-the-fund method is appropriate. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970). The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

Courts recognize that the percentage method offers important advantages over the lodestar method, particularly when an ascertainable fund exists:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage Plaintiff's attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Indeed, in *Bluetooth*, the court recognized that one important advantage of the common fund method is that fees are "easily quantified," making a fee determination simpler than the "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach is less demanding of judicial resources than the lodestar method."). Moreover, the common fund method better "approximates the workings of the marketplace than the lodestar approach" in setting the price of contingent fees. *Lealao*, 82 Cal. App. 4th at 48 (quotation omitted). This is because the percentage method "provide[s] incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace." *Id.* In this way, applying the percentage method advances the judicial policy of "award[ing] counsel the market price for legal services." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007).

The Ninth Circuit has generally established 25% of a common fund as a "benchmark" award for attorney fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This Circuit has established 25% of the common fund as a benchmark award for attorney fees."). As the Ninth Circuit has explained, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure." *In re Bluetooth*, 654 F.3d at 942. However, "the exact percentage [awarded] varies depending on the facts of the case, and in *'most common fund cases, the award exceeds that benchmark.'*" *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added). Courts in this District concur. *See, e.g.*, *de Mira v. Heartland Emp't Serv., LLC*, No 12-CV-04092 LHK, 2014 WL 1026282, *1 (N.D. Cal. Mar. 13, 2014) ("Indeed, 'in most common fund cases, the award exceeds the benchmark.'") (quoting *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

The calculation of attorneys' fees is based on a percentage of the entire potential benefit created by class counsel, including litigation expenses, claims administration, and other cost items that benefit the Class. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir.

2014) ("[D]istrict court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses"). Plaintiffs seek $1 million in attorneys' fees and reimbursable litigation costs. Of that, they are requesting a fee award of approximately $943,589.32 (calculated as $1 million minus $56,410.68 in costs). Under the percentage-of-recovery method, this fee amount represents approximately 23.6% of the $4 million non-reversionary Settlement Fund and is below the "25 percent of the fund 'benchmark' for awarding fees" used by the Ninth Circuit. *DiMercurio v. Equilon Enterprises LLC*, No. 3:19-cv-04029-JSC, 2024 WL 2113857, *9 (N.D. Cal. May 9, 2024) (quoting *In re Bluetooth*, 654 F.3d at 942); *see also id.* at *9 (quoting *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008)) ("[C]ases with a relatively small fund of under $10 million will 'often result in fees above 25%.'"). Here, Plaintiffs are seeking fees just below the benchmark figure, which is presumptively reasonable. Thus, Plaintiffs' requested attorneys' fees, representing 23.6% of the entire Settlement Fund, is consistent with established Ninth Circuit precedent and should be awarded.

### B.    The reasonableness of the percentage-based fee award is supported by other factors.

In addition to the results achieved and awards in comparable cases, courts in this Circuit have also considered additional factors when evaluating the fairness of the award. These factors include: (1) the risks of further litigation; (2) the contingent nature of the fee; (3) the skill of the attorneys; and (4) a lodestar cross-check. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). While no single factor is determinative of reasonableness, each factor supports Plaintiffs' request for attorneys' fees in the amount of 23.6% of the common fund.

#### (1)    *The results of the litigation support the requested fees.*

Through the Settlement, Plaintiffs and Plaintiffs' Counsel have vindicated the rights of HP customers, securing $4,000,000 in relief for their claims. As discussed *supra,* the Settlement allows Class Members to submit claims for a Cash Benefit ranging from $10 to $100, depending on the product type purchased (accessory or computer), the reference price, and the price reduction.

1   Following the simple claims procedure approved by the Court, following deduction of the Court-

2   approved notice and administration costs and any Court-approved service awards and attorneys' fees

3   and costs awards, if the total Cash Benefits claimed by Class Members either exceed or fall below

4   the monies available in the Settlement Fund, the Cash Benefit amounts will be adjusted pro rata.

5   (Settlement Agreement, Dkt. No. 92-1, §§ 1.32, 3.2-3.3.). All residual funds remaining will be

6   distributed pro rata to Settlement Class members who submitted valid claims and cashed checks.

7            Plaintiffs have achieved their litigation objectives, as Class Members will be compensated

8   for their calculated damages. This is because the Cash Benefits are based on the estimated per-unit

9   damages, which is derived from the estimated portion of the average sale price that exceeded the

10  amount the average Class Member would have otherwise been willing to pay for each Class Product,

11  but for the inflated reference price. Plaintiffs retained Christian Tregillis, CPA, ABV, CFF, CLP, an

12  expert in the valuation of economic damages with over thirty years of experience. Mr. Tregillis

13  analyzed the Class Members' damages and the sufficiency of the Settlement Fund to adequately

14  compensate the Class. (*See generally* Declaration of Christian Tregillis ["Tregillis Decl."], Dkt. No.

15  85-3.) Based on this damages analysis, Tregillis estimates (for the purposes of settlement only) that

16  the average per-unit damages for the Class Products ranges between $0 and $91. Further, Tregillis

17  estimates (for the purposes of settlement only) that the total overpayment across all Class Products

18  across all  Class Members is approximately $10.4 million. (*Id.* at ¶ 31.) Thus, the $4 million non-

19  reversionary common fund represents significant monetary relief relative to the potential recovery.

20  *See, e.g.*, *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a

21  settlement that paid plaintiffs one-sixth of the potential recovery to be fair and adequate).

22           The Cash Benefit amounts are in line with awards paid in other consumer cases involving

23  false price referencing. *See also Brazil v. Dell Inc.*, Case No. 5:07-cv-01700, 2021 WL 1144303

24  (N.D. Cal. Apr. 4, 2012), ($50 per claimant monetary award); *Ponce v. Lenovo (United States) Inc.*

25  *("Lenovo")*, No. 16-cv-01000-JNE-JSM ($50 per claimant monetary award); *Chester v. TJX*

26  *Companies, Inc.*, Case No. 5:15-cv-01437-ODW-DTB, Dkt. No. 123-1 at 3:17 (C.D. Cal. Apr. 16,

27  2018) (claimants to receive merchandise credit redeemable for $25 merchandise credit or $19 in

28  cash). The class action settlements in *Brazil v. Dell* and *Ponce v. Lenovo* similarly involved

allegations of deceptive pricing advertised on the websites of computer manufacturers Dell and Lenovo. (Rozenblatt Decl. dkt. 85-2, ¶¶ 17-18.) Each of these cases culminated in claims-made settlements, with each class member who submitted a valid claim receiving a $50 monetary award. At the time of this briefing, the claims process is ongoing, with a claims submission deadline of June 9, 2025. (Padgett Decl. ¶ 4.) Here, based on a conservative estimate of a 15% claims rate (*see* Declaration of Patrick M. Passarella, Dkt. No. 85-4, ¶ 5; Tregillis Decl., Dkt. No. 85-3, ¶¶ 34-36), on average, Class Member will receive $63.70. (Padgett Decl. ¶ 4.)  These payments will compensate claimants so that each Class Member who submits a valid claim is likely to receive a cash payment that fully compensates them for the estimated per-unit damages.[8] That is because Settlement Class Members who submit a claim will in all likelihood receive cash payments greater than their estimated per-unit damages (assuming the claims rate does not exceed 15%). This reflects substantial monetary relief given that in *Brazil v. Dell* and in *Ponce v. Lenovo*, the settlement class products consisted only of computers, whereas this Settlement includes both computer products and accessories such as mice and keyboards. Plaintiffs' Counsel's skill in achieving this positive result for the Class supports the requested attorneys' fees.

The requested fees of less than 25% of the settlement are also consistent with other consumer class action settlements in which the courts awarded the full 25% benchmark. *See Noll v. eBay, Inc.*, 309 F.R.D. 593, 609 (N.D. Cal. 2015) (awarding 25% of the common fund, including applying a 1.7 multiplier on a cross-check, in a consumer class action); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 590-91 (N.D. Cal. 2015) (awarding the 25% of the common fund in a consumer class action); *Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2014 WL 2916871, at *9 (N.D. Cal. June 24, 2014) (awarding 25% of the common fund, including applying a 1.94 multiplier on the lodestar cross-check, in a consumer class action).

Moreover, courts credit parties for successfully striking a deal at an early stage in litigation. *See Chavez*, 162 Cal. App. 4th at 61 (noting "other measures of the litigation's success including the

---

[8] This expectation is based on the assumption that $2,750,000 will be available to pay Cash Benefits after payment of settlement administration costs, and any court-approved class representative service awards or class counsel fee and costs awards.

1   early stage at which it produced benefits"). Here, Plaintiffs resolved the matter prior to a full-blown

2   certification motion, and Plaintiffs' Counsel was able to avoid the resource drain (including

3   extensive motion practice, discovery, and taking and defending depositions) while obtaining

4   substantial monetary relief for Class Members and mitigating any risk of an adverse result.

5       In addition to the valuable monetary relief provided by the Settlement, the public interest

6   served by Plaintiffs' lawsuit likewise supports the requested award of attorneys' fees. In *Lealao*, the

7   court held that when determining the appropriate award of attorneys' fees, the trial court should

8   consider the need to encourage the private enforcement necessary to vindicate many legal rights, as

9   well as the role that representative actions play in relieving the courts of the need to separately

10  adjudicate numerous claims. *See Lealao*, 82 Cal. App. 4th at 53. Here, by obtaining a significant

11  recovery for the class, Plaintiffs' Counsel has vindicated the rights of HP consumers while enforcing

12  compliance with important consumer protection laws.

13          (2)     *The substantial contingent risk, including the risk of further litigation,*
14                  *supports the requested award of attorneys' fees.*

15      The contingent risk that Plaintiffs' Counsel assumed in prosecuting the action supports the

16  requested attorneys' fees and costs.  Plaintiffs' Counsel took this case on a pure contingency basis,

17  and they had no guarantee that they would receive any remuneration for the 1,500+ hours they spent

18  litigating the Class's claims or for the $56,410.68 in out-of-pocket costs they reasonably incurred

19  during the matter's pendency. (*See* Rozenblatt Decl. ¶¶ 17, 22; Padgett Decl. ¶¶ 6, 13.)

20      The large-scale litigation required by this case is, by its very nature, complicated and time-

21  consuming. Due also to the contingent character of the customary fee arrangement, lawyers must be

22  prepared to make this investment with the very real possibility of an unsuccessful outcome and no

23  fee or cost recovery of any kind. As the Ninth Circuit has recognized, "attorneys whose

24  compensation depends on their winning the case must make up in compensation in the cases they

25  win for the lack of compensation in the cases they lose." *Vizcaino*, 290 F.3d at 1051. The demands

26  and risks of this type of litigation overwhelm the resources—and deter participation—of many

27  traditional claimants' firms. For these reasons, California courts and the Ninth Circuit recognize a

28  need to reward Plaintiffs' Counsel who accept a case on a contingency basis. In *Ketchum v. Moses*,

24 Cal. 4th 1122 (2001), the California Supreme Court instructed courts to upwardly adjust fee

compensation to ensure that the fees account for contingency risk:

> A lawyer who both bears the risk of not being paid and provides legal services is not
> receiving the fair market value of his work if he is paid only for the second of these
> functions. If he is paid no more, competent counsel will be reluctant to accept fee award
> cases.

*Ketchum*, 24 Cal. 4th at 1133. Similarly in *In re Washington Pub. Power Supply*, the Ninth Circuit

underscored the importance of rewarding attorneys who take cases on a contingency basis:

> It is an established practice in the private legal market to reward attorneys for taking
> the risk of non-payment by paying them a premium over their normal hourly rates for
> winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at
> 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the
> services if rendered on a non-contingent basis are accepted in the legal profession as a
> legitimate way of assuring competent representation for Plaintiff who could not afford
> to pay on an hourly basis regardless whether they win or lose.

*In re Washington Pub. Power Supply.*, 19 F.3d at 1299, 1300-01 ("[I]n the common fund context,

attorneys whose compensation depends on their winning the case, must make up in compensation in

the cases they win for the lack of compensation in the cases they lose.") (some quotation marks

omitted).

    As reflected in *Ketchum* and *In re Washington Pub. Power Supply*, attorneys accepting

contingent fee cases should be compensated in amounts greater than those earned by attorneys who

bill and receive payment by the hour, as this fact reflects the risks undertaken in a contingent

practice. If a contingent-fee attorney were awarded fees at the same level as an hourly-fee attorney,

it would be economically irrational for any attorney to accept a contingent-fee case because there

would be absolutely no incentive to accept the risks inherent in such representation. *See* Posner,

*Economic Analysis of Law* (4th ed. 1992), at 534, 567 ("A contingent fee must be higher than a fee

for the same legal services paid as they are performed. The contingent fee compensates the lawyer

not only for the legal services he renders but for the loan of those services. The implicit interest rate

on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of

the client to the lawyer) is much higher than that of conventional loans."); Leubsdorf, *The*

*Contingency Factor in Attorney Fee Awards* (1981) 90 Yale L.J. 473, 480 ("A lawyer who both

bears the risk of not being paid and provides legal services is not receiving the fair market value of

1   his work if he is paid only for the second of these functions. If he is paid no more, competent

2   counsel will be reluctant to accept fee award cases.").

3          Here, the contingent risk is particularly high, partly because the scope of this action is very

4   broad, encompassing over a thousand HP products offered for sale at a discount on the HP website

5   over several years. Plaintiffs would likely face significant challenges to class certification. Those

6   challenges include both the typical challenges associated with class certification (e.g., the attendant

7   difficulties of proving ascertainability, commonality and materiality) and also less typical challenges

8   (e.g., Plaintiffs lacked standing to assert claims on behalf of HP customers, or damages cannot be

9   calculated on a classwide basis). Plaintiffs would have to confront HP's likely argument that

10  typicality and commonality cannot be satisfied due to the broad diversity among the products

11  purchased by the  class.

12         Plaintiffs would likely have to also rebut HP's argument that their theory of class-wide relief,

13  which is based on strikethrough prices consumer interpret as regular prices, is undermined because

14  (according to HP), the strikethrough prices reflect Manufacturer's Suggested Retail Prices

15  ("MSRPs") and are not intended to, nor understood to be the regular prices at which it typically sells

16  its products. Based on this, HP could contend that the laws governing "former" prices in the SAC

17  are not applicable, and instead federal law applies to determine whether MSRPs are misleading. This

18  federal law, according to HP, applies only to consumers and not purchases for commercial use, and

19  based on this HP would likely argue that Plaintiffs' list of identified products include commercial

20  products. Plaintiffs would also have to overcome HP contentions that the MSRPs advertised are

21  truthful and accurate. HP would likely further attack certification on the ground that individual

22  inquiries predominate because class members read and relied upon different strikethrough prices

23  advertised for different products.

24         While Plaintiffs vigorously dispute HP's contentions, even if Plaintiffs had succeeded in

25  certifying the class, the risk of continued litigation would have remained high as Plaintiffs would

26  have had to grapple with HP's many defenses to liability—such as the argument that the MSRPs are

27  not false or misleading as they do not significantly exceed the highest price at which substantial

28  sales in the trade area are made. Further, HP would likely continue to challenge the claim for unjust

1   enrichment as not being recognized as an independent cause of action.

2       While Plaintiffs strongly disagree that HP would succeed on any of these defenses, they

3   nevertheless demonstrate the hurdles and risks Plaintiffs and the Settlement Class would have faced

4   were this case to proceed to trial. These substantial hurdles and risks reflect the substantial

5   contingent risk involved and support Plaintiffs' requested attorneys' fees. *See Noll v. eBay*, 309

6   F.R.D. at 609 (awarding 25% of the common fund based, in part, on counsel's taking on "substantial

7   risk" of non-payment).

8           (3)     *The skill of counsel and work performed support the fee request.*

9       The skill and experience of counsel and nature of work performed, also weigh in favor of

10  Plaintiffs' fee request. *See City of Burlington v. Dague*, 505 U.S. 557, 562-563 (1992). Plaintiffs'

11  Counsel are seasoned attorneys with considerable experience in consumer class actions. (*See* Padgett

12  Decl. ¶¶ 14-18, Ex. 2; Rozenblatt Decl. ¶¶ 3.)

13       Here, Plaintiffs' Counsel skillfully adapted their litigation strategies to address the

14  challenges posed by the complex factual issues in this case. They also thoroughly investigated

15  Plaintiffs' claims and carefully analyzed documents and data provided by Defendant, as well as all

16  advertised pricing and extensive data collected by Plaintiffs' counsel's investigation to assess the

17  potential value of the claims at issue. Plaintiffs' Counsel devoted hours to: (1) engaging in an

18  extensive pre-suit investigation, developing a proprietary evidence preservation software

19  application, (2) conducting extensive post-filing investigation, including further inquiry into the

20  "exclusivity" of products sold on HP's website—an issue that gained significance following HP's

21  first motion to dismiss; (3) engaging in meaningful discovery, both formal and informal, regarding

22  the prices and discounts at issue (4) preparing for mediation and developing a realistic model of

23  HP's exposure and the Class Members' damages; (5) analyzing substantive case law that may affect

24  the outcome of this case;  (6) negotiating a settlement that provides meaningful, non-reversionary

25  cash payments to Class Members from a common fund; and (7) preparing the motions for

26  preliminary approval, supplemental briefing, and final approval of the class action settlement,[9] along

27

28
    _____
    [9] To be filed on July 10, 2025.

1   with the instant Motion. (Rozenblatt Decl. ¶ 6-13.)

2       With this information, Plaintiffs' Counsel developed theories of certification and liability

3   supported by a strong factual record that were persuasively presented at the mediation and paved the

4   way to the settlement.

5   **C.   The lodestar cross-check confirms that the requested attorneys' fees are fair and**
       **reasonable.**

6

7       Plaintiffs' fee request is premised primarily on a percentage of the settlement value—the

8   prevailing method in cases of this kind. After making that determination, this Court may also use a

9   lodestar analysis as a final "cross-check" on the percentage method. *In re Washington Pub. Power*

10  *Supply Sys. Sec. Litig.*, 19 F.3d at 1296-98. Where the use of the lodestar method is used as a cross-

11  check, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In*

12  *re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check

13  calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response*

14  *Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Although counsel have not provided a

15  detailed cataloging of hours spent, the Court finds the information provided to be sufficient for

16  purposes of lodestar cross-check.").

17      The lodestar method is calculated by multiplying "the number of hours reasonably expended

18  on the litigation . . . by a reasonable hourly rate." *In re Bluetooth*, 654 F.3d at 941. Class Counsel's

19  lodestar is $899,195, based on 1,553.8 hours billed by attorneys, representing an average hourly rate

20  of $578.71, and does not include the anticipated time spent preparing the final approval motion,

21  further assisting Class Members with their claims, and tending to the administration of the

22  Settlement. (*See* Padgett Decl. ¶ 6 ; Rozenblatt Decl. ¶ 17.)

23      Class Counsel's hourly rates, which range from $475 to $900 for associates, senior attorneys,

24  and partners, are reasonable. (*See* Padgett Decl. ¶¶ 6-10; Rozenblatt Decl. ¶¶ 17-20.) Counsel is

25  entitled to their requested hourly rates if those rates are within the range of rates charged by and

26  awarded to attorneys of comparable experience, reputation, and ability for similar work, *i.e.*,

27  complex class action litigation. *Children's Hospital and Med. Center v. Bonta*, 97 Cal. 4th 740, 783

28  (2002) (affirming rates that were "within the range of reasonable rates charged by, judicially

awarded to, comparable attorneys for comparable work"); *accord Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (determining reasonable rate by examining the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Here, the hourly rates for Plaintiffs' Counsel are comparable to those approved in the Northern District and other cases in California. *See Samora v. Chase Dennis Emergency Medical Group, Inc.*, No. 20-cv-02027-BLF, 2023 WL 5000567, at *2 (N.D. Cal. Aug. 4, 2023) (finding 900.4 hours of attorney and paralegal time and $614,761 in fees, amounting to a blended rate of $683/hour, reasonable); *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving rates in a consumer class action of $875–$1,195 per hour for partners; $385–$850 per hour for associates); *Smith v. Keurig Green Mountain, Inc.*, No. 18-CV-06690-HSG, 2023 WL 2250264, at *10 (N.D. Cal. Feb. 27, 2023) (finding rates requested between $300 to $575 for associates and $720 to $925 for partners "are in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-05923, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (rates ranging from $475 to $975 for partners and $300 to $490 for associates); *see also Koeppen v. Carvana, LLC*, No. 21-cv-01951-TSH, 2024 WL 3925603, at *12-13 (N.D. Cal. Aug. 22, 2024) (finding rates ranging from $575 to $1,495 per hour within the range of rates approved in wage and hour litigation and reasonable for use as a lodestar cross-check).

Moreover, prior judicial orders are probative evidence of market rates. *See Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1005 (1982) (rejecting the defendant's attacks on prior court orders and deeming such orders to be highly probative of rates). Here, Capstone's rates have steadily remained reasonable and competitive, and have been consistently approved by many California district courts. *See, e.g., Salas v. Toyota Motor Sales, U.S.A., Inc.*, No.15-cv-08629-HDV-E (C.D. Cal. Jan. 7, 2025) (finding that "Class Counsel's time was reasonably spent and that their hourly rates are commensurate with the hourly prevailing rates for private attorneys in the community conducting class action litigation" and approving Capstone's rates for Associates ($475 to $600) and Senior Counsel/Partners ($600 to $950); *Victorino v. FCA US LLC*, No. 3:16-CV-01617-GPC-JLB (S.D. Cal. Sept. 29, 2023) (approving Capstone's rates for Associates ($475) and

Senior Counsel/Partners ($600 to $950)); *Parrish v. Volkswagen Group of America, Inc.*, No. 8:19-cv-01148-DSF-KESx (C.D. Cal. March 2, 2023) (approving Capstone's rates for Associates ($475 to $575) and Senior Counsel/Partners ($600 to $950); *Moran v. FCA US LLC*, No. 3:17-CV-02594-JO-AHG, (S.D. Cal. Feb. 21, 2023) (approving Capstone's rates for Associates ($295 to $525) and Senior Counsel/Partners ($545 to $950 ).

The hours billed to the litigation by Plaintiffs' Counsel are also reasonable. In considering reasonable hours, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). As the summary of hours attests,[10] Plaintiffs' Counsel expended 1,553.8 hours as of the date of this Motion. (*See* Padgett Decl. ¶ 7; Rozenblatt Decl. ¶ 17.) Plaintiffs' tasks included an extensive investigation of the claims, drafting two complaints, opposing two motions to dismiss, conducting informal and formal discovery, retaining and working with a damages expert, preparing for and attending mediation, obtaining post mediation information, negotiating a complex Settlement Agreement, obtaining preliminary approval of the settlement, and working in concert with the Settlement Administrator. (Padgett Decl. ¶¶ 2-6.)[11] All together, the total number of 1,553.8 hours is reasonable for a case that spanned over three years. *See Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO AGRX, 2013 WL 9600948, at *9 and n.10 (C.D. Cal. Sept. 25, 2013) (crediting Professor Eisenberg's report that the 3,115 hours expended by plaintiffs' counsel in that case are "comparable to other class action cases taking between two to three years to resolve").

Here, Plaintiffs' Counsel's requested fees of $943,589.32 would require the Court to apply a 1.05 multiplier to their base lodestar of $899,195. This multiplier is an exceedingly modest multiplier, is reasonable, and should be approved. Plaintiffs are entitled to the application of a modest positive multiplier on a lodestar cross-check. Courts "routinely enhance[] the lodestar to

---

[10] It is well established that "[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) (quoting *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d at 306).

[11] Plaintiffs' Counsel also wrote off all staff time in an exercise of billing discretion. (*Id.*)

1  reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051. Such an

2  enhancement "mirrors the established practice in the private legal market of rewarding attorneys for

3  taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning

4  contingency cases." *Id*. A lodestar adjustment would also be justified in light of Plaintiffs' Counsel's

5  delayed payment. *Missouri v Jenkins*, 491 U.S. 274, 284 (1989) ("an appropriate adjustment for

6  delay in payment" should be factored into the calculation of a fee award); *see also Fischel v.*

7  *Equitable Life Assur. Soc.*, 307 F.3d 997 (9th Cir. 2002) (in common fund cases, delay in obtaining

8  payment must be compensated). Indeed, under federal case law, delay must be considered separately

9  from any enhancement for contingency. Here, Plaintiffs' Counsel has been paid nothing thus far for

10 their work, advancing attorney and staff salaries and litigation expenses for the past several years as

11 this action was being litigated on behalf of the Class.

12       Courts routinely accept multipliers ranging from 2 to 4 on a lodestar cross-check. *See*

13 *Vizcaino*, 290 F.3d at 1047 (multipliers "ranging from one to four are frequently awarded ... when

14 the lodestar method is applied"; affirming fees where the cross-check multiplier is 3.65); *Samora*,

15 2023 WL 5000567, at *2 (finding a multiplier of 3.55 appropriate in a lodestar cross-check); *Willner*

16 *v. Manpower Inc*., No. 11-CV-02846-JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015)

17 (approving a 2.10 multiplier on settlement of California Labor Code violations); *Dyer v. Wells*

18 *Fargo Bank, N.A*., 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in

19 lodestar multiplier of 2.83); *Hopkins v. Stryker Sales Corp*., No. 11-CV-02786-LHK, 2013 WL

20 496358, at *5 (N.D. Cal. Feb. 6, 2013) (approving a multiplier of 2.76 in settlement of Labor Code

21 violations); *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 298 (N.D. Cal. 1995) (stating

22 the existence of a "3-4 range [of] common" multipliers for sophisticated class actions); *Steiner v.*

23 *American Broad. Co*., 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the

24 lodestar multiplier was 3.65); *see also Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 581

25 (2014)  (affirming a 2.25 multiplier for work on the merits); *Sutter Health Uninsured Pricing Cases*,

26 171 Cal. App. 4th 495, 512 (2009) (applying a 2.52 multiplier in an antitrust class action); *Chavez,*

27 162 Cal. App. 4th at 60 (applying a 2.5 multiplier in a consumer class action).

28       Given that the Plaintiffs' Counsel seeks only $943,589.32, representing a modest multiplier

1   of 1.05 to Plaintiffs' Counsel's base lodestar of $899,195, the requested award is clearly reasonable

2   and should be approved.

### D.      The requested out-of-pocket costs are reasonable and should be reimbursed.

4        HP has agreed to pay Plaintiffs' Counsel's litigation expenses as part of the negotiated fees.

5   For these expenses, the rule is that prevailing parties may recover, as part of statutory attorneys'

6   fees, "litigation expenses…when it is 'the prevailing practice in the given community' for lawyers to

7   bill those costs separately from their hourly rates." *Trs. of the Constr. Indus. and Laborers Health*

8   *and Welfare Trust v. Redland Ins.* Co., 460 F.3d 1253, 1258 (9th Cir. 2006) (citation omitted). In

9   California, attorneys are reimbursed for out-of-pocket expenses "such as '1) meals, hotels, and

10  transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and

11  overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and

12  investigators; and 9) mediation fees.'" *Johnson v. General Mills, Inc.*, No. SACV 10-00061-CJC,

13  2013 WL 3213832, *6 (C.D. Cal. June 17, 2013) (quoting *In re Immune Response Sec. Litig.*, 497 F.

14  Supp. 2d 1166, 1177 (S.D. Cal. 2007) (both courts awarding the requested expenses, including for

15  expert witnesses, mediation, photocopying and computerized research).

16       Here, Plaintiffs' Counsel has expended $56,410.68, which includes court fees, delivery and

17  postage, copies, PACER charges, travel expenses, and mediation fees that would normally be billed

18  to a paying client. (*See* Padgett Decl. ¶ 13; Rozenblatt Decl. ¶ 22.)  This amount also includes expert

19  fees of $16,731.50, and the significant costs incurred directly from counsel's pre-suit and post-suit

20  fact investigation, including the development of proprietary evidence preservation software, ongoing

21  maintenance of that software, and requisite cloud computing services. (*See* Rozenblatt Decl. ¶¶ 6–

22  10.) The software was custom developed specifically to track HP's website and played a significant

23  role in Plaintiffs' success. (*Id.*)

### E.      The Settlement Class Representatives Service Awards to the named Plaintiffs are fair and reasonable.

26       "Incentive awards are fairly typical in class action cases . . . Such awards are discretionary

27  . . . and are intended to compensate class representatives for work done on behalf of the class . . . ."

28  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein*

*et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce [the class representative] to participate in the suit"). They are thus routinely awarded as compensation for named plaintiffs undertaking the risk and expense of litigation to advance the class's interests. *See Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

So long as the service award does not create a conflict of interest between the named Plaintiff and class members,[12] modest payments to the named plaintiff for services are customary and generally approved. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995). To determine whether the proposed service award is fair and reasonable, many courts in the Ninth Circuit apply "the five-factor test set forth in *Van Vranken*." *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-cv-2471-WQH (BGS), 2014 WL 888665, *7 (S.D. Cal. Mar. 5, 2014). Under the *Van Vranken* test, courts consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken*, 901 F. Supp. at 299. However, not all factors need to be present. Rather, the Court may weigh the factors and award fees that are "just and reasonable under the circumstances." *See, e.g., In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (citing *Van Vranken*, 901 F. Supp. at 299).

Here, the proposed service awards of $5,000 to Mr. Carvalho and $5,000 to Mr. Maher are fair, reasonable, and consistent with the amount typically awarded in class actions. Indeed, "[i]n the Ninth Circuit, $5,000 is a presumptively reasonable Service Award." *Mobile Emergency Housing*

---

[12] The facts here do not create or exacerbate actual or potential conflicts between the named plaintiff and the class—the primary ground for denying enhancement awards. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013) (finding that an agreement conditioning incentive payment on approving the class action settlement created a conflict between the class and the Plaintiff in denying the incentive award and settlement).

1    *Corp. v. HP Inc.*, No. 5:20-cv-09157-SVK, 2025 WL 844412, *2 (N.D. Cal. March 18, 2025)

2    (citing *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). More specifically,

3    "[s]ervice awards in the Northern District of California commonly range from $2,000 to $10,000"

4    and "$5,000 is presumptively reasonable." *Oliveira v. Language Line Servs.*, No. 5:22-cv-02410-

5    PCP, 2025 U.S. Dist. LEXIS 32963, at *29 (N.D. Cal. Feb. 24, 2025) (Pitts, J.).[13]

6          First, even though this is not an employment suit, the fact that Plaintiffs served as class

7    representatives in a class action exposes them to the risk of being branded "litigious" by prospective

8    employers, and it could potentially result in their being denied future employment on that basis.

9    Second, the service award is reasonable because Plaintiffs "remained fully involved and expended

10   considerable time and energy during the course of the litigation." *In re Toys "R" Us-Del., Inc. Fair*

11   *& Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D at 471 (citation omitted). As

12   detailed in their declarations, Plaintiffs expended considerable time and effort assisting their

13   attorneys with the prosecution of the class's claims, and their unique contributions to the litigation

14   should be rewarded. (*See* Carvalho Decl. ¶¶ 3-14; Maher Decl. ¶¶ 3-14.)

15         Third, the service award is appropriate because Plaintiffs otherwise "will not gain any benefit

16   beyond that [they] would receive as an ordinary class member." *In re Toys "R" Us FACTA Litig.*,

17   295 F.R.D. at 472; *Van Vranken*, 901 F. Supp. at 299 (holding that a substantial award is appropriate

18   where a class representative's claim made up "only a fraction of the common fund."). Here, absent

19   the service award, Plaintiffs will recover no more than other Class Members, despite their personal

20   sacrifices in bringing this suit on behalf of the Class.

21         Plaintiffs have diligently prosecuted this action, a case in which they had a limited personal

22   interest in a case that delivered substantial benefits to the Class. Plaintiffs undertook this

23   commitment without any guarantee of recompense. (*See* Carvalho Decl. ¶¶ 2-3, 12-13; Maher Decl.

24

25   ---

   [13] *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101, at *14 (N.D.
26   Cal. Mar. 29, 2019) ("An incentive award of $ 5,000 is considered 'presumptively reasonable' in this
     District."); *Camberis v. Ocwen Loan Serv. LLC*, No. 14-cv-02970-EMC, 2015 WL 7995534, at *3
27   (N.D. Cal. Dec. 7, 2015) (noting that courts in this District, "as a general matter," find "$5,000 is a
     reasonable amount" for an incentive award); *Wren v. RGIS Inventory Specialists*, No. C-06-05778
28   JCS, 2011 WL 1230826, at *36 (N.D. Cal. Apr. 1, 2011) ("[T]here is ample case law finding $5,000
     to be a reasonable amount for an incentive payment.").

¶¶ 2-3, 12-13.) Plaintiffs consulted with Class Counsel about the claims in this case, reviewed important filings throughout the course of the litigation, searched for, reviewed, and provided documents to Counsel, reviewed and verified written responses to discovery, stayed generally aware of the status and progress of the litigation and Settlement discussions, and reviewed and approved of the Settlement Agreement on behalf of the preliminarily approved Settlement Class. (Carvalho Decl. ¶¶ 3-14; Maher Decl. ¶¶ 3-14.)

In sum, in light of Plaintiffs' substantial assistance in prosecuting the claims of this case and obtaining significant relief for the benefit of the class, the proposed Settlement Class Representatives Service Awards are reasonable and deserved.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Attorneys' Fees, Costs, and Settlement Class Representatives Service Awards.


Dated:  May 5, 2025                            CAPSTONE LAW APC


By:    /s/ *Cody R. Padgett*
_____
Cody R. Padgett
Nathan N. Kiyam

EDGE, A PROFESSIONAL LAW
CORPORATION
Daniel A. Rozenblatt
Natasha Dandavati

*Attorneys for Plaintiffs*
*Rodney Carvalho and Mark Maher*