**EDGE, A PROFESSIONAL LAW CORPORATION**
Daniel A. Rozenblatt (SBN 336058)
daniel.rozenblatt@edge.law
Natasha Dandavati (SBN 285276)
natasha.dandavati@edge.law
981 Mission Street 20
San Francisco, CA 94103
Telephone: (415) 515-4809

**CAPSTONE LAW APC**
Cody R. Padgett (SBN 275553)
cody.padgett@capstonelawyers.com
Nathan N. Kiyam (SBN 317677)
nate.kiyam@capstonelawyers.com
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone: (310) 556-4811
Facsimile: (310) 943-0396

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| RODNEY CARVALHO and MARK MAHER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HP, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:21-cv-08015-PCP<br>*Assigned to the Hon. P. Casey Pitts*<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:            August 21, 2025<br>Time:            10:00 AM<br>Crtrm:           8<br><br>Action Filed:    October 13, 2021<br>Trial Date:      None Set |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2025 at 10:00 AM, in Courtroom 8 of the above-captioned Court, located at 280 South 1st Street, San Jose, California 95113, the Honorable P. Casey Pitts presiding, Plaintiffs Rodney Carvalho and Mark Maher, individually and on behalf of all others similarly situated, will, and hereby do, move this Court to: (1) enter an order finally approving the settlement and all terms and provisions contained in the Class Action Settlement Agreement and Release (Dkt. No. 92-1), as preliminarily approved by the Court on April 9, 2025, and the proposed Allocation Plan, as set forth herein; (2) finally certify the Settlement Class; (3) finally approve and appoint the Settlement Class Representatives, Settlement Class Counsel, and the Settlement Administrator, and (4) enter a final approval order and judgment and dismiss this action with prejudice.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Andrea Dudinsky of Kroll Settlement Administration LLC filed concurrently herewith and the exhibits attached thereto; (4) the Declaration of Daniel A. Rozenblatt filed concurrently herewith and the exhibit attached thereto; (5) the [Proposed] Order and [Proposed] Judgment filed concurrently herewith; (6) and the briefing and declarations in support of Plaintiffs' Motion for Preliminary Approval (Dkt. Nos. 85, 87, 90, and 92); (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

1  Dated:  July 10, 2025                    CAPSTONE LAW APC

2

3                                  By:     */s/ Cody R. Padgett*
                                          Cody R. Padgett
4                                          Nathan N. Kiyam

5                                          EDGE, A PROFESSIONAL LAW
                                          CORPORATION
6                                          Daniel A. Rozenblatt
                                          Natasha Dandavati
7

8                                          *Attorneys for Plaintiffs*
                                          *Rodney Carvalho and Mark Maher*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     RELEVANT BACKGROUND ........................................................................ 2

III.    STATEMENT OF THE ISSUES TO BE DECIDED ..................................... 3

IV.     LEGAL STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
        ....................................................................................................................... 3

V.      THE SETTLEMENT WARRANTS FINAL APPROVAL .............................. 5

        A.      The Rule 23 class certification requirements are satisfied. ................... 5

        B.      The Proposed Settlement satisfies Rule 23(e). ..................................... 5

                (1)     *Rule 23(e)(2)(A) is satisfied because Plaintiffs and Class
                        Counsel have adequately represented the Settlement Class.* ................... 5

                (2)     *Rule 23(e)(2)(B) is satisfied because the proposed Settlement is
                        the result of non-collusive, arm's length negotiations.* ............................ 6

                (3)     *The proposed Settlement satisfies the Rule 23 (e)(2)(C) factors.* .............. 7

                (4)     *Rule 23(e)(2)(D) is satisfied because the proposed Settlement
                        treats the Settlement Class Members equitably.* ........................................ 9

        C.      The remaining *Hanlon* factors weigh strongly in favor of final
                approval. .............................................................................................. 10

                (1)     *The extent of discovery completed supports final approval.* ................... 10

                (2)     *The experience and views of Class Counsel support final
                        approval.* ...................................................................................... 11

                (3)     *The positive reaction of Settlement Class Members supports
                        final approval.* ............................................................................... 12

        D.      The Settlement satisfies the *Bluetooth* factors. .................................... 13

VI.     NOTICE WAS TIMELY AND PROPERLY DISSEMINATED ................... 14

VII.    SETTLEMENT ADMINISTRATION FEES AND COSTS ........................... 15

VIII.   THE COURT SHOULD APPROVE THE PROPOSED ALLOCATION PLAN .......... 15

IX.     CONCLUSION ............................................................................................. 17

1

**TABLE OF AUTHORITIES**

2

*FEDERAL CASES*

3 *Adoma v. Univ. of Phoenix, Inc.,* 913 F. Supp. 2d 964 (E.D. Cal. 2012)......................................7

4 *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ............................................................5

5 *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ..........................................5

6 *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................12

7 *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)..........................................4

8 *Destefano v. Zynga*, No. 12-cv-04004-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11,

9  2016)................................................................................................................16

10 *Eisen v. Porsche Cars North American, Inc.,* No. 11-09405-CAS, 2014 WL 439006

11  (C.D. Cal. Jan. 30, 2014) ................................................................................10, 12

12 *Garner v. State Farm Mut. Auto Ins.*, No. 08-1365-CW, 2010 WL 1687832 (N.D. Cal.

13  Apr. 22, 2010) ..................................................................................................12

14 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..........................................3, 4, 12

15 *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..........................5, 13

16 *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770 (N.D. Cal.

17  July 22, 2019)....................................................................................................4

18 *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S. Dist.

19  LEXIS 121886 (N.D. Cal. July 22, 2019)..........................................................7

20 *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ..........................5

21 *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..........................8

22 *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..........................12

23 *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)..........................5

24 *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ..........................................11

25 *In re Telescope Antitrust Litigation*, No. 5:20-cv-03639-EJD, 2025 WL 1093248

26  (N.D. Cal. Apr. 11, 2025)................................................................................12, 13

27 *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal.2014)..........................12

28 *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895

F.3d 597 (9th Cir. 2018) ....................................................................................13

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ...............................................7

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ...............7, 10

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, (C.D. Cal. 2004) ...................12

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...............7

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ......................................7

*Shvager v. ViaSat, Inc.*, 2014 WL 12585790 (C.D. Cal. Mar. 10, 2014)....................10

**FEDERAL STATUTES**

Civ. P. 23(e)(2)(D) ...................................................................................................10

Fed. R. Civ. P. 23(a) ...................................................................................................3

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................14

Fed. R. Civ. P. 23(e)(1) .............................................................................................14

FED. R. CIV. P. 23(e)(2) .............................................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  I.     **INTRODUCTION**

2      Plaintiffs Rodney Carvalho and Mark Maher ("Plaintiffs") respectfully submit this

3  memorandum in support of their Motion for Final Approval of Class Action Settlement,[1] for final

4  certification of the Settlement Class, and for final approval and appointment of the Settlement Class

5  Representatives, Settlement Class Counsel, and the Settlement Administrator. The proposed

6  Settlement provides significant monetary relief in exchange for resolving allegations that Defendant

7  HP, Inc. ("Defendant" or "HP") displayed misleading strikethrough prices and price reductions on its

8  website in violation of California's consumer protection laws.

9      The Court previously found the Settlement satisfies all of the criteria for preliminary settlement

10  approval. (Dkt. Nos. 91, 93.) The Parties have successfully completed the class notice process as ordered

11  by the Court and the results confirm the fairness of the Settlement. The notice campaign approved by

12  the Court resulted in a reach rate of 98.60%, in terms of the notices successfully delivered to potential

13  Settlement Class Members, and a claims rate of 11.78%. Only 13 Settlement Class Members of the

14  277,358 class members opted out. To date, the Settlement Administrator has not received any objections

15  to the Settlement, nor are Plaintiffs aware of any objections filed with the Court.

16      Plaintiffs now move the Court for final approval of the proposed Settlement, which will create

17  a $4 million non-reversionary common fund ("Settlement Fund"), to be used to fund payments to

18  Settlement Class Members, the third-party Settlement Administrator's costs, and Plaintiffs' service

19  awards and attorneys' fees and costs award. No portion of the Settlement Fund will revert to HP. Any

20  residual funds will be distributed pro rata to Settlement Class Members pursuant to the claims process

21  and no amount will be paid to a *cy pres* recipient.

22      An objective evaluation of the Settlement confirms that the relief negotiated by Plaintiffs and

23  Class Counsel on behalf of the putative class is fair, reasonable, and adequate. The Settlement was the

24  product of arms-length negotiations between the Parties and their respective counsel, and was reached

25  with the assistance of the Honorable Irma E. Gonzalez (Ret.) of JAMS, an experienced and well-

26  respected class action mediator and former California jurist. The Settlement further treats class

27  

28  _____

[1] Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Class Action Settlement Agreement and Release ("Settlement Agreement"), Dkt. No. 92-1.

members equitably, as Plaintiffs retained a highly qualified damages expert to determine how to fairly allocate the payments made to Settlement Class Members. The Settlement provides significant monetary relief to Class Members, particularly when viewed in relation to other deceptive pricing class action settlements, and the difficulties and uncertainties Plaintiffs would have encountered had the litigation continued.

Plaintiffs, on behalf of themselves and the Settlement Class, respectfully request that the Court finally approve the Settlement and proposed Allocation Plan set forth herein. The proposed Settlement Class satisfies the requirements of Rule 23, and the proposed Settlement and Allocation Plan are fair and reasonable, and provide substantial benefits to Settlement Class Members.

## II.    <u>RELEVANT BACKGROUND</u>

For the sake of brevity, Plaintiffs respectfully refer the Court to the preliminary approval motion (Dkt. No. 85) and the supplemental brief in support thereof (Dkt. No. 87), which set forth an overview of the litigation and are incorporated here for a detailed description of, *inter alia*, the factual and procedural history of the Action (Dkt. No. 85 at 2:10–4:26); the nature of the claims asserted (Dkt. Nos. 85 at 2:11–2:23 and 87 at 1:3–2:28); the extensive pre- and post-suit investigation undertaken by Class Counsel (Dkt. Nos. 85 at 2:26–4:4,13:24–14:15 and 87 at 3:21–4:15); the negotiations leading to the Settlement (Dkt. No. 85 at 4:5–4:26); the risks and uncertainties of continued litigation (Dkt. Nos. 85 at 4:18–4:22 and 87 at 3:24–4:15); the litigation efforts Class Counsel undertook in developing the record for the benefit of the Settlement Class (Dkt. Nos. 85 at 2:26–4:4, 13:24–14:15 and 87 at 3:21–4:15); and the material terms of the proposed Settlement (Dkt. Nos. 85 at 5:1–12:12 and 87 at 1:3–11:20).

On January 16, 2025, the Court held a hearing on Plaintiffs' motion for preliminary approval. At the hearing, the Court inquired whether the Parties would consider striking the request to enjoin Settlement Class Members from commencing related actions against HP pending final approval of the Settlement. (*See* Dkt. No. 85-5 ¶ 20.) In response to the Court's inquiry, the Parties agreed to omit the request and instead permit HP to withdraw from the Settlement in the event that five hundred (500) or more of the Settlement Class Members opted out. (Dkt. No. 90 at 1.)

On February 24, 2025, the Court granted preliminary approval of the Settlement, as amended.

(Dkt. Nos. 90-1, 91.) In the preliminary approval order, the Court conditionally found that the Settlement Class satisfied the requirements of Rules 23(a) and 23(b)(3) (Dkt. No. 91 at 5–6) and the proposed Settlement was fair, reasonable, and adequate under Rule 23(e)(3) (*id.* at 7–9); appointed Plaintiffs as adequate representatives of the Settlement Class, and EDGE, A Professional Law Corporation and Capstone Law APC as Class Counsel for the Settlement Class (*id.* at 10); and approved of the proposed notice procedures to the Settlement Class (*id.* at 10–11).

After the Court granted preliminary approval, the Parties engaged in discussions with representatives from various states' attorneys general offices and agreed to amend the Settlement Agreement further to include clarifying language with respect to Section 3.6(a), which did not have any impact on the relief to the class or affect the fairness, adequacy, or reasonableness of the proposed Settlement:

> However, this Agreement is not intended to and does not prohibit a Class Member from responding to inquiries posited by federal, state or local agencies and/or law enforcement, even if the inquiries relate to the Released Claims. Similarly, this Agreement is not intended to and does not prohibit a Class Member from bringing their concerns to federal, state or local agencies and/or law enforcement, even if those concerns relate to the Released Claims.

(Dkt. No. 92 at 2.) On April 9, 2025, the Court granted preliminary approval of the further Amended Settlement Agreement on the same terms set forth in the preceding preliminary approval order. (Dkt. Nos. 92-1, 93.)

## III.    STATEMENT OF THE ISSUES TO BE DECIDED

(1) Whether the Court should approve the proposed $4,000,000 non-reversionary settlement as fair, adequate, and reasonable pursuant to Rule 23(e); and

(2) Whether the Court should approve the proposed Allocation Plan (defined below) as fair and reasonable.

## IV.    LEGAL STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

Final approval should be granted when the proposed settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating a proposed settlement, courts are guided by several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation

might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arm's-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, courts then may consider some or all of the following factors in evaluating settlement reasonableness: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

Rule 23 directs courts to consider a similar list of factors, including whether: (A) class representatives and class counsel have adequately represented the class; (B) the proposed settlement was negotiated at arm's length; (C) the relief provided is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including payment timing; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Advisory Committee's notes clarify such factors do not "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting Fed. R. Civ. P. 23(e)(2), advisory committee's note to 2018 amendment).

Additionally, the Ninth Circuit further requires that courts scrutinize the proposed settlement

applying the so-called *Bluetooth* factors. *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011)). As shown below, all of the applicable criteria for final approval are met here.

## V.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Rule 23 class certification requirements are satisfied.

In granting preliminary approval, the Court found this case appropriate for class certification for settlement purposes under Rules 23(a) and 23(b)(3), and appointed Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel for the Settlement Class. (Dkt. Nos. 91, 93). Nothing has changed since preliminary approval that would undermine the Court's conclusion, and class certification for settlement purposes remains appropriate. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification "differently in litigation classes and settlement classes").

### B.    The Proposed Settlement satisfies Rule 23(e).

(1)    *Rule 23(e)(2)(A) is satisfied because Plaintiffs and Class Counsel have adequately represented the Settlement Class.*

Under Rule 23(e)(2)(A), the Court considers whether Plaintiffs and Plaintiffs' Counsel adequately represented the class. This requirement is satisfied as, at all times, Plaintiffs and Class Counsel advocated for the best interests of the Settlement Class. The Settlement negotiated on the Settlement Class's behalf is the result of the diligent investigation and litigation of this action. Plaintiffs have no interests antagonistic to those of other Settlement Class Members; rather, they share the common interest in obtaining the largest possible recovery from Defendants. Further, there is no conflict between the Settlement Class Representatives and Plaintiffs' Counsel on the one hand, and Class Members on the other. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (conflict cannot be "speculative" or "trivial" but must go to "the heart of the litigation"). Plaintiffs and Plaintiffs' Counsel have vigorously and diligently pursued the claims on behalf of the Class, adducing important facts regarding the claims, and negotiated a very valuable Settlement which

1    is fair, reasonable, and adequate, and provides immediate and substantial benefits to the Class.

2    Additionally, Plaintiffs and Class Counsel have continued to adequately represent the

3    Settlement Class since the issuance of the Preliminary Approval Order by diligently complying with

4    the notice plan and settlement procedures. Under Plaintiffs' and Class Counsel's direction, on April

5    10, 2025, Kroll mailed 277,322 postcard notices to potential Class Members and on the same date

6    emailed 277,358 email notices, with follow up reminder email notices on May 13, 2025 and June 4,

7    2025. (Declaration of Andrea Dudinsky of Kroll Settlement Administration LLC ["Dudinsky Decl."]

8    ¶¶ 11–14.) To date, the Settlement Administrator has not received any objections to the Settlement,

9    nor are Plaintiffs aware of any objections filed with the Court, further indicating the adequacy of the

10   settlement and representation by Plaintiffs and Class Counsel. (*Id.* ¶ 23.)

11
12       (2)    <u>*Rule 23(e)(2)(B) is satisfied because the proposed Settlement is the result of non-collusive, arm's length negotiations.*</u>

13   Rule 23(e)(2)(B) is satisfied, as the Settlement is the product of vigorous arm's length

14   negotiations between experienced, fully informed counsel. Settlement negotiations spanned several

15   months and were the product of a thorough investigation, followed by a full-day mediation with the

16   highly experienced and well-respected class action mediator and former California jurist, the

17   Honorable Irma E. Gonzalez (Ret.) of JAMS. (Dkt. No. 85-1, Padgett Decl. ¶¶ 9–11; Dkt. No. 85-2,

18   Rozenblatt Decl. ¶¶ 11–18.) Here, based on their analysis of information and evidence produced by

19   HP, close scrutiny of all advertised pricing and extensive data collected by Plaintiffs' counsel's

20   investigation, and input from their damages expert, Plaintiffs were able to realistically assess the

21   potential value of their claims and intelligently engage in settlement discussions that culminated in

22   the proposed Settlement now before the Court. (*Id.*) In advance of mediation, Plaintiffs evaluated the

23   strengths and weaknesses of their claims and objectively assessed the risks of continued litigation in

24   order to determine a reasonable range of class relief. (*Id.*) They also analyzed comparable deceptive

25   pricing class actions and class action settlements to gain a better understanding of realistic ranges of

26   compensation. (*Id.*) Prior to finalizing the settlement, they consulted with a damages expert who

27   analyzed the Class Members' damages and the sufficiency of the Settlement Fund to adequately

28   compensate the Class. (*Id.*; *see also* Dkt. No. 85-3, Tregillis Decl.)

1                 (3)      *The proposed Settlement satisfies the Rule 23 (e)(2)(C) factors.*

2        Under Rule 23(e)(2)(C), the Court must examine the relief to the Class in light of the costs,

3 risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief

4 to the class, including the method of processing claims, the terms of any proposed award of attorney's

5 fees, including timing of payment; and any agreement required to be identified. *In re Extreme*

6 *Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886, at *19 (N.D. Cal.

7 July 22, 2019). This overlaps with the first three *Hanlon* factors. In evaluating these considerations,

8 a court assesses "objectively the strengths and weaknesses inherent in the litigation and the impact

9 of those considerations on the parties' decisions to reach [a settlement]." *Adoma v. Univ. of Phoenix,*

10 *Inc.,* 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012). However, there is "no single formula" to be applied.

11 *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

12        In assessing the settlement, courts are instructed to take into account that "the very essence of

13 a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers*

14 *for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). And the

15 Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive negotiated

16 resolution, and ha[s] never prescribed a particular formula by which that outcome must be tested."

17 *Rodriguez*, 563 F.3d at 965 (internal citations omitted). The Court "need not include a specific finding

18 of fact as to the potential recovery for each of the plaintiffs' causes of action." *Lane v. Facebook, Inc.*,

19 696 F.3d 811, 823 (9th Cir. 2012). Thus, "the fact that a proposed settlement may only amount to a

20 fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly

21 inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242

22 (9th Cir. 1998).

23        *First*, the proposed Settlement easily satisfies the adequacy requirement under Rule

24 23(e)(2)(C)(i), particularly considering the costs, risks and delay of further litigation. As discussed in

25 Plaintiffs' preliminary approval motion, a $4 million non-reversionary common fund is within the

26 reasonable range for settlement of the Class Members' claims. (Dkt. No. 85 at 17.) Based on the

27 damages analysis performed by their damages expert, Plaintiffs estimate (for the purposes of

28 settlement only) the average per-unit damages for the Class Products is between $0 and $91. (Dkt.

No. 85-3, Tregillis Decl. ¶ 31.) Plaintiffs further estimate (for the purposes of settlement only) that the total overpayment across all Class Products across all of the Class Members is approximately $10.4 million. (*Id.*) Thus, the $4 million non-reversionary common fund represents significant monetary relief relative to the potential recovery, as estimated by Plaintiffs' damages expert. *See, e.g.*, *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a settlement that paid plaintiffs one-sixth of the potential recovery to be fair and adequate).

As further discussed in Plaintiffs' preliminary approval motion, the Settlement is eminently fair, adequate, and reasonable, especially when weighed against the substantial risks of further litigation. (Dkt. No. 85 at 14–17.) Prior to mediation, Plaintiffs carefully evaluated the strengths and weaknesses of their claims, consulted with a damages expert, and reviewed similar deceptive pricing cases to determine a reasonable settlement range. Both liability and damages were contested, with HP making arguments related to lack of standing, absence of damages, and that its advertised prices were accurate MSRPs. It was also likely that HP would have challenged the unjust enrichment claim and the viability of class certification, citing issues including varied consumer experiences and exposure to advertisements. Although Plaintiffs believe their claims are strong, they acknowledge significant legal and procedural risks if the case proceeded to trial, including potential delays and conflicting expert testimony. Given the substantial risks of continued litigation, including securing and maintaining class certification, and the significant relief secured for the Settlement Class, the proposed Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute.

*Second*, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii), as it adequately distributes relief to the class through an effective method claims process. Here, the distribution of cash benefits to Settlement Class Members is straightforward, and there have been no objections to any aspect of the Settlement including the claims procedure. In accordance with the Preliminary Approval Order (Dkt. No. 91), Settlement Class Members had at least sixty days from the date notice was sent by email and postcard to submit a claim for a Cash Benefit (the "Claims Submission Deadline"). (Settlement Agreement, § 1.5.)[2] Cash Benefits will be paid, in the form of a digital payment or check,

---

[2] The Claims Submission Deadline was 105 days after entry of the Preliminary Approval Order, and Notice was sent within 45 days of the Preliminary Approval Order.

1    to each Settlement Class Member who submitted a timely and valid claim by the Claim Submission

2    Deadline, which was June 9, 2025. (*Id.*, §§ 1.4–1.5, 4.3(a)–(c).) The Claim Form was available on the

3    Settlement Website, or by request the Settlement Administrator by mail, and could be submitted online

4    or by mail. (*Id.*)

5        *Third*, the proposed Settlement satisfies Rule 23(e)(2)(C)(iii), as the proposed attorneys' fees

6    and service awards are fair and reasonable. As detailed in Plaintiffs separately filed Motion for

7    Attorneys' Fees, Costs, and the requested service awards of $5,000 to each Plaintiffs and the requested

8    attorneys' fees and costs award of $1 million are reasonable. (*See* Dkt. No. 94, Motion for Attorneys'

9    Fees, Costs, and Settlement Class Representatives Service Awards.) Plaintiffs, zealously advocating

10   on behalf of the Class, have negotiated relief that will more than compensate Class Members for the

11   average amount they overpaid per Class Product due to the alleged inflated reference prices. The

12   attorneys' fee award sought represents just 23.6% of the Settlement Fund—less than the Ninth

13   Circuit's 25% benchmark—and a modest 1.05 multiplier. (*Id.* at 2:4–6, 3:20–4:11, 5:13–6:14, 8:16–

14   23, 15:21–17:2.) The proposed service awards of $5,000 to each Plaintiff are fair, reasonable, and

15   consistent with the amount typically awarded in class actions. (*Id.* at 17–20.)

16       *Finally*, the proposed Settlement satisfies Rule 23(e)(2)(C)(iv), as there no separate

17   agreements made in connection with the proposed Settlement that have not already been identified to

18   the Court and incorporated into the proposed Settlement itself.[3]

19           (4)    <u>*Rule 23(e)(2)(D) is satisfied because the proposed Settlement treats the*</u>

20                  <u>*Settlement Class Members equitably.*</u>

21       "Matters of concern could include whether the apportionment of relief among class members

22   takes appropriate account of differences among their claims, and whether the scope of the release may

23   affect class members in different ways that bear on the apportionment of relief." *See* Fed. R. Civ. P.

24   23(e)(2)(D), Advisory Committee's Notes to the 2018 Amendment.

25       The proposed Settlement accounts for differences in the Settlement Class Members' claims by

26

27   _____

28   [3] In connection with the parties' Stipulation and Request for Preliminary Approval of Amended
     Settlement Agreement (Dkt. 92), Plaintiffs submitted an amended Settlement Agreement executed by
     the parties, which was approved by the Court. (*See* Dkt. Nos. 92, 92-1, and 93).

accounting for variance among their estimated damages. As detailed in their Preliminary Approval Motion, Plaintiffs retained Mr. Tregillis, a highly experienced and qualified damages expert, to estimate the per unit average damages for each Class Product that is part of the Settlement Class. (Dkt. No. 85 at 1:20–22 and 9:8–10:13.) Mr. Tregillis used actual pricing and sales data to determine the amount, on average, Settlement Class Members overpaid for the Settlement Class Products. (Dkt. No. 85-3 ¶ 31.) Based on those calculations, Mr. Tregillis endorsed using five payment tranches based on both product type and per-unit estimated damages, which would ensure that Settlement Class Members within each tranche will receive a cash payment in an amount that at least fully compensates them for their estimated damages. (*Id.* ¶¶ 32–37.) Accordingly, Plaintiffs have ensured the proposed Settlement treats Settlement Class Members equitably relative to each other. *Cf. Brazil v. Dell Inc.*, 2012 U.S. Dist. LEXIS 47986, at *3–4 (N.D. Cal. Apr. 4, 2012) (approving settlement in false discount class action where all class members received $50 irrespective of variations among products purchased).

Likewise, the class release also treats all Settlement Class Members equitably, as it does not vary by class member or subset of the class. As a result, the Settlement treats all class members equitably.

### C. The remaining *Hanlon* factors weigh strongly in favor of final approval.[4]

#### (1) *The extent of discovery completed supports final approval.*

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998). A settlement negotiated at an earlier stage in the litigation will not be denied so long as sufficient investigation has been conducted. *Eisen v. Porsche Cars N. Am.*, No. 11-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on").

---

[4] Regarding the seventh *Hanlon* factor, no governmental body is a party to this Action. *See Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *11 (C.D. Cal. Mar. 10, 2014) ("This factor is inapplicable and neutral because no government entity participated in the case.").

1    Both before and after the action was filed, Plaintiffs' Counsel thoroughly investigated and

2    researched Plaintiffs' claims. (Dkt. No. 85-2, Rozenblatt Decl. ¶¶ 4–7; *see also* Dkt. No. 91,

3    Preliminary Approval Order at 1:21–22, citing Preliminary Approval Motion ["The Parties engaged

4    in meaningful formal and informal discovery of the prices and discounts at issue."].) Plaintiffs'

5    investigation included the production of over 500,000 screenshots of HP's website and an analysis of

6    the pricing data collected as part of Plaintiffs' investigation. (Dkt. No. 85-2, Rozenblatt Decl. ¶ 11.)

7    HP produced sales data for 287,784 orders placed during the Class Period that contain Class Products.

8    (*Id.* ¶ 12.) On several occasions, the Parties met through their respective counsel to discuss and

9    understand the pricing and sales data each Party produced, and Plaintiffs retained an economic

10   damages expert to provide a damages valuation using actual pricing and sales data. (*Id.*)

11   Accordingly, the proposed Settlement, which resulted from this detailed investigation, data

12   production, and analysis, satisfies this *Hanlon* factor, as it demonstrates that the Parties had sufficient

13   information to make an informed decision and engage in meaningful settlement negotiations.

14                    (2)    *The experience and views of Class Counsel support final approval.*

15   The fact that sophisticated parties with experienced counsel have agreed to settle their dispute

16   should be given considerable weight by courts, since "parties represented by competent counsel are

17   better positioned than courts to produce a settlement that fairly reflects each party's expected outcome

18   in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

19   Here, the Parties achieved a settlement after a thorough review of relevant pricing data, and a

20   rigorous analysis of each Parties' claims and defenses. The terms of the Settlement are non-collusive

21   and the product of arms-length negotiations between experienced class action attorneys with the

22   assistance of a respected mediator and former jurist. Plaintiffs are represented by seasoned class action

23   attorneys who possess significant experience in class action matters and have zealously prosecuted

24   this action. (*See generally* Dkt. Nos. 85-1, 85-2.) Likewise, HP's counsel is the preeminent global law

25   firm, Morgan Lewis & Bockius LLP. Thus, the Parties' recommendation to approve this Settlement

26   should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience

27   and views of counsel and the involvement of a mediator in approving settlement). Based on the

28   foregoing, the Court should find the proposed Settlement to be fair and adequate.

1      (3)      _The positive reaction of Settlement Class Members supports final approval._

2          In deciding whether to approve a class action settlement, the court may "gauge the reaction of

3  other class members . . . [by] evaluat[ing] the number of requests for exclusions as well as the

4  objections submitted." *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 450 (C.D. Cal.

5  2014); *see also In re Telescope Antitrust Litigation*, No. 5:20-cv-03639-EJD, 2025 WL 1093248, *6

6  (N.D. Cal. Apr. 11, 2025) (finding a "*de minimis* number of opt-outs and objections further support

7  approval of the Settlement Agreement"). "The fact that the overwhelming majority of the class

8  willingly approved the offer and stayed in the class presents at least some objective positive

9  commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

10         Here, the positive reaction of Settlement Class Members supports final approval as there have

11  been only thirteen opt-outs out of 277,358 Settlement Class Members, which amounts to a *de minimis*

12  opt-out rate of 0.00005%. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852

13  (N.D. Cal. 2010) (finding zero objections and sixteen opt-outs out of 329 class members [4.86%]

14  "strongly support[] settlement"); *Garner v. State Farm Mut. Auto Ins.*, No. 08-1365-CW, 2010 WL

15  1687832, *15 (N.D. Cal. Apr. 22, 2010) (finding 101 opt-outs of 24,000 class members, an opt-out

16  rate of 0.4%, supported settlement).

17         Further, there have been no objections to the proposed Settlement, which further supports final

18  approval. *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("By any

19  standard, the lack of objection of the Class Members favors approval of the Settlement."); *National

20  Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the

21  absence of a large number of objections to a proposed class action settlement raises a strong

22  presumption that the terms of a proposed class settlement action are favorable to the class members.").

23  For example, in *Omnivision Tech.*, even where three objections were made out of 57,630 notices,

24  amounting to 0.005%, the Court still deemed the reaction to the class positive. *Omnivision Tech.*, 559

25  F. Supp. 2d at 1043. Here, not a single objection has been submitted following notice to 273,446

26  Settlement Class Members—an objection rate of 0.00%. This complete absence of opposition strongly

27  supports final approval and reflects overwhelmingly positive support for the Settlement among Class

28  Members.

1     **D.**     **The Settlement satisfies the *Bluetooth factors.***

2     Finally, pre-certification settlements require further inquiry for "more subtle signs" of potential

3 collusion between class counsel and defendant. *In re Bluetooth*, 654 F.3d at 946-47. But in applying "all

4 of these factors, considerations, 'subtle signs,' and red flags, the underlying question remains this: Is the

5 settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d

6 597, 611 (9th Cir. 2018). These factors "in the end are just guideposts." *Id*.

7     As discussed above, the proposed Settlement does not bear the hallmarks of collusion, such as

8 when class counsel "receive a disproportionate distribution of the settlement" or when "class receives

9 no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947. The

10 proposed Settlement provides the Settlement Class Members with significant cash benefits, and

11 Plaintiffs' Counsel do not seek a disproportionate share of fees. Rather, the settlement was negotiated at

12 arm's-length after mediation before the honorable Judge Gonzalez. *See In re Telescops Antitrust

13 Litigation*, 2025 WL 1093248, at *7 ("Judge Segal's involvement and oversight are favorable factors to

14 finding fairness and a lack of collusion between the parties.") Accordingly, the Settlement is not

15 collusive under the first *Bluetooth* factor, as it was reached through an arm's-length process, provides

16 meaningful monetary relief to the Class, and involves no disproportionate fee request.

17     As to the second factor, while there is a "clear-sailing" provision, this is not inherently

18 problematic when the Class is receiving reasonable value and the agreement lacks a reversionary or

19 "kicker provision." "The absence of a 'kicker provision' in the parties' settlement and the fact that

20 the class is receiving reasonable value reduces the likelihood that plaintiffs and [the defendant]

21 colluded to confer benefits on each other at the expense of class members." *In re Toys R Us-

22 Delaware, Inc.*, 295 F.R.D. at 458 (analyzing the *Bluetooth* factors and the presence of a clear sailing

23 provision, and finding no inference of collusion that warranted invalidating the settlement as a

24 whole). Here, the cash payments under the proposed Settlement and proposed Allocation Plan

25 (defined below) not only fully compensate Settlement Class Members for their estimated average

26 damages, it will likely exceed them. (*See* Dkt. No. 85-3, Tregillis Decl. ¶ 36.) Accordingly, the

27 existence of a clear-sailing provision does not suggest collusion here, as the Settlement delivers

28 full—or even greater—compensation to Settlement Class Members, and provides no indication

whatsoever of self-dealing or unfair advantage under the second *Bluetooth* factor.

Finally, the third *Bluetooth* factor is also absent, as no portion of the $4 million Settlement Fund will revert to HP. In sum, the proposed Settlement bears none of the *Bluetooth* hallmarks of collusion. Rather, it resulted from a fair, arm's-length negotiation, and provides significant relief to the Settlement Class.

## VI.    NOTICE WAS TIMELY AND PROPERLY DISSEMINATED

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As authorized by the Court's Order granting preliminary approval (Dkt. Nos. 91, 93), the Parties engaged Kroll Settlement Administration LLC ("Kroll") to serve as the Settlement Administrator. Kroll successfully implemented the Settlement Class notice plan.

Class members were notified and provided information about the Settlement through a combination of email, postcard, a dedicated Settlement Website, and a toll-free telephone helpline. On February 27, 2025, the Settlement Administrator established a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response ("IVR") system and through speaking with a live operator. (Dudinsky Decl. ¶ 8.) Kroll also created a dedicated settlement website that went live on April 10, 2025. (*Id.* ¶ 9.)

Based on data provided by Defendant, the final class list of 277,358 unique records contained 277,322 records with both a physical mailing address and an email address, and 36 records with only an email address. (Dudinsky Decl. ¶ 6.) On April 10, 2025, the Settlement Administrator mailed the Short Form Notice via first-class mail, which was approved by the Court, to 277,322 potential Settlement Class Members. (*Id.* ¶ 11.) Also on April 10, 2025, the Settlement Administrator caused the email version of the Short Form Notice ("Email Notice") to be sent to 277,358 email addresses. (*Id.* ¶ 12.) Out of the 277,358 emails attempted for delivery, 72,172 emails were rejected/bounced back as

undeliverable. (*Id.*) The Settlement Administrator also sent two separate "Reminder" email notices to Settlement Class Members who had not yet submitted a Claim Form or opt-out of the Settlement. (*Id.* ¶¶ 13–14.) The Settlement Administrator ran an advanced address search for updated addresses for those notices that were returned by the USPS as undeliverable, and re-mailed the notices. (*Id.* ¶ 16.) In total, Kroll calculates that the Short Form Notice likely reached 273,491 of the 277,358 Settlement Class Members via first-class mail, which equates to a reach rate of the direct mailed notice of approximately 98.61%. (*Id.* ¶ 17.) Of the 3,912 Settlement Class Members who did not receive a Short Form Notice by first-class mail, Kroll has reason to believe that the Email Notice likely reached 2,786 of those Settlement Class Members, which equates to a combined reach rate by Direct Mail and/or Email Notice of 99.6%. (*Id.*) To date, 32,660 claims have been submitted by Settlement Class Members, which equates to a claims rate of 11.78%. (*Id.* ¶ 20.) The foregoing demonstrates a successful notice program.

## VII.     SETTLEMENT ADMINISTRATION FEES AND COSTS

Plaintiffs request the Court to finally approve the payment of Kroll's actual settlement administration costs and fees, which are expected to be $261,068.19. (Dudinsky Decl. ¶ 24.)[5] Kroll has promptly and properly distributed the Class Notice to Settlement Class Members and has professionally and capably carried out its duties in accordance with the terms of the Settlement and the Preliminary Approval Order. (*See generally* Dudinsky Decl.; *see also* Dkt. No. 91, Order Granting Motion for Preliminary Approval of Class Action Settlement, at 10–13 (detailing notice, settlement administration, opt out, and objection procedures).) Accordingly, payment to Kroll of its reasonable costs and fees should be finally approved along with the rest of the Settlement terms.

## VIII.     THE COURT SHOULD APPROVE THE PROPOSED ALLOCATION PLAN

A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. "Courts 'recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'" *Destefano v.*

---

[5] The actual settlement administration costs and fees are estimated to be $261,068.19, which represents a $14,600.99 marginal increase from the original estimate. (*Compare* Dudinsky Decl. ¶ 24 *with* Dkt. No. 85-4, Declaration of Patrick M. Passarella of Kroll Settlement Administration LLC in Connection with Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ¶ 18.)

1    *Zynga*, No. 12-cv-04004-JSC, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016).

2         As detailed in their motion for preliminary approval, to assist in determining a fair allocation

3    of the Settlement Fund among the Class Members, Plaintiffs retained Christian Tregillis, an expert in

4    the valuation of economic damages with over thirty years of experience. (Dkt. Nos. 85 at 9–10 and

5    85-3 ¶¶ 1–4.) Using actual sales data, Mr. Tregillis estimated the average "damages" for each of the

6    Class Products—*i.e.*, the amount each Settlement Class Member overpaid. Based on this analysis,

7    Plaintiffs proposed five Cash Benefit tranches based on the product type and estimated per-unit

8    damages, which would fully compensate each Settlement Class Member for their estimated damages.

9    (Dkt. Nos. 85 at 9–10 and 85-3 ¶¶ 24–32.) In preliminarily approving the Settlement, the Court

10   considered Plaintiffs' "estimate that, assuming a higher-end claims rate of 15%, the settlement will

11   provide class members with a cash payment that, at minimum, fully compensates them for their

12   estimated damages," and was "satisfied that the proposed settlement falls within the range of possible

13   approval and warrants comment from class members." (Dkt. No. 91 at 9.)

14        As of July 8, 2025, the Settlement Administrator has received 32,660 valid claims, equating

15   to an 11.78% claims rate. (Dudinsky Decl. ¶ 20.) Under the proposed Allocation Plan (defined below),

16   each Settlement Class Member who submitted a valid claim will receive a cash payment that exceeds

17   the proposed Cash Benefit. (*See* Declaration of Daniel A. Rozenblatt in Support of Motion for Final

18   Approval ["Rozenblatt 7/10/25 Decl."], ¶ 10.) Accordingly, the Settlement Fund represents substantial

19   and valuable relief to the Class.

20        The proposed Allocation Plan below is based on the assumption the Court will approve

21   payment of the requested settlement administration costs and fees (*see supra* Part VII), the requested

22   attorneys' fees and costs award, and the requested service awards (*see* Dkt. No. 94), and provides for

23   a pro rata adjustment of the proposed Cash Benefit tranches based on the 32,660 valid claims received

24   by the Settlement Administrator as of July 8, 2025 (*see* Rozenblatt 7/10/25 Decl. ¶¶ 4–10, Ex. A).

25

26

27

28

### PROPOSED ALLOCATION PLAN

| | |
|---|---:|
| Settlement Fund | $4,000,000.00 |
| Attorneys' Fees and Costs Award[6] | ($1,000,000.00) |
| Plaintiffs' Service Awards[7] | ($10,000.00) |
| Settlement Administration Costs and Fees[8] | ($261,068.19) |
| **Amount Available to Distribute to Settlement Class[9]** | **$2,728,931.81** |

### Total Cash Benefits[10]

| Tranche | Product Type | Estimated Per-Unit Damages | Proposed Cash Benefit | Total Cash Benefit |
|---|---|---|---|---|
| **1** | Accessory | Below $10.00 | **$10.00** | **$15.49** |
| **2** | Computers | Below $25.00 | **$25.00** | **$38.71** |
| **3** | Computers | Between $25.01 and $50.00 | **$50.00** | **$77.42** |
| **4** | Computers | Between $50.01 and $75.00 | **$75.00** | **$116.12** |
| **5** | Computers | Between $75.01 and $100.00 | **$100.00** | **$154.83** |

## IX.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court grant final approval of the proposed Settlement and the proposed Allocation Plan, as set forth herein, and enter Final Judgment in this action.

---

[6] *See* Dkt. No. 94, Motion for Attorneys' Fees, Costs, and Settlement Class Representatives Service Awards, at 3–17.

[7] *See id.* at 17–20.

[8] Dudinsky Decl. ¶ 24.

[9] Rozenblatt 7/10/25 Decl. ¶ 6.

[10] The Total Cash Benefit amounts were calculated based on the assumption of $2,728,931.81 available to distribute to the Settlement Class and the valid claims submitted, as of July 8, 2025. *See* Rozenblatt 7/10/25 Decl. ¶¶ 4–9.

1  Dated:  July 10, 2025                    CAPSTONE LAW APC

2

3                              By:     */s/ Cody R. Padgett*
                                       Cody R. Padgett
4                                      Nathan N. Kiyam

5                                      EDGE, A PROFESSIONAL LAW
                                       CORPORATION
6                                      Daniel A. Rozenblatt
                                       Natasha Dandavati
7

8                                      *Attorneys for Plaintiffs*
                                       *Rodney Carvalho and Mark Maher*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28